## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ZERBATO, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ALLOVIR, INC., DIANA M. BRAINARD, and VIKAS SINHA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jennifer Zerbato ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AlloVir, Inc. ("AlloVir" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired AlloVir securities between March 22, 2022 and December 21, 2023, both dates inclusive (the "Class Period"), seeking to

1

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      AlloVir, a clinical-stage cell therapy company, engages in the research and development of allogeneic, off-the-shelf multi-virus specific T cell ("VST") therapies to prevent and treat devastating viral-associated diseases.

3.      In March 2022, AlloVir initiated global phase 3 registrational studies of its lead product posoleucel for the prevention of life-threatening viral infections from viruses in high-risk, allogeneic hematopoietic cell transplant patients (the "posoleucel Phase 3 Studies").

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the posoleucel Phase 3 Studies were unlikely to meet their primary endpoints; (ii) as a result, it was likely that the Company would ultimately discontinue the posoleucel Phase 3 studies; (iii) accordingly, AlloVir overstated the efficacy and clinical and/or commercial prospects of posoleucel; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On December 22, 2023, AlloVir announced that it was discontinuing the posoleucel Phase 3 studies over efficacy concerns and stated that it would explore strategic alternatives for the Company.  Specifically, AlloVir said it was discontinuing the posoleucel Phase 3 studies after pre-planned analyses concluded they wouldn't meet their primary endpoints.

6.      On this news, AlloVir's stock price fell $1.57 per share, or 67.38%, to close at $0.76 per share on December 22, 2023.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). AlloVir is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired AlloVir securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant AlloVir is a Delaware corporation with principal executive offices located at 1100 Winter Street, Waltham, Massachusetts 02451. AlloVir's securities trade in an

efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "ALVR".

14.     Defendant Diana M. Brainard ("Brainard") has served as the Company's Chief Executive Officer at all relevant times.

15.     Defendant Vikas Sinha ("Sinha") has served as the Company's Chief Financial Officer at all relevant times.

16.     Defendants Brainard and Sinha are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of AlloVir's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of AlloVir's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with AlloVir, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     AlloVir and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     AlloVir, a clinical-stage cell therapy company, engages in the research and development of allogeneic, off-the-shelf multi-VST therapies to prevent and treat devastating viral-associated diseases.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period began on March 22, 2022, when AlloVir issued a press release entitled "AlloVir Initiates Global Phase 3 Registrational Study of Posoleucel for Prevention of Life-Threatening Viral Infections from Six Common Viruses in High-Risk, Allogeneic Hematopoietic Cell Transplant Patients."  The press release stated, in relevant part:

> AlloVir [. . .] today announced the initiation of a Phase 3 registrational study of posoleucel, an allogeneic, off-the-shelf, multi-virus-specific T-cell (VST) therapy, for the prevention of clinically significant infections and end-organ diseases from six potentially life-threatening viruses – adenovirus (AdV), BK virus (BKV), cytomegalovirus (CMV), Epstein-Barr virus (EBV), human herpesvirus-6 (HHV-6) and JC virus (JCV) – in high-risk allogeneic hematopoietic cell transplant (allo-HCT) patients. The global, multi-center, randomized, double-blind, placebo-controlled study will enroll approximately 300 adult and pediatric patients and will evaluate the number of clinically significant infections or episodes of end-organ disease through the primary endpoint of the 14-week dosing interval. Safety and efficacy will continue to be followed through Week 26.
>
> ***Posoleucel has the potential to fundamentally transform the treatment landscape for allo-HCT by preventing life-threatening viral diseases and infections, either as a prophylactic therapy in high-risk patients or as a preemptive therapy in patients who have already reactivated one or more of the six viruses targeted by posoleucel***. As 90% of allo-HCT patients reactivate at least one of these viruses, there is a large global market opportunity for the prevention of devastating viral diseases, with an estimated addressable patient population of 40,000 allo-HCT patients annually.
>
> ***
>
> "Hematopoietic cell transplantation leaves patients at high risk for multiple viral infections or disease that cause patients significant suffering, prolonged hospitalization, and threaten the graft and patient survival. These viral infections

are all too common, with two-thirds reactivating multiple viruses in the first 100 days post-transplantation," said Sanjeet Dadwal, M.D., Chief, Division of Infectious Diseases, and Professor of Medicine, City of Hope, one of the largest cancer research and treatment organizations in the United States, and posoleucel study investigator. "These new data continue to support the potential for posoleucel to prevent infections caused by these six viruses that can lead to significant morbidity and mortality in a vulnerable patient population with limited to no effective treatment options."

