**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JENNIFER ZERBATO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLOVIR, INC., DIANA M. BRAINARD, and VIKAS SINHA, <br><br> Defendants. | Case No. 1:24-cv-10152-DJC <br><br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
<u>**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

Caroline H. Bullerjahn
Justin D. Ward
Brendan Blake
Laura Noerdlinger
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

*Counsel for Defendants AlloVir, Inc., Diana M. Brainard, and Vikas Sinha*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.      The AC Fails to Plead Scienter. ................................................................................ 2

      A.      The Opposition Confirms that Plaintiffs' Scienter Theory Is Supported by
            Speculation, Not Particularized Facts. ................................................................ 2

      B.      The AC Does Not Identify Any Colorable Motive or Personal Benefit to
            Individual Defendants, Undercutting Scienter. .................................................. 6

      C.      The Core Operations Doctrine Does Not Bolster an Inference of Scienter. .......... 7

      D.      Nonfraudulent Inferences Outweigh Any Inference of Scienter. ......................... 8

Ii.     The AC Fails to Plead Falsity. .................................................................................. 8

      A.      The AC Does Not Plead Any Misstatement with Particularity. ........................... 8

      B.      The Alleged Misstatements are Nonactionable Because They Are
            Protected Forward-Looking Statements, Inactionable Opinion, and/or
            Puffery. .............................................................................................................. 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Angelos v. Tokai Pharms., Inc.*,
   494 F. Supp. 3d 39 (D. Mass. 2020) ................................................................................2, 4, 5

*Auctus Fund, LLC v. Endonovo Therapeutics, Inc.*,
   2022 WL 2387883 (D. Mass. Feb. 28, 2022) ...........................................................................9

*Baron v. Smith*,
   380 F.3d 49 (1st Cir. 2004)........................................................................................................9

*In re Biogen Inc. Sec. Litig.*,
   193 F. Supp. 3d 5 (D. Mass. 2016), *aff'd* 857 F.3d 34 (1st Cir. 2017)...................................10

*Brennan v. Zafgen, Inc.*,
   199 F. Supp. 3d 444 (D. Mass. 2016), *aff'd*, 853 F.3d 606 (1st Cir. 2017).............................7

*Brill v. Invivyd, Inc.*,
   2024 WL 4228832 (D. Mass. Sept. 18, 2024) .........................................................................10

*Cody v. Conformis, Inc.*,
   199 F. Supp. 3d 409 (D. Mass. 2016) .......................................................................................2

*Collier v. ModusLink Global Solutions, Inc.*,
   9 F. Supp. 3d 61 (D. Mass. 2014) .............................................................................................6

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
   22 F.4th 1 (1st Cir. 2021)...........................................................................................................7

*Dahhan v. OvaScience, Inc.*,
   321 F. Supp. 3d 247 (D. Mass. 2018) ....................................................................................7, 9

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
   466 F.3d 1 (1st Cir. 2006)..........................................................................................................7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023) ....................................................................................................10

*Hackel v. AVEO Pharms., Inc.*,
   474 F. Supp. 3d 468 (D. Mass. 2020) .......................................................................................9

*Harrington v. Tetraphase Pharms. Inc.*,
   2017 WL 1946305 (D. Mass. May 9, 2017).............................................................................4

ii

*Huddleston v. Herman & MacLean*,
  640 F.2d 534 (5th Cir. 1981), *aff'd in part, rev'd in part*, 459 U.S. 375 (1983) ......................10

*In re iRobot Corp. Sec. Litig.*,
  527 F. Supp. 3d 124 (D. Mass. 2021) ................................................................................7

*Kadar v. Sarepta Therapeutics, Inc.*,
  2016 WL 1337256 (D. Mass. Apr. 5, 2016) ....................................................................5, 8

*Leavitt v. Alnylam Pharms., Inc.*,
  451 F. Supp. 3d 176 (D. Mass. 2020) ................................................................................6

*Lerner v. Nw. Biotherapeutics*,
  273 F. Supp. 3d 573 (D. Md. 2017) ................................................................................5, 6

*Payne v. DeLuca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006) ................................................................................7

*Pizzuto v. Homology Medicines, Inc.*,
  2024 WL 1436025 (D. Mass. Mar. 31, 2024) ................................................................3, 10

