## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ZERBATO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLOVIR, INC., DIANA M. BRAINARD, and VIKAS SINHA,<br><br>Defendants. | Case No. 1:24-cv-10152-DJC<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   BACKGROUND OF THE LITIGATION .............................................................. 2

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................. 3

    A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ................................................................................................ 4

    B.    The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel .............................................................................. 5

    C.    The Relief Provided by the Proposed Settlement is Adequate ............................... 6

        1.    The Proposed Settlement Is Within the Range of Possible Approval .......... 6

        2.    The Proposed Process for Distributing Relief to the Class is Effective ....... 8

        3.    The Anticipated Attorney's Fees Are Reasonable ..................................... 10

        4.    Lead Plaintiffs Have Identified All Agreements Made in Connection With the Settlement ................................................................. 10

    D.    The Settlement Treats All Settlement Class Members Fairly ............................... 11

IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................. 12

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ........................... 12

        1.    The Settlement Class Is So Numerous The Joinder is Impracticable ........ 12

        2.    There Are Common Questions of Law and Fact ....................................... 13

        3.    Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class ..... 14

        4.    Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class .............................................................................. 14

    B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ....................... 15

        1.    Common Legal and Factual Questions Predominate ................................ 15

        2.    A Class Action Is Superior to Other Methods of Adjudication .................. 16

    C.    Lead Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g) ........ 17

V.     THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ................. 17

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................. 18

VII.   CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .......................................................................................................... 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...................................................................................................... 4, 16

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) .................................................................... 8

*Dahhan v. OvaScience, Inc.,*
  2020 WL 2602138 (D. Mass. May 8, 2020)...................................................................... 13

*Donovan v. Philip Morris USA, Inc.*,
  268 F.R.D. 1 (D. Mass. 2010) ........................................................................................... 12

*Hardy v. Embark Tech., Inc.*,
  2023 WL 6276728 (N.D. Cal. Sept. 26, 2023).................................................................... 8

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..................................................................... 11

*Hill v. State Street Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015).......................................................................... 18

*In re Allergan PLC Sec. Litig.*,
  2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) .................................................................... 16

*In re AVEO Pharms., Inc. Sec. Litig.*,
  2017 WL 5484672 (D. Mass. Nov. 14, 2017) ....................................................... 13, 14, 15

*In re Boston Sci. Corp. Sec. Litig.*,
  604 F. Supp. 2d 275 (D. Mass. 2009)........................................................................ passim

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008) .......................................................................................... 14

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  275 F.R.D. 382 (D. Mass. 2011) .................................................................................. 15, 16

*In re Lupron Mktg. & Sales Practice Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ........................................................................................... 3

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008).................................................................................................. 13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................................. 11

*In re TelexFree Sec. Litig.*,
  475 F. Supp. 3d 15 (D. Mass. 2020) ............................................................................... 18

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*,
  2004 WL 438790 (D. Mass. Mar. 9, 2004) ..................................................................... 16

*McCuin v. Sec'y of Health & Human Servs.*,
  817 F.2d 161 (1st Cir. 1987) ........................................................................................... 13

*New England Biolabs, Inc. v. Miller*,
  2022 WL 20583575 (D. Mass. Oct. 26, 2022) ................................................................. 5

*Overka v. Am. Airlines, Inc.*,
  265 F.R.D. 14 (D. Mass. 2010) ....................................................................................... 13

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ........................................................................................... 5

*Swack v. Credit Suisse First Boston*,
  230 F.R.D. 250 (D. Mass. 2005) ..................................................................................... 13

*Trombley v. Bank of Am. Corp.*,
  2011 WL 3273930 (D.R.I. July 29, 2011) ........................................................................ 5

*United States v. Comunidades Unidas Contra la Contaminacion*,
  204 F.3d 275 (1st Cir. 2000) ............................................................................................. 3

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .................................................................. 8

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ........................................................................................... 16

**Statutes**

15 U.S.C. § 78u-4(a)(7) ....................................................................................................... 18

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... *passim*

Fed. R. Civ. P. 23(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 23(c) ....................................................................................................... *passim*

Fed. R. Civ. P. 23(e) ....................................................................................................... *passim*

