**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JENNIFER ZERBATO, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      v.<br><br>ALLOVIR, INC., DIANA M. BRAINARD, and VIKAS SINHA,<br><br>               Defendants. | Case No. 1:24-cv-10152-DJC<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND REIMBURSEMENT
<u>TO LEAD PLAINTIFFS</u>**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   THE FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM
      THAT A 33 1/3% FEE IS FAIR AND REASONABLE ...................................................... 2

      A.    The Size of the Fund and Number of Persons Benefitted ....................................... 3

      B.    Skill and Experience of Counsel ..................................................................... 5

      C.    Complexity of Litigation ............................................................................... 5

      D.    The Risks of Litigation................................................................................. 5

      E.    Amount of Time Devoted by Lead Counsel ......................................................... 8

      F.    Awards in Similar Cases .............................................................................. 9

      G.    Public Policy Considerations ........................................................................ 11

III.  THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSAARY TO
      ACHIEVE THE BENEFIT OBTAINED............................................................... 12

IV.   LEAD PLAINTIFFS SHOULD BE AWARDED REASONABLE COSTS AND
      EXPENSES PURSUANT TO THE PSLRA ....................................................... 13

V.    CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Baron v. HyreCar Inc.*,
 2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................................................. 4

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985) ......................................................................................................... 11

*Bodnar v. Bank of America, N.A.*,
 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) .................................................................... 10

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ........................................................................................................... 2

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ............................................................................................... 6

*Erica P. John Fund v. Halliburton Co.*,
 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................................................... 9

*Guevoura Fund Ltd. v. Sillerman*,
 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................................. 13

*Hale v. State Farm Mut. Auto. Ins. Co.*,
 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................................................................... 10

*Hardy v. Embark Tech., Inc.*,
 2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) ................................................................... 4

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ............................................................................................................ 3

*Hicks v. Morgan Stanley*,
 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................................... 11

*Hill v. State St. Corp.*,
 2015 WL 127728 (D. Mass. Jan. 8, 2015) ................................................................. passim

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................................ 7

*In re Fidelity/Micron Sec. Litig.*,
 167 F.3d 735 (1st Cir. 1999) ............................................................................................ 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................................... 11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................................................. 7

*In re Lupron Mktg. & Sales Litig.*,
 2005 WL 2006833 (D. Mass. Aug. 17, 2005) ............................................................. 2, 5

*In re Marsh & McLennan Cos. Sec. Litig.*,
 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................... 14

*In re MetLife Demutualization Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................... 14

*In re Neurontin Mktg. & Sales Practices Litig.*,
 58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................................... 9

*In re Par Pharm. Sec. Litig.*,
 2013 WL 3930091 (D.N.J. July 29, 2013) ...................................................................... 5

*In re Puerto Rican Cabotage Antitrust Litig.*,
 815 F. Supp. 2d 448 (D.P.R. 2011) ............................................................................. 3, 8

*In re Relafen Antitrust Litig.*,
 231 F.R.D. 52 (D. Mass. 2005) .................................................................................... 2, 8

*In re Solodyn Antitrust Litig.*,
 2018 WL 7075881 (D. Mass. July 18, 2018) ................................................................. 9

*In re StockerYale, Inc. Sec. Litig.*,
 2007 WL 4589772 (D.N.H. Dec. 18, 2007) ................................................................. 10

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
 56 F.3d 295 (1st Cir. 1995) ............................................................................................ 2

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................... 2

*Lobur v. Parker*,
 378 F. App'x 63 (2d Cir. 2010) .................................................................................... 14

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
 2019 WL 4409217 (D. Mass. Sept. 13, 2019) ............................................................. 10

*Mary Ann F. v. Comm'r, Soc. Sec. Admin.*,
 2022 WL 2305258 (D. Md. June 27, 2022) .................................................................... 9

*Medoff v. CVS Caremark Corp.*,
 2016 WL 632238 (D.R.I. Feb. 17, 2016) ............................................................... 3, 9, 12

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
 2010 WL 11693979 (D. Mass. March 12, 2010) .......................................................... 10

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022), *order entered*,
  2022 WL 2698430 (S.D.N.Y. July 12, 2022)................................................................ 10

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009), *aff'd sub nom.*
  *Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010) .......................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................... 11

*Varljen v. H.J. Meyers & Co., Inc.*,
  2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ................................................................... 13

