UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ZERBATO, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ALLOVIR, INC., DIANA M. BRAINARD, and VIKAS SINHA,<br><br>　　　　　　　　　Defendants. | Case No. 1:24-cv-10152-DJC<br><br>**CLASS ACTION** |

**DECLARATION OF MICHAEL S. BIGIN IN SUPPORT OF LEAD PLAINTIFFS' MOTIONS FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND REIMBURSEMENT TO LEAD PLAINTIFFS AND FOR FINAL APPROVAL OF <u>SETTLEMENT</u>**

I, MICHAEL S. BIGIN, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Partner in the law firm of Bernstein Liebhard LLP ("Bernstein Liebhard"). Bernstein Liebhard is the court-appointed Lead Counsel on behalf of Lead Plaintiffs Julio Maurice Bueno and Harry Levin ("Lead Plaintiffs") and the Settlement Class in this Action.[1] I have personal knowledge of the matters set forth herein based on my active participation in the prosecution and settlement of the Action.

2. I respectfully submit this Declaration in support of: (a) Lead Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs; and (b) Lead Plaintiffs' Motion for Final Approval of Settlement. Both motions have the support of the Lead Plaintiffs. *See* Declaration of Julio Maurice Bueno and Declaration of Harry Levin, attached hereto as Exhibits 1 and 2, respectively.

I. **Preliminary Statement**

3. Lead Plaintiffs succeeded in obtaining a recovery for the Settlement Class in the amount of $1,000,000, in cash, which has been deposited in an interest-bearing escrow account for the benefit of the Settlement Class. As set forth in the Stipulation, in exchange for this payment, the proposed Settlement resolves all claims asserted by Lead Plaintiffs and the Settlement Class in the Action and all related claims that could have been brought against the Defendants.

4. The Settlement was achieved only after Lead Counsel, *inter alia*: (i) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations and omissions made by Defendants; (ii) prepared and filed a detailed Amended Complaint; (iii)

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated April 14, 2025 (the "Stipulation"), previously filed with the Court. *See* ECF No. 69-1.

1

researched and drafted an opposition to Defendants' motions to dismiss the Amended Complaint; (iv) argued in opposition to Defendants' motion to dismiss at oral argument held by the Court; (v) worked closely with its damages expert to analyze damages issues; and (vi) engaged in several months of settlement negotiations regarding the terms of the Settlement. At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the Parties' positions.

5.  In deciding to settle, Lead Plaintiffs and Lead Counsel took into consideration the significant risks associated with establishing liability, as well as the duration and complexity of the legal proceedings that remained ahead. As demonstrated by the Parties' court filings, the Settlement was achieved in the face of vigorous opposition by Defendants who would have, had the Settlement not been reached, continued to raise serious arguments concerning, among other things, whether the alleged misstatements were material or false, and whether there was any evidence of Defendants' scienter.

6.  In view of the substantial risks of this litigation, Lead Counsel believes: (a) the Settlement is fair, reasonable and adequate, and should be finally approved; (b) attorneys' fees of 33 1/3% of the Settlement Fund and litigation expenses in the amount of $18,281.36, with interest, are reasonable and should be approved; and (c) Lead Plaintiffs should each be reimbursed $2,500 for their time spent representing the Settlement Class.

**II.   Procedural History**

7.  On January 19, 2024, Plaintiff Jennifer Zerbato filed a securities class action complaint in the United States District Court for the District of Massachusetts (the "Court") styled *Zerbato v. AlloVir, Inc., et al*. *See* ECF No. 1.

8.  Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995

(the "PSLRA"), on March 19, 2024, Julio Maurice Bueno and Harry Levin, and five other AlloVir shareholders, moved for appointment as lead plaintiffs for the proposed class. *See* ECF Nos. 10, 13, 17, 18 and 21.

9. On April 17, 2024, the Court appointed Julio Maurice Bueno and Harry Levin as Lead Plaintiffs and approved Lead Plaintiffs' selection of Bernstein Liebhard LLP as Lead Counsel for the proposed class. *See* ECF No. 42.

10. After conducting a thorough investigation, on June 17, 2024, Lead Plaintiffs filed and served the Amended Complaint, alleging violations of the Securities Exchange Act of 1934 against Defendants. *See* ECF No. 51.

11. On August 16, 2024, Defendants filed a motion to dismiss the Complaint. *See* ECF Nos. 55-57.

12. While the motion to dismiss briefing was ongoing, the Parties conferred and agreed to a four-week extension of the motion to dismiss briefing to explore settlement to resolve the Action. *See* ECF Nos. 58-59.