"***The clinical data presented at EBMT continue to demonstrate the transformative potential of posoleucel, a multi-virus-specific T-cell therapy, for immunocompromised patients***," said [Defendant] Brainard[.] "***We now have three ongoing Phase 3 studies of posoleucel in both the prevention and treatment of life-threatening viral infections with limited or no treatment options. We are working urgently on advancing our three global, registrational trials for posoleucel to bring this important therapy to children and adults who are at risk for or suffer from these devastating viral diseases***."[1]

21.    On April 20, 2022, AlloVir issued a press release entitled "FDA Grants Regenerative Medicine Advanced Therapy (RMAT) Designation to AlloVir's Posoleucel for Prevention of Multiple Life-Threatening Infections from Six Viruses in Allogeneic Hematopoietic Cell Transplant Patients."  The press release stated, in relevant part:

AlloVir [. . .] today announced that the U.S. Food and Drug Administration (FDA) has granted Regenerative Medicine Advanced Therapy (RMAT) designation to its lead investigational multi-virus-specific T cell therapy, posoleucel, for the prevention of clinically significant infections and disease from six devastating viruses that commonly impact high-risk adult and pediatric patients following allogeneic hematopoietic cell transplant (allo-HCT) – adenovirus (AdV), BK virus (BKV), cytomegalovirus (CMV), Epstein-Barr virus (EBV), human herpes virus-6 (HHV-6) and JC virus (JCV). This is the third RMAT designation that FDA has granted to posoleucel, in recognition of the therapy's transformative potential to address significant unmet medical needs facing immunocompromised allo-HCT patients.

\*\*\*

"The receipt of three RMAT designations for a single therapy is unprecedented. Posoleucel's three RMAT designations reflect the strength of AlloVir's multi-virus platform and its potential both to deliver an important treatment option for immunocompromised patients who currently have none, and to transform the

---

[1] All emphases included herein are added unless otherwise indicated.

management of allo-HCT patients with a multi-virus prevention approach," said Ercem Atillasoy, M.D., Chief Regulatory and Safety Officer, AlloVir.

22.     On May 5, 2022, AlloVir issued a press release announcing the Company's Q1 2022 financial results.  The press release stated, in relevant part:

> "We are focused on rapidly advancing our lead product candidate, posoleucel, with the aim of delivering this potentially transformative therapy to patients in need as quickly as possible. Based on the strength of our Phase 2 data in both treatment and prevention, we now have three Phase 3 studies underway that aim to address a spectrum of needs in the post-allo-HCT setting – as a treatment for patients already suffering the devastating impact of viral infections and disease, as a preemptive therapy for patients who have reactivated one or more viruses, and as a prophylactic therapy in high-risk patients without viremia," said [Defendant] Brainard[.] "The multi-virus prevention approach is the most transformative use of posoleucel and, accordingly, we are seeing strong enthusiasm from hematologists and infectious disease specialists as we expand our Phase 3 study sites and enrollment."

23.     That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2022 (the "Q1 2022 10-Q").  In providing an overview of the Company, the Q1 2022 10-Q stated, in relevant part:

> AlloVir, Inc. ("AlloVir" or "the Company", formerly known as ViraCyte, Inc.) is a leading late clinical-stage cell therapy company developing highly innovative allogeneic T-cell therapies to treat and prevent devastating viral diseases. The Company's innovative and proprietary virus-specific T-cell, or VST, therapy platform allows AlloVir to generate off-the-shelf VSTs designed to restore immunity in patients with T-cell deficiencies who are at risk from the life-threatening consequences of viral diseases. There is an urgent medical need for therapies to treat a large number of patients suffering from viral diseases who currently have limited or no treatment options. The Company is developing four innovative, allogeneic, off-the-shelf VST therapy candidates targeting 12 different devastating viruses. The Company's lead product, posoleucel (previously referred to as Viralym-M or ALVR105), is a multi-VST-cell therapy that targets six viruses: adenovirus, or AdV, BK virus, or BKV, cytomegalovirus, or CMV, Epstein-Barr virus, or EBV, human herpesvirus 6, or HHV-6 and JC virus, or JCV. The Company believes that posoleucel has the potential to fundamentally transform the treatment landscape for transplant patients by substantially reducing or preventing disease morbidity and mortality, thereby dramatically improving patient outcomes.

To fully explore the clinical benefit of posoleucel, the Company is conducting three Phase 3 pivotal and two Phase 2 proof-of-concept, or POC, trials in 2022 for the treatment and prevention of life-threatening viral diseases in pediatric and/or adult allogeneic hematopoietic cell transplant, or HCT, patients, each representing a potential meaningful commercial opportunity. The three ongoing pivotal trials evaluate the efficacy and safety of posoleucel for the treatment of virus-associated hemorrhagic cystitis, or HC, for the treatment of AdV infections and for the prevention of infections and disease caused by posoleucel's six target viruses, respectively. A POC clinical trial for multi-virus prevention in HCT has completed enrollment and final data are expected by year-end. A second POC trial evaluating posoleucel for BKV treatment in kidney transplant is ongoing. The BKV trial is the first posoleucel study in solid organ transplant patients.

24.    Appended to the Q1 2022 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he information contained in the [Q1 2022 10-Q] fairly presents, in all material respects, the financial condition and result of operations of the Company."

25.    On August 4, 2022, AlloVir issued a press release announcing the Company's Q2 2022 financial results. The press release stated, in relevant part:

"In the first half of 2022, AlloVir made great progress advancing our pipeline of off-the-shelf, multi-virus specific T cell therapies, especially with our lead candidate, posoleucel. The preliminary Phase 2 multi-virus prevention data have strengthened awareness of the transformational potential of posoleucel as preemptive or prophylactic therapy for viral infections post allo-HCT and have facilitated engagement in our Phase 3 program with leading international transplant centers," said [Defendant] Brainard[.] "In addition, we are excited to have the strong support of our investors who recently provided additional capital to enable the completion, data readouts and global regulatory submissions for all three ongoing Phase 3 registrational trials of posoleucel. We believe their investment demonstrates a strong affirmation of our science and ability to execute our plans to deliver this potentially transformative therapy to immunocompromised patients in need."

***Recent Highlights***

- The Phase 3 study of posoleucel for the prevention of clinically significant infections and end-organ disease from posoleucel's six target viruses in high-risk allo-HCT patients, continued to expand globally in the second quarter of this year, with patients enrolling in the U.S., Europe and Asia.

The multi-virus prevention study evaluates the use of posoleucel either as prophylactic therapy in patients without viremia or preemptive therapy for patients who have reactivated one or more of the target viruses. ***Multi-virus prevention has the potential to transform the management of transplant patients, who currently have limited to no approved treatment options for these devastating infections that threaten patient survival***.

26.     That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2022 (the "Q2 2022 10-Q").  The Q2 2022 10-Q contained a substantively similar description of the Company as discussed, *supra*, in ¶ 23, and appended to the Q2 2022 10-Q as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

27.     On November 3, 2022, AlloVir issued a press release announcing the Company's Q3 2022 financial results.  The press release stated, in relevant part:

> "We are focused on rapidly advancing the ongoing posoleucel Phase 3 registrational trials, with the goal of delivering a significant clinical advance for allo-HCT patients who currently have very limited therapeutic and preventive options for these common, yet devastating and potentially life-threatening, viral infections and diseases," said [Defendant] Brainard[.] "We are particularly excited to report final data before year-end from the Phase 2 multi-virus prevention study, where preliminary results supported the acceleration of our global Phase 3 study for this potential indication. Preventing clinically significant viral infections and diseases after allo-HCT represents the most transformative use of posoleucel."