*Quinones v. Frequency Therapeutics, Inc.*,
  665 F. Supp. 3d 156 (D. Mass. 2023), *aff'd*, 106 F.4th 177 (1st Cir. 2024) ......................6, 8

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
  F.3d 199 (2d Cir. 2016) ....................................................................................................4

*State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*,
  2024 WL 3258293 (D. Mass. July 1, 2024) ......................................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ..........................................................................................................8

*Terumo Americas Holding, Inc. v. Tureski*,
  2016 WL 5376300 (D. Mass. May 23, 2016) ....................................................................3

*Tran v. XBiotech Inc.*,
  2016 WL 5408382 (W.D. Tex. Sept. 23, 2016) ................................................................3

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
  319 F. Supp. 2d 152 (D. Mass. 2004) ..............................................................................10

*Vallabhaneni v. Endocyte, Inc.*,
  2016 WL 51260 (S.D. Ind. Jan. 4, 2016) ..........................................................................4

*In re Wayfair, Inc. Sec. Litig.*,
  471 F. Supp. 3d 332 (D. Mass. 2020) ................................................................................2

iii

**Statutes:**

15 U.S.C. § 78u-4 ...............................................................................................................2

15 U.S.C. § 78u-5 ...............................................................................................................9

Private Securities Litigation Reform Act of 1995 ...................................................1, 2, 9

**Rules:**

Fed. R. Civ. P. 9(b) ..........................................................................................................1, 2

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief (ECF No. 60, the "Opposition" or "Opp.") doubles down on the AC's speculative attempt to plead fraud.[1] Like the AC, the Opposition relies on guesswork to generate approximate dates when the DSMBs for AlloVir's three Phase 3 clinical Trials supposedly recommended that the Trials be terminated. But guesstimates and back-of-the-envelope math are not well-pleaded allegations of fact, and cannot meet the demanding requirements of the PSLRA or Rule 9(b) to support a claim of fraud.

The Opposition confirms that the AC should be dismissed with prejudice for two independent reasons.

***First***, Plaintiffs' scienter allegations rest on speculation about what Defendants knew and when they knew it. Like the AC, the Opposition again purports to calculate approximate dates when the DSMBs supposedly analyzed data from the Trials, made their recommendations about the Trials, and communicated those recommendations to Defendants. But Plaintiffs' guesstimates rest on wildly implausible assumptions and are contrary to the very SPs and SAPs that Plaintiffs cite. Nor does the Opposition offer any explanation of how the Individual Defendants personally benefitted from the alleged fraud. Moreover, the Opposition also does not counter the far more compelling inference here that Defendants learned of the DSMB recommendations shortly before they were disclosed.

***Second***, the AC fails to plead any misstatement with the required particularity because each relies on speculation, not particularized facts. Furthermore, the Opposition fails to meaningfully address that many of the statements were inactionable forward-looking, opinions, and/or puffery.

---

[1] Capitalized terms used but not defined in this reply have the meanings assigned in Defendants' opening brief, ECF No. 56 (the "MTD"). As in the MTD, quotation marks, internal citations, and alterations in the original have been omitted in citations, and emphasis has been added, unless otherwise noted.

1

**ARGUMENT**

**I.    The AC Fails to Plead Scienter.**

**A.    The Opposition Confirms that Plaintiffs' Scienter Theory Is Supported by Speculation, Not Particularized Facts.**

The PSLRA requires the complaint to "state ***with particularity facts*** giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A); *see also* Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake"). The AC does the opposite, relying on speculation instead of facts. Plaintiffs' Opposition admits as much. It assumes that average, "approximate[]" patient enrollment rates were fixed and constant, and based on that assumption, it speculates about when the Individual Defendants supposedly became aware of the DSMBs' recommendations: January 10, 2023 (Prevention Trial), September 2, 2023 (Cystitis Trial), and October 10, 2023 (Adenovirus Trial). *See* Opp. at 8.