Fed. R. Civ. P. 23(g) ............................................................................................................. 17

Lead Plaintiffs Julio Maurice Bueno and Harry Levin ("Lead Plaintiffs"), on behalf of themselves and the proposed Class, respectfully submit this memorandum in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation;[1] (ii) approval of the form, content and manner of providing notice to the Class; (iii) appointing Strategic Claims Services (the "Claims Administrator") as the claims administrator to administer the notice and claims process; and (iv) setting a date for the Settlement Hearing at which the Court will consider final approval of the Settlement and entry of the proposed Judgment and Lead Counsel's application for an award of attorneys' fees and expenses. Defendants do not oppose the relief requested by this motion and stipulate to entry of the proposed order, which is annexed to the Bigin Decl. as Exhibit 2.

## I.      PRELIMINARY STATEMENT

Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement should be preliminarily approved by the Court. The Settlement provides $1,000,000 in cash to the Settlement Class to resolve all claims against Defendants. The Settlement has all the indicia of a fair, reasonable, and adequate settlement pursuant to Rule 23(e). The proposed Preliminary Approval Order will begin the process of considering final approval of the Settlement by authorizing notice of the Settlement to members of the Class. A final Settlement Hearing will then be conducted after the Class has been given an opportunity to object or seek exclusion so that the Court can make a final determination as to whether to approve the Settlement.

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 14, 2025 (the "Stipulation"), which is annexed to the Declaration of Michael S. Bigin ("Bigin Decl.") as Exhibit 1.

**II.      BACKGROUND OF THE LITIGATION**

On January 19, 2024, Plaintiff Jennifer Zerbato filed a securities class action complaint in the United States District Court for the District of Massachusetts (the "Court") styled *Zerbato v. AlloVir, Inc., et al. See* ECF No. 1. Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), on March 19, 2024, Julio Maurice Bueno and Harry Levin, and five other AlloVir shareholders, moved for appointment as lead plaintiffs for the proposed class. *See* ECF Nos. 10, 13, 17, 18 and 21. On April 17, 2024, the Court appointed Julio Maurice Bueno and Harry Levin as Lead Plaintiffs and approved Lead Plaintiffs' selection of Bernstein Liebhard LLP as Lead Counsel for the proposed class. *See* ECF No. 42.

After conducting a thorough investigation, on June 17, 2024, Lead Plaintiffs filed and served the Amended Complaint, alleging violations of the Securities Exchange Act of 1934 against Defendants. *See* ECF No. 51. On August 16, 2024, Defendants filed a motion to dismiss the Complaint. *See* ECF Nos. 55-57. While the motion to dismiss briefing was ongoing, the Parties conferred and agreed to a four-week extension of the motion to dismiss briefing to explore settlement to resolve the Action. During the weeks that followed, the Parties engaged in settlement negotiations but were unable to reach an agreement to resolve the Action. *See* ECF Nos. 58-59. On November 12, 2024, Lead Plaintiffs filed a memorandum in opposition to the motion to dismiss the Complaint. *See* ECF No. 60. On December 12, 2024, Defendants filed a reply brief in support of their motion to dismiss. *See* ECF No. 62. On February 19, 2025, the Court held oral argument on Defendants' motion to dismiss and following the argument, took the matter under advisement. *See* ECF No. 63. During the week that followed, the Parties resumed settlement negotiations. On March 3, 2025, the Parties notified the Court that they had agreed to a settlement in principle to settle the Action and release all claims against Defendants. *See* ECF No. 66.

Based upon their investigation and prosecution of the case, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiffs and the other members of the Settlement Class, and in their best interests. Accordingly, Lead Plaintiffs have agreed to settle and release claims against Defendants pursuant to the terms and provisions of the Stipulation, after considering, among other things: (a) the financial benefit that Lead Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the First Circuit, as a matter of public policy, settlement is a highly favored means of resolving disputes. *See United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements").[2] This is especially so in the context of complex class action litigation. *See In re Lupron Mktg. & Sales Practice Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements.").