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. ), *subsequent determination*,
  2021 WL 5161927 (N.D. Cal. Nov. 5. 2021) ..................................................................... 4

*Statutes*

15 U.S.C. §78u-4(a)(4)................................................................................................... 13

15 U.S.C. § 78u-4(a)(6)................................................................................................... 3

*Rules*

Fed. R. Civ. P. 23(h)........................................................................................................ 1

Fed. R. Civ. P. 54(d)(2)................................................................................................... 1

Court appointed Lead Counsel, Bernstein Liebhard LLP ("Bernstein Liebhard") respectfully submits this memorandum of law in support of Lead Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure.[1]

## I.    PRELIMINARY STATEMENT

There was a serious risk of zero recovery for the Settlement Class. Lead Plaintiffs faced major challenges establishing falsity, scienter, and damages, while knowing that if any of these elements lacked sufficient proof, the case would be dismissed. Accordingly, the $1 million Settlement is fair and reasonable for the Settlement Class. It was achieved as a result of Lead Counsel's persistent and skilled efforts, with all work done on a contingency fee basis. Lead Plaintiffs now move this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund, $18,281.36 in Litigation Expenses, and $5,000 in PSLRA reimbursements for Lead Plaintiffs ($2,500 each).

As discussed herein, and in the Declaration of Michael S. Bigin in Support of Lead Plaintiffs' Motions for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs and Final Approval of Settlement (the "Bigin Decl."), filed concurrently with this motion, pursuant to the factors considered by courts in this Circuit, Lead Counsel's requested fee award of thirty-three and one-third percent of the Settlement Fund is appropriate. The requested fee award results in a negative lodestar multiplier of 0.41 for Lead Counsel and on a percentage basis is within the range of attorney fee awards routinely granted by courts in this Circuit.

The requested Litigation Expenses are well below the Litigation Expense cap in the Notice. These expenses are reasonable and were necessarily incurred for the successful prosecution of the

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings assigned to them in the Stipulation and Agreement of Settlement dated April 14, 2025 (the "Stipulation"). *See* ECF No. 69-1.

Action. Accordingly, and for the reasons set forth herein, Lead Plaintiffs respectfully request that the Court approve the Motion.

## II.    THE FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT A 33 1/3% FEE IS FAIR AND REASONABLE

The Supreme Court and First Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The First Circuit has approved of the use of the percentage method in common fund cases, noting that it 'offers significant structural advantages ... including ease of administration, efficiency, and a close approximation of the marketplace.'" *Hill v. State St. Corp.*, 2015 WL 127728, at *16 (D. Mass. Jan. 8, 2015) (quoting *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307-308 (1st Cir. 1995)). An award of reasonable attorneys' fees from a common fund "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007).

Courts within this Circuit have assessed the reasonableness of proposed fees by considering the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Hill*, 2015 WL 127728, at *17; *see also In re Lupron Mktg. & Sales Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005).[2]

---

[2] The lodestar method is also sometimes "used to cross-check the reasonableness of the proposed percentage fee award." *Hill*, 2015 WL 127728, at *17. Lead Counsel's lodestar is discussed in the "amount of time devoted by lead counsel" factor.

"In the end, the court must assure itself that the award of fees, like the settlement itself, is reasonable." *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8 (D.R.I. Feb. 17, 2016); *see also* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Consideration of these factors supports approval of the fee requested.

### A.      The Size of the Fund and Number of Persons Benefitted

Courts have consistently recognized that the result achieved is one of the most important factors to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011) ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award."). Here, Lead Counsel has secured a Settlement that provides for a non-reversionary, cash payment of $1 million for the benefit of the Settlement Class. This favorable result provides Settlement Class Members with an immediate cash recovery, while avoiding the substantial expense, delay, risk, and uncertainty of further litigation.