13. During the weeks that followed, the Parties engaged in settlement negotiations but were unable to reach an agreement and opted to continue litigating the Action. *See id.*

14. On November 12, 2024, Lead Plaintiffs filed a memorandum in opposition to the motion to dismiss the Complaint. *See* ECF No. 60.

15. On December 12, 2024, Defendants filed a reply brief in support of their motion to dismiss. *See* ECF No. 62.

16. On February 19, 2025, the Court held oral argument on Defendants' motion to dismiss and following the argument and took the matter under advisement. *See* ECF No. 63.

17. During the week that followed, the Parties resumed settlement negotiations. On

March 3, 2025, the Parties notified the Court that they had agreed to a settlement in principle to settle the Action and release all claims against Defendants. *See* ECF No. 66.

18. The Parties subsequently drafted the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a dismissal with prejudice of all claims asserted in the Action, along with a release of any related claims, in return for a cash payment of $1,000,000 for the benefit of the Settlement Class. Lead Plaintiffs and Defendants thereafter memorialized the final terms of the Settlement in the Stipulation, which was executed by the parties on April 14, 2025. The Settlement has no reversion to Defendants.

### III. Preliminary Approval of the Settlement and Compliance with Preliminary Order

19. On April 17, 2025, Lead Plaintiffs filed their motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class, memorandum in support, the Stipulation, and accompanying exhibits. *See* ECF Nos. 67-69.

20. Lead Plaintiffs requested that the Court approve the forms of notice, which, among other things, described the terms of the Settlement, advised Settlement Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Settlement Class Members of the amount of attorneys' fees and expenses that Lead Counsel and Lead Plaintiffs would request, and explained the procedure and deadline for filing a Proof of Claim and Release form (the "Proof of Claim Form") in order to be eligible to receive a payment from the Net Settlement Fund. In addition, Lead Plaintiffs requested that the Court certify the Settlement Class for settlement purposes.

21. On April 23, 2025, the Court preliminarily approved the Settlement and approved the forms of notice to the Settlement Class. *See* ECF No. 71 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Court appointed Strategic Claims Services

("SCS" or the "Claims Administrator") as Claims Administrator and instructed SCS to disseminate copies of the Notice to the Settlement Class.

22. The Notice informed Settlement Class members of the terms of the Settlement, their right to object or seek exclusion, and that Lead Counsel sought attorneys' fees of up to 33 1/3% of the Settlement Fund and reimbursement of expenses not to exceed $100,000.

23. Attached as Exhibit 4 is the Declaration of Sarah Evans Concerning: (A) CAFA Notice Mailing; (B) Dissemination of Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections. This Declaration demonstrates that the Claims Administrator has provided Notice to the Settlement Class in compliance with the Preliminary Approval Order.

24. In addition to providing Notice directly to Settlement Class Members, SCS caused the Summary Notice to be published and transmitted over *Globe Newswire*. *Id*. at ¶ 10.

25. Lead Counsel has reviewed the notices as distributed to the Settlement Class.

26. SCS also maintains and posts information regarding the Settlement on a dedicated webpage established for the Action, https://www.strategicclaims.net/allovir/ to provide Settlement Class Members with information about the Action, as well as downloadable copies of the Notice, Claim Form and Stipulation. *Id*. at ¶ 12.

27. Lead Counsel reviewed the Claims Administrator's website for the Action and confirmed that it was operational and provided information to the Settlement Class.

28. Lead Counsel also posted Notice to the Settlement Class on its firm website.

29. Pursuant to the terms of the Preliminary Approval Order, the deadline for Settlement Class Members to submit objections to the Settlement or the fee and expense application, or to request exclusion from the Settlement Class is July 9, 2025. To date, SCS reports

that it has not received any objections or requests for exclusion from the Settlement Class. *Id*. at ¶¶ 13-14.

30. On June 2, 2025, a document entitled "Motion of improper venue" was submitted by Kristin Beery Hahn, via mail to the Court and filed in the Action. *See* ECF Nos. 73, 73-1 (the "Submission"). The Submission states, in its entirety, "Motion of improper venue. Claiming improper venue. Violations of the Ada act and hague and Geneva conventions of a disabled veteran. And violations of the espionage act. Kristin Beery Hahn 5/21/25" *Id.*

31. Lead Counsel reviewed the Submission and consulted with the Claims Administrator regarding its contents. Lead Counsel and the Claims Administrator believe the Submission is neither an objection to the Settlement, nor a request for exclusion from the Settlement Class.

32. On June 5, 2025, Lead Counsel sent a letter by certified mail to Ms. Hahn at the return address listed on the Submission requesting additional information to determine if the Submission is from a member of the Settlement Class.