***

> ***Recent Highlights***
>
> - The Phase 3 study of posoleucel for the prevention of clinically significant infections and end-organ disease from posoleucel's six target viruses in high-risk allo-HCT patients, continued to expand, with ongoing patient enrollment in the U.S., Europe and Asia.
>
> The multi-virus prevention study evaluates the use of posoleucel either as prophylactic therapy in patients without viremia or preemptive therapy for patients who have reactivated one or more of the target viruses: adenovirus (AdV), BK virus (BKV), cytomegalovirus (CMV), Epstein-Barr virus

(EBV), human herpes virus-6 (HHV-6) and JC virus (JCV). ***Multi-virus prevention has the potential to transform the management of allo-HCT patients, who currently have limited to no approved treatment or prevention options for these devastating infections that threaten patient survival***.

28.     That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2022 (the "Q3 2022 10-Q").  The Q3 2022 10-Q contained a substantively similar description of the Company as discussed, *supra*, in ¶ 23, and appended to the Q3 2022 10-Q as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

29.     On January 9, 2023, AlloVir issued a press release entitled "AlloVir Announces Plans to Complete Enrollment in Three Phase 3 Posoleucel Studies in 2023."  The press release quoted Defendant Brainard, stating, in relevant part:

> "***The positive posoleucel Phase 2 data we reported in 2022 and the enthusiasm we are seeing from transplant centers give us further confidence in our Phase 3 strategy for posoleucel and our ability to execute on our trials in 2023***," said [Defendant] Brainard. "Our Phase 2 multi-virus prevention study data underscore the potential for posoleucel to be transformative for allo-HCT patients by substantially reducing clinically significant infections from six viruses that are devastating for this vulnerable population. Viral infections are a leading cause of non-relapse mortality, generate substantial healthcare expenditures, exact a significant emotional burden on patients and their caregivers, and unfortunately most viruses targeted by posoleucel currently have no preventive therapies."

30.     On February 15, 2023, AlloVir issued a press release announcing the Company's full year 2023 financial results and 2023 outlook.  The press release stated, in relevant part:

> "With the acceleration of the posoleucel multi-virus prevention study and continued enrollment in the viral hemorrhagic cystitis and adenovirus treatment Phase 3 studies in 2022, the posoleucel franchise is positioned for potentially significant value creation over the next 12-24 months," said [Defendant] Brainard[.] "During 2023, we plan to complete enrollment in our Phase 3 registrational studies, which would enable data readouts in 2024 and, with positive results, regulatory filings and acceleration of commercial preparations to follow."

[Defendant] Brainard continued, "Today we also announced positive final Phase 2 results from our first study of posoleucel in the solid organ transplant setting, showing balanced safety across the posoleucel and placebo groups and clinically meaningful greater viral load declines with posoleucel versus placebo in kidney transplant patients with BKV. These results are important proof of concept for the use of posoleucel in the solid organ transplant setting. We look forward to working with regulatory authorities and transplant specialists on our future clinical development plans for this patient population with high unmet medical need."

31.    That same day, AlloVir filed an Annual Report on Form 10-K with the SEC,

reporting the Company's financial and operational results for the year ended December 31, 2022

(the "2022 10-K").  In providing an overview of the Company and posoleucel, the 2022 10-K

stated, in relevant part:

> If approved, we believe posoleucel has a large global market opportunity to treat and prevent devastating viral diseases. Based on the established epidemiology of our target Phase 3 indications, we estimate the addressable patient population for posoleucel will be approximately 41,000 HCT patients annually in 2025. The addressable patient population could expand beyond HCT patients into SOT patients as well as beyond the transplant setting to additional immunocompromised patients suffering from these devastating viral infections.
>
> ***
>
> Our management team has significant experience in successfully advancing products from early-stage discovery through commercialization. Our Chief Executive Officer, [Defendant] Brainard, has more than 20 years of experience in the biopharmaceutical industry and academic medicine.