These dates are mere guesstimates, representing ***approximate*** dates when the DSMBs ***may*** have made their recommendations. Such "guesswork does not measure up to the standard required by the PSLRA." *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 421 (D. Mass. 2016). Rather, the PSLRA requires concrete factual support, such as "internal records or witnessed discussions." *Angelos v. Tokai Pharms., Inc.*, 494 F. Supp. 3d 39, 57 (D. Mass. 2020). In a footnote, Plaintiffs effectively admit that their alleged dates are approximations that may not be accurate, but assert they can prevail "[e]ven if the Court accepts Defendants' arguments contesting the exact dates alleged in the AC." Opp. at 7 n.3. Not so; the law of this District requires more, and unless Plaintiffs can allege with particularity when the DSMBs acted and communicated their decisions to Defendants, their claims fail. *See In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 345 (D.

2

Mass. 2020) (plaintiffs must supply facts, not "merely speculate").[2]

Plaintiffs' guesswork is too unreliable to support even approximate dates. The AC assumes that patients enrolled at a constant rate (*see* Opp. at 8), but it is well recognized that clinical enrollment is not constant (*see* MTD at 10–11).[3] The Opposition argues that statements about "robust enrollment" must mean that all three Trials enrolled patients at a constant rate (Opp. at 8), but "robust" does not mean linear or constant. Next, Plaintiffs assume that the DSMBs completed and communicated their analyses instantly once the data was (allegedly) available. *See id*. at 9. The Opposition tries to defend this assumption by asserting that the DSMBs' analyses were "straightforward, binary tests." *Id.* But as courts within this District have recognized, in the realm of clinical trials, even "straightforward" analyses take time. *See Pizzuto v. Homology Medicines, Inc.*, 2024 WL 1436025, at *17 (D. Mass. Mar. 31, 2024) (implausible that defendant "would have had sufficient time to analyze the results" of a clinical trial in "[o]nly one day").[4] Indeed, the AC itself describes the analyses as "formal" and "conducted by an independent unblinded statistician" (AC ¶¶ 58, 76, 89), undercutting any inference that such analyses would be instantaneous.

Plaintiffs' guesswork is further undermined by the SPs and SAPs that Plaintiffs cite. As reflected in these documents, AlloVir changed the Prevention Trial enrollment criteria months after the DSMB allegedly performed its analyses and informed Defendants that it was futile. MTD

---

[2] Plaintiffs grossly mischaracterize Defendants' brief as arguing "that the results of the DSMBs' futility analyses for the three Trials all came down on December 22, 2023." Opp. at 8. Defendants make no such argument. Rather, if the DSMB recommendations came down at any time over a month and a half—between the last alleged misstatement on November 2, 2023 (*see* AC ¶¶ 149–155) and the alleged corrective disclosure on December 22, 2023 (*see* AC ¶¶ 156–160)—then there necessarily can be no viable claim of fraud.

[3] The Opposition asserts that Defendants "cherry-pick[ed]" language from *Terumo Americas Holding, Inc. v. Tureski*, 2016 WL 5376300 (D. Mass. May 23, 2016), and *Tran v. XBiotech Inc.*, 2016 WL 5408382 (W.D. Tex. Sept. 23, 2016). Opp. at 8 n.4. Wrong. In each case, enrollment was uneven and delayed. *See Terumo Americas Holding*, 2016 WL 5376300, at *3 ("During the first year of the Trial, enrollment was slower than anticipated."); *XBiotech*, 2016 WL 5408382, at *4 ("Patient enrollment, a significant factor in the time of clinical trials, is affected by many factors….").

[4] Plaintiffs try to distinguish *Homology Medicines* by arguing that the alleged misstatement there was immaterial. Opp. at 9 n.5. That is no distinction at all, because the *Homology* court also found a lack of scienter, and the cited quotation was made in the context of the scienter analysis. *See Homology Medicines*, 2024 WL 1436025, at *17.

at 12–13. The Opposition speculates that Defendants changed the enrollment criteria because they knew the Trial was "dead in the water." Opp. at 10–11. This not only ignores the reality of clinical trials, but under the law of this Circuit, the fact that AlloVir continued to dedicate time and resources to the Trial **undermines** an inference of scienter. *See, e.g.*, *Harrington v. Tetraphase Pharms. Inc.*, 2017 WL 1946305, at *6 (D. Mass. May 9, 2017) ("[W]hen a pharmaceutical company ma[kes] the investment necessary to design and perform a study, the company must have thought that positive results were possible, even if not probable.").[5] Moreover, the SPs and SAPs from before November 2023 all present the futility analyses as occurring at some point in the future, whereas the lone document dated after November 2023 (**after** all of the alleged misstatements) acknowledged that termination had already occurred. MTD at 12. The Opposition responds that "Defendants raise a question of fact as to why one SAP was changed in one place." Opp. at 10. But it is Plaintiffs who have chosen to rely on these documents as the **only** support for their fraud claim, and "[w]hen such documents [incorporated by reference] contradict an allegation in the complaint, the document trumps the allegation." *Tokai Pharms.*, 494 F. Supp. 3d at 46.