This motion is a necessary step before final approval of the proposed class action Settlement. Here, the Parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice of a proposed settlement is justified where the Parties show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) lists the core concerns for evaluating the adequacy of a settlement, which require a review of the likelihood that: (a) the class representatives and class counsel adequately

---

[2] Unless otherwise noted, all internal quotation marks and citations are omitted.

represented the class; (b) the settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal; (ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3) and (4); and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The proposed Settlement readily satisfies Fed. R. Civ. P. 23(e)(1)(B) such that the Class should receive notice of the Settlement. Additionally, the proposed notice program meets the requirements of Rule 23(c)(2)(B), the PSLRA, and due process.

### A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

In weighing approval of a proposed settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); *see also In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (the adequacy requirement "entails a two-part showing: The moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.").

Here, there is no antagonism or conflict between the Lead Plaintiffs and the Settlement Class. Lead Plaintiffs, like the other Settlement Class Members, purchased AlloVir securities during the Class Period, and were allegedly injured by the same alleged misstatements and omissions. If Lead Plaintiffs were to prove their claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Moreover, Lead Plaintiffs and Lead Counsel have vigorously

represented the Settlement Class both by prosecuting the Action and by negotiating a favorable Settlement. Lead Counsel is well qualified and highly experienced in securities class action litigation and has successfully prosecuted numerous securities class actions on behalf of damaged investors. *See* Bigin Decl., Ex. 3 (Lead Counsel's firm resume).

**B.      The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel**

The Settlement was reached only after arm's-length negotiations between experienced and well-informed counsel. A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.'" *New England Biolabs, Inc. v. Miller*, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022) (citing *Trombley v. Bank of Am. Corp.*, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011).

Lead Plaintiffs' decision to settle this case was informed by a thorough investigation of the relevant claims; the filing of a detailed amended complaint; motion to dismiss briefing; motion to dismiss oral argument; and consultation with a damages expert. The Settlement is thus demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of AlloVir shareholders.

Moreover, the judgment of the Parties' counsel—who are highly experienced in securities class action litigation—that the Settlement is a fair and reasonable resolution of the litigation should be given considerable weight. *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

C.      **The Relief Provided by the Proposed Settlement is Adequate**

1.      **The Proposed Settlement Is Within the Range of Possible Approval**

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement. Fed. R. Civ. P. 23(e)(1)(B). The proposed $1,000,000 Settlement represents a favorable recovery for the Settlement Class and falls well within the range of possible approval in light of the substantial risks the Settlement Class would face in establishing liability and damages, as well as the significant time and expense required to continue to pursue the claims against Defendants, if the motion to dismiss were denied, through the completion of discovery, class certification, summary judgment, trial, and appeals.

Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, that they faced substantial hurdles in establishing liability and damages in this Action. The significant risks in the litigation were highlighted by Defendants' arguments in their motion to dismiss briefing and during the oral argument on the motion to dismiss. Defendants argued in their motion to dismiss – and would undoubtedly argue in a motion for summary judgment or at trial – that Lead Plaintiffs failed to satisfy the applicable elements under the federal securities laws. Specifically, Defendants argued – and would have continued to argue that, among other things: (1) Lead Plaintiffs would have been unable to prove that Defendants made material misstatements and omissions; and (2) that Lead Plaintiffs would not have been able to prove scienter.

Defendants have vigorously denied that they made any false or misleading statements and omissions regarding the Phase 3 posoleucel trials. Defendants have asserted that Lead Plaintiffs cannot show the Phase 3 posoleucel trials were known to be futile before the curative disclosure. As a result, Defendants contended and likely would have contended throughout the Action that their challenged statements and omissions were not false or misleading when made. In addition, Defendants argued that many of the challenged statements and omissions are protected by the

6

PSLRA safe harbor for forward-looking statements, meaning that in order to establish liability for these statements, Lead Plaintiffs must establish that the statements were made with actual knowledge of falsity. Likewise, Defendants also contend that several more of the challenged statements are inactionable opinions, presenting another high bar for Lead Plaintiffs to prove liability in connection with the challenged statements. Defendants also contend that several of the challenged statements are immaterial puffery and are therefore inactionable.