Lead Plaintiffs' consulting damages expert estimates that if Lead Plaintiffs had prevailed on their claims on the motion to dismiss, summary judgment, and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiffs' damages theory, including proof of loss causation as to the stock price drop on the date alleged—*i.e.,* Lead Plaintiffs' best-case scenario—estimated total maximum class wide damages would be approximately $47-54 million. Under this scenario, the recovery is approximately 2% of class-wide damages. This recovery is aligned with the percentage of recovery found acceptable in comparable cases. Specifically, according to the "Recent Trends in Securities Class Action

Litigation: 2024 Full Year Review" published by National Economic Research Associates, Inc (NERA), the median ratio of settlement value to investor losses (estimated damages) for 2024 was 1.2%. *See* Bigin Decl. Ex. 6 at 27. Moreover, this ratio has been at 1.8% or lower for each of the past 6 years. *See id*. Settlements, like this one, amounting to approximately 2% of damages are well aligned with the typical recovery. *See, e.g., Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]"), *subsequent determination*, 2021 WL 5161927 (N.D. Cal. Nov. 5. 2021); *Hardy v. Embark Tech., Inc*., 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (granting preliminary approval of settlement amounting to 1.1% of damages); *Baron v. HyreCar Inc*., 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) ("The settlement here reflects an approximately 2% recovery of that amount. … This amount is in line with percentage recoveries other courts have found to be fair and adequate.").

Furthermore, the Settlement will benefit a significant number of investors. As of June 24, 2025, the Claims Administrator has caused 11,070 postcard notices or emailed links to the Notice and Claim Form to be sent to potential Class Members. *See* Ex. 4, Declaration of Sarah Evans Concerning: (A) CAFA Notice Mailing; (B) Dissemination of Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections, at ¶9. While these Claims have not yet been processed, based on past experience, Lead Counsel expect that the non-reversionary Settlement will benefit hundreds or thousands of investors. This factor strongly supports the requested attorneys' fees.

Accordingly, the immediate benefit and the reasonableness of the $1,000,000 Settlement supports the requested fee.

**B.      Skill and Experience of Counsel**

This was a complex case involving a number of distinct factual and legal issues. Lead Counsel respectfully submits that its firm resume (Ex. 8) confirms that Bernstein Liebhard is among the nation's leading securities class action firms, and Liaison Counsel are highly credentialed and experienced class action litigators. Lead Counsel's skill, experience, and commitment to the litigation were critical to obtaining the favorable Settlement.

Lead Counsel used their extensive and significant experience in the highly specialized field of securities class action litigation for the benefit of the Settlement Class. Lead Counsel have not only used their knowledge and skill from prior cases, but also developed specific expertise in the FDA approval process issues presented here to address the legal challenges presented by Defendants. The favorable Settlement is attributable in large part to the diligence, determination, hard work, and skill of Lead Counsel, who developed, litigated, and successfully settled the Action.

**C.      Complexity of Litigation**

Courts have long recognized that securities class actions are extremely complex. *See Hill*, 2015 WL 127728, at *18 (recognizing the complex nature of securities class action litigation as contributing to counsel's fee award); *In re Par Pharm. Sec. Litig*., 2013 WL 3930091, at *10 (D.N.J. July 29, 2013) ("securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."). This case was no different and involved numerous complex issues of law and fact that Lead Counsel had to navigate to obtain a favorable result.

**D.      The Risks of Litigation**

The fully contingent nature of Lead Counsel's fees and the litigation's substantial risks are also important factors supporting the requested fee. "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *Lupron*, 2005 WL 2006833, at *4. Indeed, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in

advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). Here, Lead Counsel undertook representation on a fully contingent basis. ¶49. Lead Counsel's assumption of this non-payment risk strongly supports the reasonableness of the requested fee. *See Hill*, 2015 WL 127728, at *18 ("Plaintiffs' Counsel should be rewarded for having borne and successfully overcome" "significant risk of non-payment.").

Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, that they faced substantial hurdles in establishing liability and damages in this Action. Lead Plaintiffs alleged that the misstatements are actionable, but there are no allegations from whistleblowers, internal emails, criminal complaints, or SEC enforcement actions that prove falsity sufficient for summary judgment. Defendants have vigorously denied that they made any false or misleading statements or omissions regarding the Phase 3 posoleucel trials. They claim the alleged statements were true at the time they were made and that Lead Plaintiffs cannot show the Phase 3 posoleucel trials were known to be futile before the curative disclosure. Moreover, Defendants asserted that the statements concern forward-looking information that is largely protected from liability by the PSLRA's safe harbor, inactionable opinions, or immaterial puffery.