33. Ms. Hahn provided documentation showing she was not a member of the Settlement Class and Lead Counsel informed her that she was not eligible to participate in the Action.

34. Lead Counsel is unaware of any objections to the Settlement or requests for exclusion from the Settlement Class. Should any objections or requests for exclusion be received, Lead Plaintiffs will address such in the reply papers.

IV.     **The Settlement is a Favorable Result for the Settlement Class**

35. The $1,000,000 Settlement is fair, reasonable, and adequate for the Settlement Class, particularly when considered in view of the substantial risks and obstacles to recovery if the

Action were to continue through a decision on the motion to dismiss, discovery, class certification, summary judgment, trial, and through likely post-trial motions and appeals.

36. The $1,000,000 Settlement represents approximately 2% of the estimated maximum recoverable damages of $47-54 million. This recovery is consistent with typical recoveries in securities class actions.

37. According to the "Recent Trends in Securities Class Action Litigation: 2024 Full Year Review" published by National Economic Research Associates, Inc (NERA), the median ratio of settlement value to investor losses (estimated damages) for 2024 was 1.2%. Additionally, this ratio has been at 1.8% or lower for each of the past 6 years. *See* Ex. 6 at 27.

38. The Settlement, when viewed as a percentage of maximum recoverable damages is likely even more favorable to the Settlement Class because Lead Plaintiffs' $47-$54 million estimate would be subject to formidable challenges.

39. Lead Plaintiffs recognize that there were considerable risks in continuing the Action against Defendants. Lead Plaintiffs and Lead Counsel carefully considered these risks during the months of negotiations leading up to the Settlement.

40. In agreeing to settle, Lead Plaintiffs and Lead Counsel weighed, among other things, the substantial cash benefit to the Settlement Class Members against: (i) the uncertainties associated with trying complex securities cases; (ii) the difficulties and challenges involved in proving materiality, falsity, scienter, causation, and damages in this particular case; and (iii) the delays that would follow even a favorable final judgment, including appeals.

41. At the time the Settlement was reached, Defendants' motion to dismiss the Amended Complaint was fully briefed. Defendants' motion to dismiss posed serious risks to any recovery.

42. Defendants argued, and would continue to argue, that the challenged statements were not materially false and misleading when made because: (i) the allegations of contemporaneous data contradicting Defendants' purported false statements were not sufficiently detailed and were inconsistent with documents incorporated by reference into the complaint; (ii) the alleged misstatements and omissions were forward-looking and thus protected by the PSLRA safe harbor; (iii) the alleged misstatements and omissions were inactionable statements of opinion; and (iv) many of the alleged misstatements and omissions were inactionable puffery.

43. Defendants would also have continued to argue that even if Lead Plaintiffs could establish a material misstatement or omission, there was no evidence upon which Lead Plaintiffs could prove the requisite mental state of scienter – that Defendants misled investors intentionally. Defendants would also be able to demonstrate that the Individual Defendants did not engage in significant insider sales during the Class Period. As a result, Defendants would have advanced a compelling narrative to a jury that they lacked any motive to commit securities fraud. While such allegations are not required to prove scienter, a lack of insider sales could have undercut Lead Plaintiffs' ability to establish a strong inference of scienter at trial.

44. Even if Lead Plaintiffs' obtained a favorable result on the motion to dismiss, Defendants would have likely vigorously opposed any class certification motion, and sought summary judgment. There was no guarantee that Lead Plaintiffs would prevail against Defendants' challenges and, even if they did, how the Court's rulings would affect damages or how the case would be presented to a jury.

45. Lead Counsel therefore respectfully submits that based upon the considerable risk factors present, this Settlement is a favorable result for the Settlement Class.

### V.     Lead Counsel's Request for Attorneys' Fees

46.     Lead Counsel is among the most experienced and skilled firms in the securities litigation field and has a long and successful track record serving as lead counsel in many cases in courts nationwide. *See* Ex. 8 (Lead Counsel's firm resume and attorney biographies).

47.     The work undertaken by Lead Counsel in investigating and prosecuting this Action and arriving at the present Settlement in the face of serious hurdles has been challenging. Among other efforts, Lead Counsel conducted a comprehensive investigation into the Settlement Class's claims; researched and prepared a detailed amended class action complaint; briefed and argued an opposition to Defendants' motion to dismiss; and engaged in a hard-fought, arms-length, settlement process with experienced defense counsel.

48.     At all times throughout the pendency of the Action, Lead Counsel's efforts were driven and focused on advancing the litigation to bring about the most successful outcome for the Settlement Class, whether through settlement or trial, by the most efficient means necessary.