32.    Further, in discussing the Company's pipeline, the 2022 10-K stated, in relevant

part:

> • **Posoleucel**. An allogeneic, off-the-shelf VST therapy candidate targeting six common viruses: AdV, BKV, CMV, EBV, HHV-6 and JCV, which can lead to devastating viral disease in the allogeneic HCT population. Given that posoleucel is multi-VST product candidate, the therapy has multiple potential applications. To this end, three Phase 3 registrational trials are ongoing– one for the treatment of virus-associated HC, one for the treatment of adenovirus infection and one for multi-virus prevention, all in HCT patients. All three Phase 3 trials are expected to complete enrollment in 2023, potentially enabling data readouts in 2024.

Promising efficacy and safety results from the completed Phase 2 treatment and prevention trials in allogeneic HCT patients enabled the rapid progression of posoleucel into Phase 3 development. In the CHARMS Phase 2 POC treatment trial, 95% of allogeneic HCT patients with infections from one or more of the target viruses and who previously failed or were intolerant to conventional antiviral treatments, achieved a clinical response when treated with posoleucel therapy. In the Phase 2 multi-virus prevention trial, posoleucel demonstrated a substantial reduction in the expected rate of clinically significant viral infections or diseases, with 88% of patients remained free of clinically significant infections caused by any of the six viruses that posoleucel targets through the Week 14 primary endpoint.

33.    In addition, in discussing the Company's strategy, the 2022 10-K stated, in relevant part:

Our goal is to extend our leadership position in the development of allogeneic, off-the-shelf VST-cell therapies to serve patients at risk of the life-threatening consequences of severe viral diseases. To achieve this, we are pursuing the following strategies:

- **Accelerate the completion of posoleucel registrational trials for three indications with no FDA-or EMA-approved or effective treatment options**. By targeting six devastating viral pathogens, we believe that posoleucel has the potential to fundamentally transform the care of HCT and SOT patients, as well as other individuals at high risk for opportunistic viral infections, by substantially reducing or preventing disease morbidity and dramatically improving patient outcomes. We have three ongoing Phase 3 trials of posoleucel – one for the treatment of virus-associated HC, one for the treatment of AdV infections, and one for multi-virus prevention – all in allogeneic HCT patients. These trials offer the fastest path to deliver posoleucel to patients in need, with the prevention indication offering the most transformative potential for the management of allogeneic HCT patients. We have successfully accelerated the multi-prevention study in recognition of this fact.

34.    Finally, in providing an overview of the Company's commercialization plan for posoleucel, the 2022 10-K stated, in relevant part:

***Our Commercialization Plan***

If approved, we intend to commercialize our highly innovative off-the-shelf VST therapies globally to serve a large number of patients suffering from the life-

threatening consequences of viral diseases. Initially, to launch our late clinical stage therapies for the treatment of transplant patients, we will establish a focused commercial infrastructure targeting high-volume transplant centers globally. Based on the relatively small number of transplant centers that perform the majority of these transplant procedures, we believe that the entire target market for our VST therapies could be served by a small global team. In the US, there are approximately 185 stem cell transplant centers, of which the top 70 centers perform 80% of the allogeneic HCT, and in the five major European countries (Germany, France, UK, Italy, Spain) there are approximately 410 stem cell transplant centers, of which the top 129 centers perform 80% of allogeneic HCT. Furthermore, in the U.S. there are approximately 240 centers performing kidney transplants, of which the top 100 centers perform 80% of the transplants. We believe that many of these same transplant centers will also have participated in our pivotal and proof-of-concept trials for posoleucel and ALVR106 and will have significant experience with our investigational VSTs, which will support commercial launch and adoption of our therapies. As we eventually progress to serve non-transplant patients at high-risk for the life-threatening consequences of viral diseases, we will expand our global commercial capabilities.

Our team has extensive experience launching and commercializing specialty pharmaceuticals globally with a strong track record of achieving broad patient access resulting in industry leading product launches. By targeting severe viral diseases that result in prolonged hospitalization, multi-organ disease and failure and increased risk of death, and currently have limited or no treatment options, we believe that our therapies have the potential to transform the lives and care of patients globally.