Lacking any well-pleaded support, the Opposition resorts to inventing a narrative, for the first time in the Opposition, that "AlloVir internally unblinded the posoleucel Trials." Opp. at 1. That is not alleged anywhere in the AC. To the contrary, the AC repeatedly acknowledges that the Trials were "double-blind" (AC ¶¶ 35, 49, 64, 66, 83), explaining that the data was given to an "independent unblinded statistician" for the futility analyses but was otherwise "kept confidential" and would "not be accessible to . . . the Sponsor's [*i.e.*, AlloVir's] team and medical monitor" (*see*

---

[5] The Opposition tries to distinguish *Tetraphase* and *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260 (S.D. Ind. Jan. 4, 2016), on the basis that the defendants there allegedly realized a trial was futile before it started, not while it was ongoing. *See* Opp. at 15. But in *Endocyte*, the defendants "**continued** to fund the Phase 3 studies for almost three years." 2016 WL 51260, at *13; *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 531 (S.D.N.Y. 2015) (inference "that Sanofi acquired Genzyme and **continued** to fund the Lemtrada clinical trials while secretly believing that FDA approval was unlikely, impossible, or, if achievable, only on a delinquent time schedule" was "implausible and conjectural"), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

AC ¶¶ 76, 89). Plaintiffs cannot stave off dismissal through assertions that are contradicted by their own complaint and lack any factual support. *See Tokai Pharms.*, 494 F. Supp. 3d at 46.

This case is no different from *Kadar v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256 (D. Mass. Apr. 5, 2016), where a biopharma company allegedly misled investors by failing to disclose that, in an April 2014 meeting and guidance letter, FDA supposedly informed executives that existing clinical data was deficient. *Id.* at *7–10. The plaintiffs had no witnesses or documents attesting to the content of these regulatory communications; instead, they sought to infer what FDA had said and when based on a strained interpretation of a subsequent FDA statement. *See id.* at *4–7, *17. The court declined to credit Plaintiffs' guesswork as well-pleaded fact, dismissing for lack of scienter because "Plaintiffs have not offered any compelling explanation of why Defendants' statements or omissions were fundamentally at odds with any guidance the FDA purportedly provided." *Id.* at *18. Similarly here, Plaintiffs' scienter allegations rest on speculative assumptions grounded in facially unreliable interpretations of the SPs and SAPs.[6]

*Lerner v. Northwest Biotherapeutics*, 273 F. Supp. 3d 573 (D. Md. 2017), is also factually on point. There, the plaintiffs relied on an expert's opinion to allege that "there is absolutely no reason why an interim analysis [by a DSMB] could not be completed within a few weeks." *Id.* at 590. The court rejected this speculation. *Id.* The allegations here are even weaker: Plaintiffs have no expert, and they assert that the DSMBs completed their analyses in just hours, not weeks. Plaintiffs strain to distinguish the allegations in *Lerner* (Opp. at 9 n.6), but that argument fails. In *Lerner*, as here, "[t]he gravamen of Plaintiffs' objections regarding the interim review by DSMB appears to be that it took too long, or that Defendants somehow delayed announcing conclusive

---

[6] Plaintiffs purport to distinguish *Sarepta* by arguing that, there, the plaintiffs failed to allege "knowledge of when the drug trial failed." Opp. at 18. However, in *Sarepta*, plaintiffs **did** in fact allege when and how FDA supposedly communicated negative comments. *See* 2016 WL 1337256, at *4–10. Despite having a patina of specificity, those allegations failed because they were wholly speculative. The same applies to the allegations here.

results, or concealed the results altogether." 273 F. Supp. 3d at 590.