Lead Plaintiffs also faced steep challenges in proving scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. Specifically, Defendants contend that Lead Plaintiffs failed to adequately allege a strong inference of scienter. At the motion to dismiss stage, Lead Plaintiffs are required to allege a compelling inference of scienter that is at least as strong or stronger than Defendants' competing non-culpable inference. Lead Plaintiffs' theory of scienter was based on calculating the dates by which Defendants allegedly knew or should have known of the futility of the posoleucel Phase 3 trials. While Lead Plaintiffs believe that they adequately alleged a strong inference of scienter, without a confidential witness or discovery from Defendants prior to a denial on the motion to dismiss to bolster the allegations, Lead Plaintiffs recognize the significant hurdle of establishing Defendants' state of mind throughout the Class Period.

Finally, even if Lead Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years, including an appeal to the First Circuit, and, potentially, an *en banc* review from the First Circuit or a writ of certiorari to the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damages award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.

The Settlement is also reasonable in light of the maximum damages that could be reasonably established at trial. Lead Plaintiffs' consulting damages expert has estimated that maximum reasonably recoverable damages are approximately $47- $54 million. Importantly, this estimated range assumes Lead Plaintiffs' complete success in establishing Defendants' liability on all claims, and further that the trier of fact would reject Defendants' loss causation and damages arguments. The $1 million Settlement represents approximately 2% of these maximum recoverable damages, which is consistent with typical recovery in securities class actions and aligned with the percentage of recovery found acceptable in comparable cases. Specifically, according to the "Recent Trends in Securities Class Action Litigation: 2024 Full Year Review" published by National Economic Research Associates, Inc (NERA), the median ratio of settlement value to investor losses (estimated damages) for 2024 was 1.2%. Moreover, this ratio has been at 1.8% or lower for each of the past 6 years. *See* Bigin Decl. Ex. 4, at 27. Settlements, like this one, amounting to approximately 2% of damages are routinely approved in securities litigation. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]"); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (granting preliminary approval of settlement amounting to 1.1% of damages); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) ("The settlement here reflects an approximately 2% recovery of that amount. … This amount is in line with percentage recoveries other courts have found to be fair and adequate.").

The Settlement thus is a favorable result in light of the litigation risks in the case.

### 2.      The Proposed Process for Distributing Relief to the Class is Effective

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and

efficiently distributing the Net Settlement Fund. The Claims Administrator selected by Lead Counsel (subject to Court approval), Strategic Claims Services, is an experienced claims administrator that will process claims under the guidance of Lead Counsel. The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Plan of Allocation. *See* Stipulation ¶ 25. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 27) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable period of time from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that remains in the Net Settlement Fund after redistribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to Greater Boston Legal Services. *See* Stipulation ¶ 30.

9

### 3.    The Anticipated Attorneys' Fees Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no more than 33 and 1/3% of the Settlement Fund. Lead Counsel's requested fee in this case will be well within the range reasonableness and in line with comparable awards approved in this District. *See Crandall v. PTC Inc.*, No. 1:16-cv-10471-WGY, slip op. at 10 ¶ 25 (D. Mass. July 14, 2017) (approving attorneys' fee request of 33% of $2.1 million settlement) (Dkt. Nos. 60 and 41-1 (Stipulation of Settlement at 9 ¶ 1.27)) Bigin Decl. Ex. 5; *Miller v. Sonus Networks, Inc.*, No. 1:18cv12344-GAO, slip op. at 2 ¶ 4 (D. Mass. Apr. 24, 2024) (approving 33 1/3% fee request of $4.5 million settlement) (Dkt. Nos. 144 and 122-1 (Stipulation of Settlement at 3-4 ¶ K)) Bigin Decl. Ex. 6; *Mohanty v. Avid Technology, Inc.,* No. 1:16-cv-12336-IT, slip op. at 1 ¶ 3 (D. Mass. May 2, 2018) (approving 33 1/3% attorneys' fee request of $1.325 million settlement) (Dkt. Nos. 69 and 70-1 (Stipulation of Settlement at 11 ¶ 1.28)) Bigin Decl. Ex. 7; *Esposito v. American Renal Associates Holdings, Inc.*, No. 1:16-cv-11797 (ADB), slip op. at 6 ¶ 7 (D. Mass. Jun 15, 2018) (approving 33% fee request of $4.0 million settlement) (Dkt. Nos. 106 and 95-1 (Stipulation of Settlement at 8 ¶ 29)) Bigin Decl. Ex. 8.  Lead Counsel will also seek reimbursement of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $100,000, which may include a request for reimbursement of costs and expenses of Lead Plaintiffs under the PSLRA. Lead Counsel's fee and expense application will be fully briefed in a separate motion filed concurrently with the final approval motion.