Lead Plaintiffs also faced steep challenges regarding scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. At the motion to dismiss stage, Lead Plaintiffs are required to allege a compelling inference of scienter that is at least as strong or stronger than Defendants' competing non-culpable inference. Lead Plaintiffs' theory of scienter was based on calculating the dates by which Defendants allegedly knew or should have known of the futility of the posoleucel Phase 3 trials. Without a confidential witness or discovery from Defendants, Lead Plaintiffs recognize the significant hurdle of alleging sufficient facts to establish Defendants' state of mind throughout the Class Period.

Although Lead Plaintiffs and Lead Counsel believe that the allegations of the Amended Complaint, if sustained, would ultimately translate into a strong case, they were also keenly aware they faced numerous hurdles to proving liability and Class-wide damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). Indeed, proving damages typically involves a battle of the economic experts with competing views about disentangling the effects general market factors on stock price movement from fraudulent causes. There is no guarantee that Lead Plaintiffs' expert's testimony would be admitted into evidence or accepted by the jury.

In the absence of the Settlement, this Action would have necessitated complex, expensive, and lengthy litigation. Defendants would have continued to defend this litigation vigorously, as demonstrated by their motion to dismiss. If Lead Plaintiffs survived Defendants' motion to dismiss, Defendants would have inevitably opposed Lead Plaintiffs' anticipated motion for class certification, filed motions for summary judgment, and ultimately appealed any judgment in Lead Plaintiffs' favor. The Parties also likely would have engaged in lengthy and costly expert discovery, involving expert reports, depositions, and motions to disqualify expert witnesses through complex *Daubert* motions. This Court and the jury at trial would have had to weigh evidence pertaining to complex factual and legal issues, as well as weigh difficult issues in a battle of experts, all of which demonstrate that this case had real risks and that the Settlement is commendable. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions or appeal").

Finally, even if Lead Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years, including an appeal to the First Circuit, and, potentially, an *en banc* review from the First Circuit or a writ of certiorari to the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damages award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.

### E.   Amount of Time Devoted by Lead Counsel

The time and effort expended by Lead Counsel on this case also supports the requested fee. *See Hill*, 2015 WL 127728, at \*19. The Bigin Declaration details the substantial efforts of Lead Counsel in prosecuting the Lead Plaintiffs' claims over the course of the litigation. Among other things, Lead Counsel vigorously pursued this litigation for nearly one and half years, including by: (1) completing an extensive investigation of the claims at issue; (2) preparing and filing the Amended Complaint; (3) opposing Defendants' motion to dismiss the Amended Complaint in detailed briefing and at oral argument; (4); engaging and consulting with an expert concerning damages; and (5) participating in extended arm's length settlement negotiations. *See* Bigin Decl. at ¶¶4, 7-18.

While "[t]he First Circuit does not require a court to engage in calculating the lodestar method when awarding fees based upon the percentage of the fund method," in this case, the Lead Counsel's lodestar illustrates that the amount of time and effort devoted by Lead Counsel supports the requested fee. *In re Puerto Rican*, 815 F. Supp. 2d at 464; *see also In re Relafen*, 231 F.R.D. at 81–82 (finding that while "[t]he First Circuit does not require a court to cross check[,]" cross-checking provides "a useful perspective on the reasonableness of a given percentage award.").

8

Lead Counsel spent 760.56 hours investigating, prosecuting and resolving the litigation from inception through June 23, 2025, with a total lodestar value of approximately $805,791.69.[3] *See* Bigin Decl., Ex. 3 at ¶6. The requested 33 1/3% fee ($333,333) would represent a "negative multiplier" of Lead Counsel's lodestar value (or discount factor) of 0.41. *See id*; *see also* Bigin Decl. at ¶52. Courts have routinely recognized that a negative lodestar multiplier weighs in favor of a finding that the requested fee award is reasonable.[4] *See Medoff*, 2016 WL 632238, at *9 (examining lodestar in the context of this factor and explaining that a negative lodestar multiplier of 0.89 supports a finding that the fee is reasonable); *In re Solodyn Antitrust Litig.*, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) ("negative lodestar multiplier of 0.82" supports a finding "that the request for attorneys' fees [of 33⅓%] is reasonable."); *Erica P. John Fund v. Halliburton Co.*, 2018 WL 1942227, at *13 (N.D. Tex. Apr. 25, 2018) ("the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."). The amount of time devoted, as reflected by these numbers reflect Lead Counsel's commitment to vigorously pursuing this Action for the benefit of Lead Plaintiffs and the Settlement Class and confirm that the fee request here is reasonable.