49.     Lead Counsel invested the time and resources necessary to bring this litigation to a successful conclusion. Lead Counsel's compensation for the services rendered has always been wholly contingent. The requested fee is reasonable based on the quality of Lead Counsel's work and the substantial benefit obtained for the Class, and is supported by the Lead Plaintiffs.

50.     Attached hereto are declarations from Plaintiffs' Counsel, which are submitted in support of the request for an award of attorneys' fees and payment of expenses. *See* Declaration of Bernstein Liebhard LLP in Support of Lead Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs (attached as Exhibit 3 hereto); and Declaration of Theodore M. Hess-Mahan in Support of Lead Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Reimbursement to Lead Plaintiffs (attached as Exhibit 5 hereto).

51.     Included with these declarations are schedules that summarize the time of each firm, as well as the expenses incurred by category. The attached declarations report the amount of time spent by each attorney and professional support staff employed by Plaintiffs' Counsel and the "lodestar" calculations, *i.e.*, their hours multiplied by their current rates. *See* Exs. 3, 5. As explained in each declaration, they were prepared from daily time records regularly prepared and maintained by the respective firms.

52.     The current lodestar spent on this Action exceeds the fee request of 33 1/3% of the Settlement Fund, which is referred to as a "negative multiplier." Additionally, Lead Counsel will devote additional time to administrating the Settlement, which is not included in the lodestar.

### VI.    Lead Counsel's Request for Litigation Expenses

53.     Lead Counsel seeks payment from the Settlement Fund of litigation expenses reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants. The Notice informs the Settlement Class that Lead Counsel will apply for payment of litigation expenses of no more than $100,000, plus interest at the same rate earned by the Settlement Fund.

54.     As set forth in Plaintiffs' Counsel's Declarations, Plaintiffs' Counsel will incur a total of $18,281.36 in litigation expenses in connection with the prosecution of the Action. *See* Ex. 3, at ¶ 8 (detailing Lead Counsel's $17,936.56 in expenses); Ex. 5, at ¶ 8 (detailing Liaison Counsel's $344.80 in expenses). The amounts requested herein are well below the $100,000 requested amount in the Notice to the Settlement Class.

55.     All of the litigation expenses were necessary for the successful prosecution and resolution of the claims against Defendants.

### VII.      Lead Plaintiffs' Reimbursements Pursuant to the PSLRA

56.     Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiffs are seeking reimbursement directly related to their representation of the Settlement Class, including time reviewing pleadings and court filings, communicating with Lead Counsel, and participating in settlement strategy with Lead Counsel.

57.     As set forth in the accompanying Declaration of Julio Maurice Bueno (Exhibit 1 hereto), and the Declaration of Harry Levin (Exhibit 2 hereto), Lead Plaintiffs seek $2,500 each for the time they dedicated to the Action. *See generally id*.

58.     The Individual Notice, Summary Notice and Notice each informed potential Settlement Class Members that Lead Counsel would be seeking payment of expenses in an amount not to exceed $100,000, including an award to the Lead Plaintiffs directly related to their representation of the Settlement Class, as authorized by the PSLRA. The aggregate amount requested, $23,281.36 (which includes $18,281.36 in litigation expenses incurred by Plaintiffs' Counsel and $5,000 to Lead Plaintiffs) is well below the $100,000 estimate given to the Settlement Class in the Notice.

### VIII.     Conclusion

59.     In view of the recovery to the Settlement Class, the substantial risks of this litigation, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Plaintiffs and Lead Counsel respectfully submit that: (a) the Settlement is fair, reasonable and adequate, and should be finally approved; (b) the application for attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, and litigation expenses in the amount of $18,281.36 should be approved; and (c) that Lead Plaintiffs be awarded $5,000 ($2,500 each), pursuant to the PSLRA.

## IX. Table of Exhibits

60. The following documents are true and correct copies:

| EXHIBIT | DOCUMENT |
|---|---|
| 1 | Declaration of Lead Plaintiff Julio Maurice Bueno |
| 2 | Declaration of Lead Plaintiff Harry Levin |
| 3 | Declaration of Bernstein Liebhard LLP in Support of Lead Counsel's Motion for Payment of Attorneys' Fees and Expenses |
| 4 | Declaration of Sarah Evans Concerning: (A) CAFA Notice Mailing; (B) Dissemination of Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections |
| 5 | Declaration of Hutchings Barsamian Mandelcorn, LLP in Support of Lead Counsel's Motion for Payment of Attorneys' Fees and Expenses |
| 6 | National Economic Research Associates, Inc (NERA), "Recent Trends in Securities Class Action Litigation: 2024 Full Year Review" |
| 7 | Compendium of unreported decisions |
| 8 | Firm Resume |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2025

  /s/ *Michael S. Bigin*

Michael S. Bigin