35.    Appended to the 2022 10-K as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

36.    On May 4, 2023, AlloVir issued a press release announcing the Company's Q1 2023 financial results.  The press release stated, in relevant part:

"We continue to focus our efforts on rapidly advancing the three global Phase 3 ongoing registrational trials evaluating our lead investigational product, posoleucel, for the prevention and treatment of common, yet devastating, and potentially life-threatening viral infections and diseases in allo-HCT patients where significant unmet need persists," said [Defendant] Brainard[.] "In tandem, we reported final positive results from the Phase 2 study of posoleucel for the treatment of BKV, the first demonstration of its safety and antiviral effect in solid organ transplant recipients. We continue to be encouraged by the potential of posoleucel as a transformative therapeutic for transplant patients."

37.    That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2023 (the "Q1 2023 10-Q").  The Q1 2023 10-Q contained a substantively similar description of the Company as discussed, *supra*, in ¶ 23, and appended to the Q1 2023 10-Q as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

38.    On August 3, 2023, AlloVir issued a press release announcing the Company's Q2 2023 financial results.  The press release stated, in relevant part:

> "We are excited to be advancing our company's three Phase 3 global registrational trials of posoleucel for three indications that threaten allo-HCT recipients. Treating and preventing life-threatening viral infections using T cells that focus on restoring natural immunity addresses a significant unmet need for allo-HCT patients, which could have a significant impact on patient outcomes, morbidity, and survival," said [Defendant] Brainard[.] "We are very pleased with our progress to date and are on track to report data from all three studies in the second half of 2024."

39.    That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2023 (the "Q2 2023 10-Q").  The Q2 2023 10-Q contained a substantively similar description of the Company as discussed, *supra*, in ¶ 23, and appended to the Q2 2023 10-Q as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

40.    On November 2, 2023, AlloVir issued a press release announcing the Company's Q3 2023 financial results.  The press release stated, in relevant part:

> "At AlloVir, we are dedicated to serving immunocompromised patients suffering from devastating and life-threatening viral diseases," said [Defendant] Brainard[.] "We are working with urgency to complete enrollment in our three global Phase 3 pivotal trials of posoleucel to deliver this potentially transformative therapy to patients that can benefit from the prevention and treatment of viral diseases with limited to no approved or effective therapies today. We expect a catalyst rich next

12 months with clinical and regulatory milestones and continued commercial preparations in advance of a potential 2025 launch."

41.     That same day, AlloVir filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2023 (the "Q3 2023 10-Q").  The Q3 2023 10-Q contained a substantively similar description of the Company as discussed, *supra*, in ¶ 23, and appended to the Q3 2023 10-Q as exhibits were substantively similar certifications signed pursuant to SOX by the Individual Defendants as referenced, *supra*, in ¶ 24.

42.     The statements referenced in ¶¶ 20-41 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the posoleucel Phase 3 Studies were unlikely to meet their primary endpoints; (ii) as a result, it was likely that the Company would ultimately discontinue the posoleucel Phase 3 studies; (iii) accordingly, AlloVir overstated the efficacy and clinical and/or commercial prospects of posoleucel; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

43.     On December 22, 2023, AlloVir issued a press release entitled "AlloVir Provides Updates on Phase 3 Clinical Development Program for Posoleucel, an Allogeneic Virus-Specific T Cell Therapy."  The press release stated, in relevant part:

> AlloVir [. . .] today provided an update on its three Phase 3 clinical trials with posoleucel, an investigational off-the-shelf multi-virus-specific T cell therapy, which targets six viral pathogens in immunocompromised individuals: adenovirus (AdV), BK virus (BKV), cytomegalovirus (CMV), Epstein-Barr virus (EBV), human herpesvirus-6 (HHV-6) and JC virus (JCV). The company will discontinue its three global Phase 3 posoleucel studies – for prevention of clinically significant infections or diseases by multiple viruses, treatment of virus-associated

15

hemorrhagic cystitis (vHC), and treatment of adenovirus (AdV) – following allogeneic hematopoietic cell transplant (allo-HCT). The company made the determination following three pre-planned analyses by three independent Data Safety Monitoring Boards (DSMBs) each of which recommended stopping its respective trial for futility after a review of the data suggested that each study was unlikely to meet its primary endpoint. There were no observed safety concerns raised by any of the DSMBs.