### B.    The AC Does Not Identify Any Colorable Motive or Personal Benefit to Individual Defendants, Undercutting Scienter.

As the MTD argued, the AC does not explain how any Individual Defendant benefitted from the alleged fraud; there are, for example, no allegations of bonuses or stock sales. MTD at 13–14, 18–19. Nor does it make any sense to infer that Defendants intentionally delayed releasing bad news, only to disclose it just months later during the same fiscal year. MTD at 14–15. In response, the Opposition does not explain how the Individual Defendants personally benefitted from the alleged fraud. *See* Opp. at 12–13. While it vaguely asserts that the Individual Defendants "benefitted substantially" by keeping AlloVir "afloat" for a few more months (Opp. at 16), it does not articulate what this benefit might be. In this Circuit, the absence of ***any*** alleged personal benefit, as here, undermines scienter. *See Quinones v. Frequency Therapeutics, Inc.*, 665 F. Supp. 3d 156, 175 (D. Mass. 2023) ("[T]he absence of sales from *any* other Frequency insider during the Class Period further undercuts an inference of scienter" (emphasis in original)), *aff'd*, 106 F.4th 177 (1st Cir. 2024); *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 188 (D. Mass. 2020) ("Mr. Soni did not trade at all, a fact that, while not dispositive, undercuts the inference of scienter for the other named defendants.").[7]

Rather than identifying any personal benefit to the Individual Defendants, the Opposition theorizes that Defendants lied about the results of the Prevention Trial "to keep up the appearance

---

[7] Plaintiffs cite *Collier v. ModusLink Global Solutions, Inc.*, 9 F. Supp. 3d 61 (D. Mass. 2014), for the counterintuitive proposition that a lack of insider sales somehow ***supports*** scienter through an inference that defendants "avoid[ed] the appearance of wrongdoing." *Id.* at 74; *see* Opp. at 17. Subsequent case law has rejected this argument. *See Frequency Therapeutics*, 665 F. Supp. 3d at 175–76. In *Frequency*, the court held that Plaintiffs' argument "is somewhat paradoxical and is devoid of merit": not only is it "difficult to see how the act of refraining from engaging in an unlawful activity can be evidence that such activity took place," it also "would essentially reverse the burden of proving scienter and place it on the Defendants." *Id.* at 176. The court further explained that this argument misreads *ModusLink*, where "the court limited itself to noting that the absence of insider trading did not conclusively undercut an inference of scienter based on other facts." *Id.* (citing *ModusLink*, 9 F. Supp. 3d at 73).

that the Company had a potentially commercially viable product" while they hoped for better results in the Cystitis and Adenovirus Trials. Opp. at 12–14. This boilerplate allegation is not sufficient to support an inference of scienter. *See Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 5 (1st Cir. 2006) (no scienter where defendants were allegedly motivated by a "wish[] to keep [the company] viable as a going concern").[8] Plaintiffs' theory also makes no sense. The AC does not allege that Defendants came clean after they received the DSMB recommendations for the Cystitis and Adenovirus Trials, but rather asserts that Defendants continued to hide all three recommendations for several additional months before disclosing them in December. *See* AC ¶¶ 64–92. Plaintiffs proffer no motive explaining why Defendants would do so.[9]

### C. The Core Operations Doctrine Does Not Bolster an Inference of Scienter.

Given the absence of any personal motive allegations, Plaintiffs resort to placing great weight on the "core operations" doctrine. *See* Opp. at 11. While the "core operations" doctrine can support an inference that important information in the possession of lower-level employees will percolate up to senior executives who make statements to investors, *see In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 141 (D. Mass. 2021),[10] here there are no well-pleaded facts that ***anyone***

---

[8]  *See also Payne v. DeLuca*, 433 F. Supp. 2d 547, 565 (W.D. Pa. 2006) ("Prolonging the company's survival . . . surely falls within those generalized motives which . . . can be ascribed to virtually all corporate officers and directors and thus may not be used to establish scienter."). Plaintiffs attempt to distinguish Defendants' cited cases as not involving "a company [that] had never earned any revenue, had no marketable products, and Defendants concealed information that if/when disclosed would effectively wipe out the Company." Opp. at 12–13. This is simply not the case. *See Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 452 (D. Mass. 2016) (allegations that "defendants had a strong motive to commit securities fraud because Zafgen is a one-drug company and defendants knew they would rise or fall based solely on [that drug]'s future" not sufficient), *aff'd*, 853 F.3d 606 (1st Cir. 2017).