### 4.    Lead Plaintiffs Have Identified All Agreements Made in Connection With the Settlement

In addition to the Stipulation, Parties entered into a Memorandum of Understanding with basic terms for the settlement, which was superseded by the Stipulation. Parties also entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class. *See* Stipulation ¶ 36; *see also* Stipulation ¶ 47 ("This Stipulation, its exhibits, and the Supplemental

10

Agreement constitute the entire agreement among Lead Plaintiffs and Defendants concerning the Settlement and this Stipulation and its exhibits."). This agreement establishes the conditions under which Defendants may terminate the Settlement if the "opt-outs" from the Settlement Class exceed an agreed-upon threshold. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020). As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

**D.    The Settlement Treats All Settlement Class Members Fairly**

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. Rather, all Settlement Class Members will receive a distribution from the Net Settlement Fund in accordance with a Plan of Allocation.

The proposed Plan of Allocation for the Net Settlement Fund (the "Plan," is stated in full in the Notice). The Plan, which was developed by Lead Counsel in consultation with Lead Plaintiffs' consulting damages expert, provides for distribution of the Net Settlement Fund to Settlement Class Members on a pro rata basis arising from losses in AlloVir securities related to the alleged fraud.[3]

---

[3] If any funds remain in the Net Settlement Fund after the distribution to eligible Claimants (due to returned or uncashed checks), the Claims Administrator will conduct additional distributions until doing so is no longer cost effective. *See* Notice ¶¶ 82-84. At that time, any remaining balance will be

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

The Parties have stipulated to the certification of the Settlement pursuant to Rule 23(a) and 23(b)(3) for settlement purposes only.  Stipulation ¶ 2.  Specifically, the Settlement Class consists of:

> all persons or entities who purchased AlloVir securities between January 11, 2023 and December 21, 2023, inclusive (such time period, the "Settlement Class Period").

Stipulation ¶ 1(rr).[4]  Certification of a settlement class is appropriate where the proposed class and class representative(s) meet the requirements of Rules 23(a) and 23(b)(3).  As demonstrated below, the proposed Settlement Class satisfies all the requirements of Rules 23(a) and 23(b)(3).

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The proposed Settlement Class satisfies these requirements.

#### 1.    The Settlement Class Is So Numerous that Joinder is Impracticable

Numerosity is satisfied here. Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). Lead Plaintiffs "need not pinpoint the exact number of class members." *Donovan v. Philip Morris*

_____

distributed to Greater Boston Legal Services There will be no reversion to Defendants. *See* Stipulation ¶ 30.

[4] Excluded from the Settlement Class are Defendants; members of their immediate families; any entity in which any Defendant had a controlling or partnership interest during the Settlement Class Period; any person who served as an officer (as defined in Securities Exchange Act Rule 16a-1(f)) or director of AlloVir during the Class Period; the judges presiding over the Action; and the successors, heirs, and assigns of any excluded person. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *See id.*

*USA, Inc.*, 268 F.R.D. 1, 10 (D. Mass. 2010). Rather, "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *Overka v. Am. Airlines, Inc.,* 265 F.R.D. 14, 18 (D. Mass. 2010) (quoting *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). Here, throughout the Class Period, thousands of AlloVir securities traded actively on the Nasdaq Global Market. These securities were purchased by thousands of geographically dispersed investors, making joinder impracticable.