**F.    Awards in Similar Cases**

The requested fee of 33 1/3% is within the typical range of percentage fees awarded in this Circuit in comparable class actions. *See In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171-72 (D. Mass. 2014) (noting that "nearly two-thirds of class action fee awards based on

---

[3] These figures exclude 28.40 hours expended on this Action by Liaison Counsel. *See* Bigin Decl., Ex. 5, at ¶6.

[4] Lead Counsel's rates are consistent with hourly rates that have been found to be reasonable. *See e.g., Mary Ann F. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 2305258, at *1 (D. Md. June 27, 2022) (finding $1,200 hourly rate reasonable); *Fitzpatrick v. Berryhill*, No. 1:15-cv-1865-WTL-MJD, slip op. at 1-2 (S.D. Ind. Oct. 30, 2017) (Dkt. 33) (Bigin Decl. Ex. 7) (approving an award equivalent to an hourly rate of between $1,045 and $2,908).

the percentage method were between 25% and 35% of the common fund."); *Miller v. Sonus, Inc. et al.*, 1:18-cv-12344-GAO, slip op. at 2-3 (D. Mass. Apr. 24, 2024) (Dkt. No. 144) (Bigin Decl. Ex. 7 (awarding 33 1/3% of $4.5 million securities class action settlement); *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *2 (D. Mass. Sept. 13, 2019) (awarding 33⅓ and stating "[t]he amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases[.]"); *In re Biopure Corp. Sec. Litig.*, No. 1:03-cv-12628- NG, slip op. at 6 (D. Mass. Sept. 24, 2007) (Dkt. No. 180) & *Biopure*, Final Approval Memo at 18 (D. Mass. Sept. 18, 2007) (Bigin Decl. Ex. 7) (awarding one-third of $10 million settlement fund); *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 2010 WL 11693979, at *7 (D. Mass. March 12, 2010) (awarding one-third of $32.5 million settlement fund); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding 33.3% of $3,400,000 settlement fund).

Additionally, attorneys' fees in the range of 33⅓% have been approved in numerous comparable complex class actions in other Circuits. *See, e.g., Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("A fee equal to one-third of a settlement fund is routinely approved in this Circuit."), *order entered*, 2022 WL 2698430 (S.D.N.Y. July 12, 2022); *Bodnar v. Bank of America, N.A.*, 2016 WL 4582084, at *5 (E.D. Pa. Aug. 4, 2016) ("find[ing] that an award of 33% of the Settlement Fund is consistent with similar awards throughout the Third Circuit."); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.3% or higher to counsel in class action litigation."). Accordingly, this factor supports the requested fee.

G.      **Public Policy Considerations**

Public policy considerations, including, compensating Lead Counsel for the value of their efforts taking into account the risks they undertook, the fact that Lead Plaintiffs support the requested fee, and the reaction of the class to date, support the requested fee.

The Supreme Court has repeatedly stated that rewarding firms that bring successful securities class actions is "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (such actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"). Compensating plaintiffs' counsel for the risks they take in bringing such actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Accordingly, public policy favors granting the requested fee here. *See Medoff*, 2016 WL 632238, at *9 ("public policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts [were] undertaken on a wholly contingent basis); *Hill*, 2015 WL 127728, at *19 ("public policy favors granting reasonable attorneys' fees . . . that will adequately compensate [counsel] for their efforts and the risks they undertook"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (to carry out the "important public policy" of enforcing the securities laws, "courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

Additionally, as set forth in Lead Plaintiffs' respective declarations, each Lead Plaintiff played an active role in the prosecuting and resolving the Action, and thus has a sound basis for assessing the reasonableness of the fee request. *See* Exs. 1-2 at ¶¶3-6. Lead Plaintiffs carefully

11

evaluated the fee request and fully support and approve the fee request as fair and reasonable in light of the result obtained, the work performed by Lead Counsel, and the significant risks of continued litigation. *See id.; see also Medoff*, 2016 WL 632238, at *9 ("the court does not wish to discount the fact that co-lead plaintiffs consent to the request"); *Hill*, 2015 WL 127728, at *19 (endorsement of lead plaintiffs supported approval of the requested fees).