AlloVir is in the process of notifying regulatory agencies and clinical trial investigators involved in these trials of the findings.

"While we are disappointed by the unexpected outcome of these trials, we are encouraged by the apparent safety profile of posoleucel," said [Defendant] Brainard [.] "In light of the DSMB recommendations, we will discontinue the prevention, vHC and AdV Phase 3 trials. We will continue to analyze the data from these studies to understand any variables that may have impacted outcomes or any apparent subpopulation benefits. We thank the patients, investigators and staff who participated in the trials."

[Defendant] Brainard continued, "We established pre-planned futility analyses across these three Phase 3 trials, as each assessed a potentially highly innovative treatment for patients suffering with severe and complex medical conditions lacking significant prior clinical development, and we also expected the trials would require substantial additional capital to bring them to completion. With these current results, we will immediately shift our focus to preserve our substantial remaining capital, review our pipeline and assess strategic options."

AlloVir will review strategic alternatives for the Company and its portfolio of virus-specific T cell therapies. Such alternatives may include a merger, sale, divestiture of assets, licensing, or other strategic transaction. As of September 30, 2023, AlloVir had cash, cash equivalents and short-term investments of $213.3 million.

44.    On this news, AlloVir's stock price fell $1.57 per share, or 67.38%, to close at $0.76 per share on December 22, 2023.

45.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

46.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

47.     Additionally, with the market price of AlloVir stock artificially inflated based on Defendants' false and misleading statements and omissions, Defendants Brainard and Sinha sold a substantial amount of AlloVir stock during the Class Period.  Specifically, Defendant Brainard sold more than *$567,000* of her shares of AlloVir stock at prices as high as $7.76 per share, while Defendant Sinha sold more than *$126,000* of his shares of AlloVir stock at prices as high as $9.36 per share, presaging the Company's eventual discontinuation of the posoleucel Phase 3 studies.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AlloVir securities were actively traded on the

17

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may

be identified from records maintained by AlloVir or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in

securities class actions.

50.    Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation of

federal law that is complained of herein.

51.    Plaintiff will fairly and adequately protect the interests of the members of the Class

and has retained counsel competent and experienced in class and securities litigation. Plaintiff has

no interests antagonistic to or in conflict with those of the Class.

52.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AlloVir;

- whether the Individual Defendants caused AlloVir to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AlloVir securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

54.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AlloVir securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AlloVir securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

55.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AlloVir securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AlloVir securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

60.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for AlloVir securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AlloVir's finances and business prospects.

61.     By virtue of their positions at AlloVir, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

62.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of AlloVir, the Individual Defendants had knowledge of the details of AlloVir's internal affairs.

63.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MARATHON. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AlloVir's businesses, operations, future financial condition and future prospects. As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AlloVir securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning AlloVir's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AlloVir securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

64.     During the Class Period, AlloVir securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AlloVir securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AlloVir securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of AlloVir securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

65.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

67.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Class Period, the Individual Defendants participated in the operation and management of AlloVir, and conducted and participated, directly and indirectly, in the conduct of AlloVir's business affairs. Because of their senior positions, they knew the adverse non-public information about AlloVir's misstatement of income and expenses and false financial statements.

69.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AlloVir's financial condition and results of operations, and to correct promptly any public statements issued by AlloVir which had become materially false or misleading.

70.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AlloVir disseminated in the marketplace during the Class Period concerning AlloVir's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AlloVir to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of AlloVir within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AlloVir securities.

71.     Each of the Individual Defendants, therefore, acted as a controlling person of AlloVir. By reason of their senior management positions and/or being directors of AlloVir, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AlloVir to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of AlloVir and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

72.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AlloVir.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 19, 2024                              Respectfully submitted,

                                                      POMERANTZ LLP

                                                      */s/ Emily C. Finestone*
                                                      Emily C. Finestone

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*