[9]  The Opposition also does not dispute that AlloVir had adequate cash to fund its operations through the end of 2023, undercutting the June 2023 stock offering as a motive to delay disclosing negative information until December 2023. *See* MTD at 14–15. Plaintiffs make an offhand assertion that the Individual Defendants used the offering to raise "seed money for a merger with another pharmaceutical company producing an entirely different drug." Opp. at 13–14. This motive theory is not just absent from the AC, but facially speculative.

[10]  Plaintiffs' cited cases are to the same effect. *See Dahhan v. OvaScience, Inc.*, 321 F. Supp. 3d 247, 255 (D. Mass. 2018) (core operations supported inference that executives knew that internal company data showed sales target was not achievable); *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 9–10 (1st Cir. 2021) (core operations supported inference that executives knew that the company's main product was not functional).

at AlloVir had received the DSMB recommendations at the time of the alleged misstatements. *See supra* at 2–6. The core operations doctrine cannot correct that flaw.[11]

### D.     Nonfraudulent Inferences Outweigh Any Inference of Scienter.

Finally, as the MTD explained, any inference of scienter pales in comparison to the nonfraudulent inference: that Defendants did not learn the results of the DSMBs' analyses and recommendations until shortly before they were disclosed.[12] AlloVir continued to invest in the Trials during that time period; the Individual Defendants gained nothing by delaying disclosure of this bad news until December 2023; and it made no sense to voluntarily design the trials with futility analyses, only to then choose to hide the results of that analyses when received. MTD at 16–19. Any contrary inference of scienter is weak, not "cogent" or "compelling." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007); *see Frequency Therapeutics*, 665 F. Supp. 3d at 180–81 (in the absence of insider stock sales, the more compelling inference was that executives did not possess negative information about drug trials).

## II.     The AC Fails to Plead Falsity.

### A.     The AC Does Not Plead Any Misstatement with Particularity.

Plaintiffs have not alleged falsity because the AC's core allegations—the dates when Defendants supposedly learned of the DSMBs' recommendations—are speculative. Plaintiffs' theory relies on guesses and faulty assumptions. *Supra* at 2–6. Here too, this case is the same as *Sarepta*, where plaintiffs' timing allegations were rejected as facially speculative. *Supra* at 5; *see also State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*, 2024 WL 3258293, at *9 (D. Mass. July 1, 2024) (Casper, J.) (misstatements must be adequately alleged to have been "false

---

[11] Similarly, allegations about experience and education add nothing to the analysis. Opp. at 11 n.8. No amount of experience could make the Individual Defendants aware of recommendations that had not yet been communicated.

[12] Here too, the Opposition attacks a strawman, mischaracterizing Defendants' brief as arguing that the Trials "all had futility analyses completed on the same day, and on that same day Defendants apprised the market." Opp. at 14–15. Defendants have made no such argument. *Supra* at 3 n.2.

when made"); *Auctus Fund, LLC v. Endonovo Therapeutics, Inc.*, 2022 WL 2387883, at *4 (D. Mass. Feb. 28, 2022) (granting dismissal where "[plaintiff] has simply failed to assert any non-conclusory facts to show that [defendant]'s April 2019 statements were false when made").

## B.    The Alleged Misstatements are Nonactionable Because They Are Protected Forward-Looking Statements, Inactionable Opinion, and/or Puffery.

*First*, contrary to the Opposition's arguments, many of the statements are protected by the statutory safe harbor for forward-looking statements. MTD at 21–23. The Opposition asserts that Defendants' "then-current expectations of the Trials" (*e.g.*, "[t]he three Phase 3 studies are expected to complete enrollment by the end of 2023," AC ¶ 115) were somehow statements of "present" fact. Opp. at 20. "[D]espite Plaintiff[s'] claims to the contrary, Defendants' statements about the projected timeline for receiving and analyzing topline results were clearly forward-looking." *Hackel v. AVEO Pharms., Inc.*, 474 F. Supp. 3d 468, 478 (D. Mass. 2020). The Opposition also makes a sweeping argument that omissions of fact are never protected by the PSLRA safe harbor. Opp. at 19–20. That is contrary to the express language of the statute, which applies to claims based on a "statement of a material fact ***or omission of a material fact necessary to make the statement not misleading***." 15 U.S.C. § 78u-5(c)(1); *see Baron v. Smith*, 380 F.3d 49, 53–54 (1st Cir. 2004) ("To the extent that plaintiffs seek to state a claim . . . that the company omitted material information from its filings, we agree with the district court that the press release contained forward-looking statements . . . and therefore comes under the protection of the statutory safe harbor.").[13]