### 2.    There Are Common Questions of Law and Fact

Commonality is satisfied here. Commonality under Rule 23(a)(2) is satisfied when there is "a *single* common legal or factual issue." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259 (D. Mass. 2005). In securities class actions, courts have found commonality where "the statements Plaintiffs allege were misleading due to material omissions were made to all of the class members." *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017); *see also Boston Sci.,* 604 F. Supp. 2d at 281 (common questions included falsity, scienter, and whether a presumption of reliance applied). The Rule 23(a)(2) commonality test has been described as a "low bar" and thus easily satisfied. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements and omissions were materially false and misleading when made; (ii) whether Defendants acted with scienter; (iii) whether the price of AlloVir securities was artificially inflated during the Class Period due to these alleged misstatements and omissions; and (iv) whether these alleged misrepresentations and omissions caused Settlement Class members to suffer economic losses when the truth was revealed. Courts routinely certify classes in securities fraud cases involving these common questions. *See, e.g., Dahhan v. OvaScience, Inc.,* 2020 WL 2602138, at *3 (D. Mass. May 8, 2020) (commonality established where statements and omissions

13

were "distributed to all the class members during the class period resulting in an artificially inflated stock price"). Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3. Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Typicality is satisfied here. Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Boston Sci.,* 604 F. Supp. 2d at 281-82. A plaintiff "meet[s] this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class." *Id.* at 282. Ultimately, typicality is satisfied where "all members of the class are purchasers of [Defendants'] stock which they allege was inflated in price due to Defendants' material omissions and were harmed by the later revelations that cured the omission." *AVEO Pharms.,* 2017 WL 5484672, at *4 (citing *Boston Sci.,* 604 F. Supp. 2d at 282); *see also OvaScience,* 2020 WL 2602138, at *4.

Here, Lead Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class members, are based on the same legal theory, and would be proven by the same set of operative facts. As such, typicality is satisfied. *See Boston Sci.,* 604 F. Supp. 2d at 282 (finding typicality where plaintiff "purchased Boston Scientific stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements and was subsequently harmed by the drop in stock price"); *In re Credit Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 24 (D. Mass. 2008).

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Adequacy is satisfied here. Adequacy is satisfied where a plaintiff demonstrates that it "will fairly and adequately protect the interests of the class." *AVEO Pharms.,* 2017 WL 5484672, at *4 (quoting Fed. R. Civ. P. 23(a)(4). Adequacy requires a "two-part showing," where, first, the

14

plaintiff's interests will not conflict with the interests of the class members, and second, the plaintiffs' chosen counsel is qualified, experienced and able to vigorously conduct the proposed litigation. *Boston Sci.,* 604 F. Supp. 2d at 282; *see also AVEO Pharms.,* 2017 WL 5484672, at *4 (same). Both prongs are satisfied here.

Lead Plaintiffs possess the same interests as the other Settlement Class members, and no actual or potential conflicts exist. Lead Plaintiffs also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See* Bigin Decl., Ex. 3 (Lead Counsel's firm resume). Lead Plaintiffs and Lead Counsel vigorously prosecuted this Action on behalf of the Settlement Class. Accordingly, Rule 23(a)(4) is satisfied here.

**B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Predominance is satisfied here. Rule 23(b)(3) authorizes class certification if the Court finds that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies both requirements.

**1.      Common Legal and Factual Questions Predominate**

Common questions of law and fact predominate here. As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392-93 (D. Mass. 2011) (same); *see also Boston Sci.*, 604 F. Supp. 2d at 283 ("Most [§ 10(b)] elements are generally amenable to common proof.").

As shown by the above analysis of Lead Plaintiffs' claims under Rule 23(a)(2)'s commonality standard, there are numerous questions of law and fact common to the claims asserted and these questions predominate over any individual questions. The elements of falsity, materiality, scienter, reliance, and loss causation are all subject to class-wide proof. *See, e.g.,*

15

*Amgen*, 568 U.S. at 459 (materiality of misrepresentations and omissions "is a question common to all members of the class").

### 2. A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires Lead Plaintiffs to demonstrate that class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established. *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*17 (S.D.N.Y. Sept. 8, 2021); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities fraud cases are "particularly well-suited for class treatment"); *Evergreen*, 275 F.R.D. at 393 ("class actions are particularly appropriate for securities litigation because it may be the only practicable means of enforcing investor's rights."); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, 2004 WL 438790, at \*2 (D. Mass. Mar. 9, 2004) ("suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end").