Finally, the reaction of the Settlement Class to date also supports the fee request. As of June 24, 2025, the Claims Administrator, Strategic Claims Services, has disseminated the Notice to 11,070 potential Settlement Class Members and nominees informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Fund and payment of Litigation Expenses up to $100,000. *See* Bigin Decl., Ex. 4, at ¶12. Although the time to object has not yet passed, to date no objections have been received. Bigin Decl. at ¶29. Lead Counsel will address any objections that may be received in their reply papers to be filed with the Court on July 23, 2025.

## III. THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSAARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of $18,281.36 in Litigation Expenses incurred by Plaintiffs' Counsel that were reasonably incurred and necessary to the prosecution of the Action. *See id.* at ¶54. These expenses are properly recoverable. *See Medoff*, 2016 WL 632238, at *9 ("Counsel are entitled to recover 'expenses, reasonable in amount, that were necessary to bring the action to a climax.'") (quoting *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *Hill*, 2015 WL 127728, at *20 ("Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."). The types of expenses for which Lead Counsel seeks payment are routinely charged to both classes in contingent litigation as well as to clients billed by the hour. These expenses include, costs associated with online legal and factual research, filing fees,

travel costs, working meals, and investigation and consulting expert related fees. *See* Bigin Decl., Ex. 3, at ¶8; Bigin Decl., Ex. 5, at ¶8. Moreover, from the outset, Lead Counsel knew that it might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. *See* Bigin Decl. at ¶53. The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $100,000. The total amount of expenses requested, $23,281.36 (including $18,281.36 in Litigation Expenses incurred by Plaintiffs' Counsel and $5,000 sought by Lead Plaintiffs), is well below the amount listed in the Notice and, to date, there has been no objection.

## IV.    LEAD PLAINTIFFS SHOULD BE AWARDED REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA

The PSLRA specifically provides that an "award of reasonable costs and expenses directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). "[T]he PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*22 (S.D.N.Y. Dec. 18, 2019). This "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at \*5 n.2 (S.D.N.Y. Nov. 8, 2000).

As set forth in their declarations, Lead Plaintiffs have effectively fulfilled their obligations as representatives of the Settlement Class by, among other things: (a) participating in conference calls and email communications concerning the lead plaintiff process; (b) monitoring updates about developments concerning the Action, including Lead Counsel's investigation, and settlement negotiations; (c) reviewing the initial complaint, the amended complaint, and papers filed in

13

connection with Defendants' motion to dismiss this Action; (d) reviewing settlement strategy and settlement negotiations with Lead Counsel; and (e) reviewing and analyzing the proposed terms of the settlement and settlement approval papers. *See* Ex. 1; Ex. 2. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010) (awarding $6,000 ($1,500 for each lead plaintiff) "in recognition of lead plaintiffs' services rendered on behalf of the class and in support of class counsel's efforts to prosecute this litigation"); *Hill*, 2015 WL 127728, at *21 (awarding a total of $40,436 to lead plaintiffs); *In re Boston Scientific Corporation Securities Litigation*, 1:20-cv-12225-ADB, slip op. at 3 (D. Mass. Apr. 23, 2024) (Dkt. No. 166) (Bigin Decl. Ex. 7) (awarding lead plaintiff $74,250); *Miller v. Sonus, Inc.*, 1:18-cv-12344-GAO, slip op. at 3-4 (D. Mass. Apr. 24, 2024) (Dkt. No. 144) (Bigin Decl. Ex. 7) (awarding lead plaintiffs a total of $30,000); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) ("Given the minimal amount of the [$2,500] awards [and] the time and effort the Representative Plaintiffs expended in bringing this suit on behalf of the Class ... the Court approves them."), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010). To date there have been no objections to this request. Accordingly, Lead Plaintiffs respectfully request that the Court approve the awards.

## V.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant Lead Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs.

14

Respectfully submitted,

**DATED**: June 25, 2025

**BERNSTEIN LIEBHARD LLP**

By*: /s/ Michael S. Bigin*
Michael S. Bigin
Jeffrey R. McEachern
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218
bigin@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Lead Plaintiffs*

**HUTCHINGS BARSAMIAN
MANDELCORN, LLP**
Theodore M. Hess-Mahan
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Tel: (781) 431-2231
Fax: (781) 431-8726
thess-mahan@hutchingsbaramian.com

*Local Counsel for Lead Plaintiffs*

15