The Opposition's argument that the statements were made with actual knowledge of falsity fails for the reasons already set forth above. *See supra* at 2–8. In addition, AlloVir's cautionary

---

[13]  Plaintiffs' overbroad reading of *OvaScience* to hold that omissions of fact are ***never*** protected by the safe harbor (Opp. at 19) is contradicted by the plain text of the statute. *OvaScience* stands for the more limited proposition that, if a statement has both future and present aspects, only the future aspects are protected. *See* 321 F. Supp. 3d at 253–54.

9

language was adequate. MTD at 22. While Plaintiffs argue that the relevant risk had already come to pass (Opp. at 21–22), that argument is impermissibly speculative. *See Homology Medicines*, 2024 WL 1436025, at *12 ("Plaintiffs' claims rely on speculation—that Homology must have concealed some risk since the FDA issued a clinical hold. This speculation is not enough.").[14]

***Second***, many of the alleged misstatements are inactionable opinions. MTD at 23–24. The Opposition argues that these opinions did "not fairly align with the facts known to the speaker." Opp. at 23. But the purported "facts" are Plaintiffs' speculative recommendation dates, and speculation is not a valid basis to challenge opinions. *Brill v. Invivyd, Inc.*, 2024 WL 4228832, at *8 (D. Mass. Sept. 18, 2024) (no misstatement where "[t]he plaintiffs have not adequately alleged that the defendants misrepresented their belief that [defendants' expectations about their drug] fairly aligned with the facts known to them").[15] The Opposition also suggests that "positive" statements about clinical trials cannot be opinions (Opp. at 22), which is contrary to case law.[16]

***Third***, while Plaintiffs suggest that puffery should not be addressed on a motion to dismiss (Opp. at 24–25), courts in this Circuit routinely dismiss indistinguishable statements as puffery. *See, e.g.*, *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 41–42 (D. Mass. 2016) (explaining that descriptions of a drug as "a compelling treatment option" and "a terrific product" were "immaterial expressions of corporate optimism or puffery"), *aff'd* 857 F.3d 34 (1st Cir. 2017).

## CONCLUSION

Defendants respectfully request that the Court dismiss the AC with prejudice.

---

[14] That distinguishes Plaintiffs' cited cases, where allegations that the risk had come to pass were supported by well-pleaded facts. *See, e.g.*, *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 772 (9th Cir. 2023) (allegations supported by multiple confidential witnesses); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544, 552 (5th Cir. 1981) (witnesses and internal documents), *aff'd in part, rev'd in part*, 459 U.S. 375 (1983).

[15] *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152 (D. Mass. 2004), is of no help to Plaintiffs because the court ***dismissed*** alleged misstatements similar to those at issue here, such as "[defendant] believes that an Advisory Committee meeting will allow [defendant] to address FDA's concerns." *Id.* at 161 n.11.

[16] *See Homology Medicines*, 2024 WL 1436025, at *9 (statements "calling the safety and efficacy data 'positive'" were opinions because "[c]ourts have repeatedly held that interpretations of results of clinical studies are opinions").

Dated:  December 12, 2024

Respectfully submitted,

ALLOVIR, INC., DIANA BRAINARD, and
VIKAS SINHA

By their attorneys,

/s/ *Caroline H. Bullerjahn*
Caroline H. Bullerjahn (BBO No. 657241)
Justin D. Ward (BBO No. 711928)
Brendan Blake (BBO No. 710755)
Laura Noerdlinger (BBO No. 711482)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000
Fax: 617-523-1231
cbullerjahn@goodwinlaw.com
jward@goodwinlaw.com
bblake@goodwinlaw.com
lnoerdlinger@goodwinlaw.com

*Counsel for Defendants*

11