Each of the factors courts consider in assessing superiority is satisfied here. First, the number of Settlement Class members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action. *See Boston Sci.*, 604 F. Supp. 2d at 287-88; *see also Evergreen,* 275 F.R.D. at 393. Second, Lead Plaintiffs are aware of no other action alleging violations of Section 10(b)(5) of the Exchange Act against Defendants relating to Class Members' purchases of AlloVir securities during the Class Period. Third, the geographical dispersion of the Settlement Class Members makes it desirable to litigate Lead Plaintiffs' claims in this forum, where AlloVir maintains its headquarters, and

where much of the alleged misconduct occurred.  Finally, there are no management difficulties that would preclude this Action from being maintained as a class action.

In sum, the proposed Settlement Class meets all the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

### C.    Lead Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g)

Fed. R. Civ. P. 23(c)(1)(B) states that any class certification order must appoint class counsel in accordance with Fed. R. Civ. P. 23(g). Bernstein Liebhard previously satisfied Rule 23(g) through its motion to be appointed Lead Counsel for the Class under the PSLRA by detailing its experience litigating securities class actions. *See* ECF Nos. 14-16; *see also* Bigin Decl. Ex. 3 (firm resume). The Court granted the motion. *See* ECF No. 42; *see also* Rule 23(g)(1) 2003 Advisory Notes (clarifying that the mandatory elements of Rule 23(g) do not apply to PSLRA cases because that "statute provides otherwise" by requiring prior Court approval of the lead counsel to represent the class). Additionally, Bernstein Liebhard's work litigating this case and negotiating this excellent Settlement demonstrates that it will "fairly and adequately represent the interests of the class." Rule 23(g)(4). Accordingly, Lead Counsel Bernstein Liebhard is adequate to continue to serve as Class Counsel for a Settlement Class certified under Rule 23(b)(3).

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail by first-class mail or email the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a webpage to be developed for the Settlement on the Claims Administrator's website.  The Notice will advise

Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; (iii) the Plan of Allocation; and (iv) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date and time of the Settlement Hearing and set forth the procedures for opting out of the Settlement Class; objecting to the Settlement, and/or the motion for attorneys' fees and expenses; and submitting a Claim Form. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Globe Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill v. State Street Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015); *see also In re TelexFree Sec. Litig.*, 475 F. Supp. 3d 15, 17 (D. Mass. 2020) (finding that notice given to settlement class "provided due and adequate notice of these proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice"). Accordingly, Lead Plaintiffs respectfully submit that the proposed notice procedures are appropriate and should be approved.

## VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the schedule for Settlement-related events as set forth below. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 90 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court needs to schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 8(b)) | No later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶8(d)) | No later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 30) | 35 calendar days before the date set for the Settlement Hearing |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 15, 19) | 21 calendar days before the date set for the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 30) | 7 calendar days before the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶ 7) | Not fewer than 90 days after entry of the Preliminary Approval Order |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶ 12) | 90 calendar days after the Notice Date |

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) preliminarily approve of the proposed Settlement set forth in the Stipulation (Bigin Decl. Ex. 1); (ii) approve of the form, content and manner of providing notice to the Settlement Class; (iii) appoint Strategic Claims Services as the claims administrator to administer the notice and claims process; and (iv) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement and entry of the proposed Judgment and Lead Counsel's application for an award of attorneys' fees and expenses.

Respectfully submitted,

DATED: April 17, 2025

**BERNSTEIN LIEBHARD LLP**

By: */s/ Michael S. Bigin*
Michael S. Bigin
Jeffrey R. McEachern
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218
bigin@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Lead Plaintiffs*

**HUTCHINGS BARSAMIAN MANDELCORN, LLP**
Theodore M. Hess-Mahan
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Tel: (781) 431-2231
Fax: (781) 431-8726
thess-mahan@hutchingsbaramian.com

*Local Counsel for Lead Plaintiffs*

20