**EXHIBIT 7**

## Compendium of Unreported Cases

*Crandall v. PTC Inc.*,
   No. 1:16-cv-10471-WGY (D. Mass. Mar. 23, 2017) (Dkt. No. 48)..……………………..1

*Fitzpatrick v. Berryhill*,
   No. 1:15-cv-1865-WTL-MJD (S.D. Ind. Oct. 30, 2017) (Dkt. No. 33)..……...…………..2

*In re Biopure Corp. Sec. Litig.*,
   No. 1:03-cv-12628-NG (D. Mass Sept. 18, 2007) (Dkt. No. 168)…..……………..…..3

*In re Biopure Corp. Sec. Litig.*,
   No. 1:03-cv-12628-NG (D. Mass Sept. 24, 2007) (Dkt. No. 180)..………………..…..4

*In re Boston Scientific Corp. Sec. Litig..*,
   No. 1:20-cv-12225-ADB (D. Mass. Apr. 23, 2024) (Dkt. No. 166)..……………..…..…..5

*Miller v. Sonus Networks, Inc.*,
   No. 1:18cv12344-GAO (D. Mass.  Oct. 18, 2023) (Dkt. No. 132)..……………………......6

*Miller v. Sonus Networks, Inc.*,
   No. 1:18cv12344-GAO (D. Mass.  Apr. 24, 2024) (Dkt. No. 144)..……………………......7

00842977;V1

**TAB 1**

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW CRANDALL, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PTC INC., JAMES HEPPELMANN, JEFFREY GLIDDEN, ANDREW MILLER, ROBERT P. SCHECHTER, MICHAEL E. PORTER, PAUL A. LACY, THOMAS BOGAN, and DONALD K. GRIERSON,<br><br>Defendants. | Case No.: 16-cv-10471-WGY |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

Case 1:16-cv-10471-WGY   Document 48   Filed 03/23/17   Page 2 of 15

EXHIBIT A

WHEREAS, Lead Plaintiff Matthew Crandall ("Lead Plaintiff"), individually and on behalf of the Settlement Class, and PTC Inc. ("PTC" or the "Company") and the Individual Defendants (collectively, the "Defendants"), have entered into an Amended Stipulation of Settlement, dated March 1, 2017 (the "Settlement Stipulation"), which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits annexed thereto, sets forth the terms and conditions for the proposed settlement and dismissal of the putative class action pending before the Court entitled *Crandall v. PTC Inc., et al*, Case No. 16-cv-10471-WGY (D. Mass.) (the "Action"); and the Court having read and considered the Settlement Stipulation and the exhibits thereto and submissions made relating thereto, and finding that substantial and sufficient grounds exist for entering this Order; and the Settling Parties having consented to the entry of this Order;

NOW, THEREFORE, IT IS HEREBY ORDERED, this ____ day of _____, 2017, that:

1.      Definitions. Unless otherwise defined herein, capitalized terms used herein have the meanings defined in the Settlement Stipulation.

2.      Jurisdiction. This Court has jurisdiction over the subject matter of this Action and over the Settling Parties.

3.      Preliminary Findings as to Settlement Class. This Court finds, preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members of the Settlement Class is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Lead Plaintiff are typical of the claims of the Settlement Class he seeks to represent;

1

(d) Lead Plaintiff fairly and adequately represents the interests of the Settlement Class; (e) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

4. <u>Certification of the Settlement Class</u>. Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and for the purposes of the Settlement only, the Action is hereby preliminarily certified as a class action on behalf of the "Settlement Class," which is defined as all Persons (except Defendants, members of the immediate family of any individual defendant, any entity in which any Defendant has more than a 50% ownership interest, or which any Defendant controls, and the legal representatives, heirs, successors, or assigns of any such excluded party) who purchased or otherwise acquired PTC common stock during the period from November 24, 2011 through July 29, 2015 inclusive, including any Persons who sold PTC shares short and then purchased shares to cover that short position during the Settlement Class Period, and excluding those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions contained in and requirements of the "Notice of Pendency and Settlement of Class Action" to be sent to the Settlement Class.

5. <u>Lead Plaintiff and Lead Counsel.</u> Pursuant to Rule 23 of the Federal Rules of Civil Procedure, preliminarily and for the purposes of this Settlement only, Lead Plaintiff Matthew Crandall is certified as the class representative on behalf of the Settlement Class ("Class Representative") and Lead Plaintiff's Counsel, The Rosen Law Firm, P.A., previously selected by Lead Plaintiff and appointed by the Court, is hereby appointed as Lead Counsel for the Settlement Class ("Lead Counsel").

EXHIBIT A

6. <u>Preliminary Findings Concerning Proposed Settlement</u>. The Court preliminarily finds that the Settlement should be preliminarily approved as: (a) the result of good faith, arm's length negotiations, (b) falling within a range of reasonableness warranting final approval; and (c) sufficiently fair, reasonable and adequate to the Settlement Class Members to warrant providing notice of the Settlement to Settlement Class Members and holding a Settlement Hearing, as described below.

7. <u>Settlement Hearing</u>. A hearing (the "Settlement Hearing") pursuant to Federal Rule of Civil Procedure 23(e), will be held before the Honorable William G. Young, Courtroom 18, 5th Floor, of the United States District Court for the District of Massachusetts, 1 Courthouse Way, Boston, MA 02210 on July 13 2017 at 2:00 p.m. to, among other things: (a) determine whether to certify, for settlement purposes only, the Settlement Class; (b) determine whether the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court; (c) determine whether the Final Judgment substantially in the form of Exhibit B to the Settlement Stipulation should be entered; (d) determine whether the proposed Plan of Allocation for the distribution of the Net Settlement Fund is fair and reasonable and should be approved by the Court; (e) consider the application of Lead Counsel for an award of attorneys' fees and expenses and an award to the Class Representative; (f) consider any objections received by the Court; and (g) rule upon such other matters as the Court may deem appropriate.

8. <u>Continuance of Hearing/Modification of Settlement</u>. The Court reserves the right to continue or adjourn the Settlement Hearing to a later date without further notice to the Settlement Class, and to approve the Settlement with such modifications as may be agreed to by the Settling Parties without further notice to the Settlement Class where to do so would not impair Settlement Class Members' rights in a manner inconsistent with Rule 23 or due process of

3

law. The Court further reserves the right to enter the Final Judgment or an Alternative Judgment regardless of whether, and to what extent, it has approved the Plan of Allocation or awarded attorneys' fees and expenses.

9. <u>Notice</u>. The Court approves the form, substance and requirements of (a) the Notice, (b) the Summary Notice; and (c) the Proof of Claim, all of which are exhibits to the Settlement Stipulation, and finds that the procedures for publication, mailing and distribution of such notices substantially in the manner set forth in Paragraph 10 below meet the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 and all other applicable laws; constitute the best notice practicable under the circumstances; are reasonably calculated under the circumstances to describe the terms and effect of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement or to exclude themselves from the Settlement Class; and constitute due and sufficient notice to all Persons entitled thereto. No Settlement Class Member will be relieved from the terms and conditions of the Settlement, including the releases provided pursuant thereto, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice.

10. <u>Retention of Claims Administrator and Manner of Notice</u>. Lead Counsel is authorized to retain Strategic Claims Services as the Claims Administrator to supervise and administer the notice procedure as well as the processing of claims under the supervision of Lead Counsel as more fully set forth below:

    (a)    Lead Counsel, through the Claims Administrator, shall cause the Notice and the Proof of Claim, substantially in the forms annexed to the Settlement

Stipulation, to be mailed, by first class mail, postage prepaid, within sixteen (16) calendar days of the entry of this Order, to all Settlement Class Members who can be identified with reasonable effort.

(b)   Lead Counsel, through the Claims Administrator, shall cause the Settlement Stipulation and its exhibits, this Order, and a copy of the Notice and Proof of Claim to be posted on the Claims Administrator's website within sixteen (16) calendar days after entry of this Order.

(c)   Lead Counsel, through the Claims Administrator, shall cause the Summary Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* within sixteen (16) calendar days after the entry of this Order.

11.   Additional Provisions Concerning Notice. In order to effectuate providing notice as described above:

(a)   The Escrow Agent may, at any time after entry of this Order and without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $150,000.00 (One Hundred Fifty Thousand Dollars) from the Settlement Fund to pay Administration Costs.

(b)   No later than seven (7) calendar days after the date of this Order, PTC shall provide and/or cause its transfer agent to provide to Lead Counsel a list of the record owners of PTC common stock during the Settlement Class Period in a usable electronic format, such as an Excel spreadsheet. This information will be kept confidential and not used for any purpose other than to provide the notice contemplated by this Order.

(c)     Lead Counsel, through the Claims Administrator, shall take all reasonable efforts to give notice to nominees or custodians who held PTC common stock during the Settlement Class Period as record owners but not as beneficial owners. Such nominees or custodians shall, within ten (10) calendar days of receipt of the Notice and Proof of Claim, either (i) request additional copies of the Notice and Proof of Claim sufficient to send the Notice and Proof of Claim to all beneficial owners for whom they are nominee or custodian, and within ten (10) calendar days after receipt thereof send copies to such beneficial owners; or (ii) provide the Claims Administrator with lists of the names, last known addresses and email addresses (to the extent known) of such beneficial owners, in which event the Claims Administrator shall promptly deliver the Notice and Proof of Claim to such beneficial owners. Nominees or custodians who elect to send the Notice and Proof of Claim to their beneficial owners shall send a written certification to the Claims Administrator confirming that the mailing has been made as directed. Additional copies of the Notice and Proof of Claim shall be made available to any nominee or custodian requesting same for the purpose of distribution to beneficial owners. The Claims Administrator shall, if requested, reimburse nominees or custodians out of the Settlement Fund solely for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners, which expenses would not have been incurred except for the sending of such notice, up to $0.75 per Notice, and subject to further order of this Court with respect to any dispute concerning such reimbursement.

(d)     Not later than thirty-four (34) calendar days before the Settlement Hearing, Lead Counsel shall file with the Court one or more affidavits showing timely compliance with the foregoing mailing and publication requirements.

6

EXHIBIT A

12. <u>Claims.</u> In order to be entitled to participate in recovery from the Net Settlement Fund after the Effective Date, each Settlement Class Member shall take the following action and be subject to the following conditions:

(a) A properly completed and executed Proof of Claim and Release Form must be submitted to the Claims Administrator, at the Post Office Box indicated in the Notice, postmarked no later than _____, 2017 (forty four (44) calendar days prior to the Settlement Hearing). Such deadline may be further extended by Order of the Court. Each Proof of Claim and Release Form shall be deemed to have been submitted when legibly postmarked (if properly addressed and mailed by first class mail) provided such Proof of Claim and Release Form is actually received before the filing of a motion for an Order of the Court approving distribution of the Net Settlement Fund. Any Proof of Claim and Release Form submitted in any other manner shall be deemed to have been submitted when it was actually received by the Claims Administrator at the address designated in the Notice.

(b) The Proof of Claim and Release Form submitted by each Settlement Class Member must satisfy the following conditions: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Class Counsel; (iii) if the person executing the Proof of Claim and Release Form is acting in a representative capacity, a certification of his current authority to act on behalf of the Settlement Class Member must be provided with the Proof of Claim and Release Form;

7

and (iv) the Proof of Claim and Release Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

13.  Reviewing Claims. Once the Claims Administrator has considered a timely submitted Proof of Claim, it shall determine whether such claim is valid, deficient or rejected. For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency letter or rejection letter as appropriate, describing the basis on which the claim was so determined. Persons who timely submit a Proof of Claim that is deemed deficient or otherwise rejected shall be afforded a reasonable time (at least fifteen (15) calendar days) to cure such deficiency if it shall appear that such deficiency may be cured. If any Settlement Class Member whose claim has been rejected in whole or in part wishes to contest such rejection, the Settlement Class Member must, within fifteen (15) calendar days after the date of mailing of the notice of rejection, serve upon the Claims Administrator a notice and statement of reasons indicating the Settlement Class Member's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If an issue concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court. By submitting a Proof of Claim, Settlement Class Members submit to the jurisdiction of the Court with respect to the claim submitted. No discovery shall be allowed on the merits of the Action or the Settlement in connection with processing of the Proofs of Claim, nor shall any discovery from or of Defendants be allowed on any topic. No dispute regarding a Proof of Claim shall affect or delay the entry or finality of the Final Judgment or an Alternative Judgment.

14.  Exclusions From The Settlement Class. Settlement Class Members shall be bound by all determinations and judgments in this Action, whether favorable or unfavorable,

8

unless such Persons request exclusion from the Settlement Class in a timely and proper manner, as hereinafter provided. A Settlement Class Member wishing to make a request for exclusion shall mail it, in written form, by first class mail, postage prepaid, or otherwise deliver it, so that it is received no later than _____, 2017 (thirty (30) calendar days prior to the Settlement Hearing) (the "Exclusion Deadline"), to the addresses listed in the Notice. In order to be valid, such request for exclusion must (A) clearly indicate the name, address, phone number, and e-mail address of the Person seeking exclusion, and state that the sender specifically "requests to be excluded from the Settlement Class in *Crandall v. PTC Inc.*" and (B) state the date, number of shares and dollar amount of each PTC common stock purchase, acquisition and sale during the Settlement Class Period, as well as the number of shares of PTC common stock held by the Person as of November 24, 2011 and July 29, 2015 (the first and last days of the Settlement Class Period). Any such request for exclusion must be signed and submitted by the beneficial owner under penalty of perjury. The request for exclusion shall not be effective unless it provides the required information, is legible, and is made within the time stated above, or the exclusion is otherwise accepted by the Court. Lead Counsel may contact any Person filing a request for exclusion, or their attorney if one is designated, to discuss the exclusion. The Claims Administrator shall provide all requests for exclusion and supporting documentation submitted therewith (including untimely requests) to counsel for the Settling Parties as soon as possible and no later than the Exclusion Deadline or upon the receipt thereof (if later than the Exclusion Deadline).

15.     Revoking Requests For Exclusion.  Any Person that submits a request for exclusion may thereafter submit to the Claims Administrator and to Lead Counsel a written and signed revocation of that request for exclusion, provided that it is received no later than two (2)

9

EXHIBIT A

Business Days before the Settlement Hearing, in which event that Person will be included in the Settlement Class.

16. <u>Objections to Settlement</u>. The Court will consider objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application, <u>provided</u>, <u>however</u>, that no Settlement Class Member or other Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement or, if approved, the Final Judgment, or any other order relating thereto, unless that Person has served copies of any objections, papers and briefs to each of the following counsel at least seventeen (17) calendar days prior to the Settlement Hearing Date:

CLASS COUNSEL:

Laurence M. Rosen, Esq.
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016

DEFENDANTS' COUNSEL:

Brian E. Pastuszenski, Esq.
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018

Lead Counsel will file with the Court all objections it receives. To be valid, an objection must contain (1) the objector's name, address, telephone number and email address; (2) a statement that the objector is objecting to the proposed Settlement, Plan of Allocation or award of attorneys' fees and expenses in *Crandall v. PTC, Inc.* (3) documentation of all purchases and sales of PTC common stock during the Settlement Class Period; (4) all grounds for the objection, including any legal support known to the Settlement Class Member and/or his, her, or its counsel, (5) the name, address and telephone number of all counsel who represent the Settlement Class Member, including former or current counsel who may be entitled to compensation in connection with the objection, and (6) the number of times the Settlement Class Member and/or his, her, or its counsel has filed an objection to a class action settlement in the last five years, the

10

Case 1:16-cv-10471-WGY   Document 48   Filed 03/23/17   Page 12 of 15

nature of each such objection in each case, the jurisdiction in each case, and the name of the issuer of the security or seller of the product or service at issue in each case.

17.     Appearance at the Settlement Hearing. Attendance at the Settlement Hearing is not necessary but Persons wishing to be heard orally in opposition to the approval of the Settlement Stipulation, the Plan of Allocation, and/or the Fee and Expense Application are required to indicate in their written objection (or in a separate writing submitted to the counsel listed in Paragraph 16 no later than seventeen (17) days prior to the Settlement Hearing) that they intend to appear at the Settlement Hearing and identify any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Hearing. Objectors or their attorneys intending to appear at the Settlement Hearing must also, no later than seventeen (17) days prior to the Settlement Hearing, file with the Court, and serve upon counsel listed in the above paragraph, a notice of intention to appear, setting forth the name and address of anyone intending to appear. Any objector or counsel who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear, except for good cause shown. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.

18.     Waiver of Objections. Any Settlement Class Member who does not object in the manner prescribed above shall be deemed to have waived all such objections and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the Settlement, the Final Judgment to be entered approving the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, unless otherwise ordered by the Court; shall be bound by all the terms and provisions of the Settlement Stipulation and by all proceedings, orders and

11

judgments in the Action, including but not limited to the Final Judgment and all releases therein; and shall also be foreclosed from appealing from any judgment or order entered in this Action.

19.     Adjournment. The Court reserves the right to adjourn the Settlement Hearing without any further notice other than entry of an Order on the Court's docket, and to approve the Settlement without further notice to the Settlement Class.

20.     Papers in Support of Final Settlement Approval. All papers in support of the Settlement, the Plan of Allocation and/or the Fee and Expense Application shall be filed and served no later than thirty four (34) calendar days before the Settlement Hearing. Any submissions filed in response to any objections or in further support of the Settlement, the Plan of Allocation and/or the Fee and Expense Application shall be filed no later than seven (7) calendar days prior to the Settlement Hearing. Defendants, their counsel, their insurers and other Released Parties shall have no responsibility for the Plan of Allocation or any application for attorneys' fees or expenses or payment award to the Lead Plaintiff submitted by Lead Counsel, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. No order or proceedings relating to the Plan of Allocation or any application for attorneys' fees or expenses or payments to the Lead Plaintiff shall affect or delay the entry or finality of any order granting final approval to the Settlement.

21.     Bar on Litigating Released Claims. Pending final determination of whether the Settlement should be approved, all Releasing Parties and anyone who acts or purports to act on their behalf, shall be enjoined from instituting, continuing, asserting or prosecuting, or assisting any Person in instituting, continuing, asserting or prosecuting in any forum, any Released Claim, in any capacity, against any Released Party. Unless and until the Settlement Stipulation is cancelled and terminated pursuant to the Settlement Stipulation, all proceedings in the Action,

12

Case 1:16-cv-10471-WGY   Document 48   Filed 03/23/17   Page 14 of 15

EXHIBIT A

other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Stipulation, are hereby stayed and suspended until further order of the Court.

22.    Funds In Custody Of Court. All funds held by the Escrow Agent shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to the Settlement Stipulation, the Plan of Allocation and/or further order(s) of the Court.

23.    Use of Settlement Stipulation and Related Materials. Neither the Settlement Stipulation, nor any of its terms or provision, nor any of the negotiations or proceedings connected with it, nor this Order, shall be construed as an admission or concession by Defendants, their counsel, their insurers or any of the other Released Parties of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing or any kind and shall not be construed as, or deemed to be evidence of or an admission or concession that Lead Plaintiff or any Settlement Class Members have suffered any damages, harm, or loss. Further, neither the Settlement Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, nor this Order shall be construed as an admission or concession by the Lead Plaintiff of the validity of any factual or legal defense or of the infirmity of any of the claims or facts alleged in this Action.

24.    Termination of Settlement. In the event the Settlement is not consummated in accordance with the terms of the Settlement Stipulation, then this Order (including any amendment(s) thereof) shall be null and void, of no further force or effect, and without prejudice to any Settling Party, and may not be introduced as evidence or used in any action or proceeding by any Person against the Settling Parties or the Released Parties. In such event, Paragraph 10.6 of the Settlement Stipulation shall govern the rights of the Settling Parties.

13

EXHIBIT A

25.    Retention of Jurisdiction.  The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of, or relating to, the Settlement Stipulation, including by way of illustration and not limitation, any dispute concerning any Proof of Claim submitted and any future requests by one or more of the Parties that the Final Judgment be enforced.

Dated: _March 23_, 2017

_William D. Young_

HON. WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE

14

**TAB 2**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **MICHAEL D. FITZPATRICK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Cause No. 1:15-cv-1865-WTL-MJD** |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## ENTRY ON MOTION FOR ATTORNEY FEES

After this case was remanded to the Commissioner for further proceedings, Plaintiff

Michael D. Fitzpatrick received a fully favorable decision and was awarded disability insurance

benefits, including a back pay award of $74,461.00. Plaintiff's counsel now requests an award of

attorney fees pursuant to 42 U.S.C. § 406(b) in the amount of $18,615.25 which, consistent with

the agreement between counsel and Mr. Fitzpatrick, is 25% of his back pay award. As is her

right, the Commissioner has filed a response to the fee petition; she points out that given the fact

that counsel's firm spent 6.4 attorney hours and 11.4 non-attorney staff hours on Mr.

Fitzpatrick's appeal before this Court, the fee award sought would correspond to an implied

hourly rate somewhere between $1,045 per hour (counting non-attorney time as equal to attorney

time) and $2,908 per hour (counting solely attorney time).

The question before the Court is whether $18,615.25 is a reasonable attorney fee in this

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically
became the Defendant in this case when she succeeded Carolyn Colvin as the Acting
Commissioner of Social Security on January 23, 2017.

case. 42 U.S.C. § 406(b)(1)(a) ("Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . ."); *McGuire v. Sullivan*, 873 F.2d 974, 981 (7th Cir. 1989) ("[T]he court should consider the reasonableness of the contingency percentage to make sure the attorney does not receive fees which are out of proportion to the services performed, the risk of loss and the other relevant considerations."). At first blush, an award of over $1,000 per hour for this type of case might seem unreasonable. However, the fact is that Plaintiff's counsel handled this case in a very efficient manner, making a clear, concise and targeted argument that maximized the Plaintiff's chance of success of receiving an order of remand from this Court and ultimately an award of benefits from the Commissioner. Further, while there is obviously some risk of loss in virtually any case, in the Court's experience it is particularly difficult to predict with any certainty how a case will be handled by the Commissioner, especially at the ALJ level. Given this fact, and also considering the need to encourage high quality representation of those seeking disability benefits, the Court finds that the fee award requested by Plaintiff's counsel is this case is reasonable, and the motion is **GRANTED.**

Plaintiff's counsel Joseph R. Wambach is entitled to a fee award of $18,615.25 pursuant to 42 U.S.C. § 406(b) and the Commissioner shall release those funds to him.   Upon receipt of these funds, Mr. Wambach shall refund to Mr. Fitzgerald the $2,324.00 he has received pursuant to the Equal Access to Justice Act.

SO ORDERED: 10/30/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

**TAB 3**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **IN RE: BIOPURE CORPORATION SECURITIES LITIGATION** | ) ) ) ) ) ) | **CIVIL ACTION NO. 03-12628-NG** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR FINAL APPROVAL OF THE**
**PROPOSED CLASS ACTION SETTLEMENT**

<table>
<tr><td>Edward F. Haber, Esq.<br>Matthew L. Tuccillo, Esq.<br><b>SHAPIRO HABER & URMY LLP</b><br>53 State Street<br>Boston, MA 02109<br>Tel: (617) 439-3939</td><td>Jules Brody, Esq.<br>Howard Longman, Esq.<br><b>STULL, STULL & BRODY</b><br>6 East 45th Street<br>Suite 500<br>New York, NY 10017<br>Telephone: (212) 687-7230</td></tr>
</table>

*Plaintiffs' Co-Lead Counsel*

i

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................1

II.     THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY
        APPROVAL ORDER MEET THE REQUIREMENTS OF DUE
        PROCESS, RULE 23 OF THE FEDERAL RULES OF CIVIL
        PROCEDURE, AND THE PSLRA........................................................2

III.    FINAL CERTIFICATION OF THE PROPOSED CLASS FOR
        PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE ..............3

        A.      The Requirements Of Rule 23(a) Are Satisfied.........................................3

                1.      The Proposed Class Is So Numerous That Joinder Of
                        All Members Is Impracticable……………………………………….3

                2.      There Are Questions Of Law And Fact Common To
                        The Class…………………………………………………………..4

                3.      Plaintiffs' Claims Are Typical Of The Claims Of The Class……...6

                4.      Plaintiffs Will Fairly And Adequately Protect The Interests
                        Of The Class…………………………………………………………7

        B.      The Requirements Of Rule 23(b)(3) Are Also Satisfied ............................8

                1.      Common Questions of Law And Fact Predominate Over
                        Individual Questions………………………………………………8

                2.      A Class Action Is Superior To Other Available Methods
                        Of Adjudication…………………………………………………… 9

IV.     UNDER THE APPLICABLE STANDARDS, THE PROPOSED
        SETTLEMENT SHOULD BE APPROVED ........................................................10

        A.      Courts Favor Settlements, Particularly Of Class Actions.........................10

        B.      The Court Must Find That The Settlement Is Fair, Reasonable,
                And Adequate ......................................................................................11

C.  The Relevant Factors All Militate In Favor Of Approving The
Settlement .......................................................................................................13

1.  The Complexity And Likely Duration Of This Litigation
Through Trial And Appeals Favors The Settlement……………..13

2.  The Reaction Of The Class To The Settlement Favors
Approval Of The Settlement………………………………………..14

3.  The Stage of The Proceedings Favors The Settlement…………..15

4.  The Risks Concerning Plaintiffs' Likelihood Of Success
On The Merits, Of Proving Damages, and Of Maintaining
The Class Action Through Trial Favor The Settlement…...………15

5.  The Range of Possible Recovery, The Ability of Defendants
to Withstand a Greater Judgment, And The Reasonableness
Of The Settlement Fund Favor The Settlement…...……………..17

6.  The Settlement Is the Result of Arm's-Length Negotiations
By Experienced Counsel…………………………………………18

V.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE........................19

VI.  CONCLUSION...................................................................................................20

iii

## I.   INTRODUCTION

Lead Plaintiff Ronald Erickson ("Erickson") and Plaintiff Dr. John G. Esposito, Jr. ("Esposito") (together the "Plaintiffs" or the "Class Representatives") submit this Memorandum of Law pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of final approval of the proposed settlement (the "Settlement") of all claims asserted against Defendants in the above-captioned class action (the "Action").  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of May 17, 2007 and its exhibits (the "Settlement Agreement").  The Settlement is proposed on behalf of a Class of all persons (the "Class") who purchased Biopure Corporation ("Biopure" or the "Company") common stock from April 9, 2003 through December 24, 2003, inclusive (the "Class Period").[1]

Through the Settlement Agreement, Plaintiffs have succeeded in obtaining for the benefit of the Class an all-cash settlement of $10,000,000, plus interest (the "Gross Settlement Fund"). The Settlement is an excellent result for the Class.  Moreover, the overwhelmingly favorable reaction of the members of the Class underscores the reasonableness of the Settlement.  On July 9, 2007, individual Notice of Proposed Settlement of Class Action Motion For Attorneys Fee and Settlement Fairness Hearing (the "Notice") was mailed to potential members of the Class. Shortly after the initial mailing, a Summary Notice of Settlement was published in the national edition of *The Wall Street Journal* on July 16, 2007.  Overall, more than 17,000 copies of the Notice have been disseminated to potential Class members.  The last day to object to the Settlement, September 11, 2007, has now passed and not a single objector has come forward.

---

[1]   Excluded from the Class are the Defendants in this Action; members of the immediate family (parents, siblings and children) of each of the individual Defendants; the officers, directors, parents, subsidiaries and affiliates of Biopure; any person, firm, trust, corporation, or other entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors in interest, or assigns of any excluded person.

On May 23, 2007, this Court preliminarily approved the proposed Settlement.  In light of the serious risks, uncertainties, delays, and expense of continued litigation, the likely difficulties to be encountered in establishing liability and damages, and the substantial and immediate benefit obtained for and lack of objections raised by the Class, Plaintiffs respectfully request that the Court give final approval to the Settlement as fair, reasonable, and adequate and in the best interests of the Class.  The proposed Settlement, if approved, will result in a complete resolution of all claims in the action.[2]

## II.    THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY APPROVAL ORDER MEET THE REQUIREMENTS OF DUE PROCESS, RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND THE PSLRA

The Court approved the notice procedures to be used in this case in its Preliminary Approval Order dated May 23, 2007 (the "Preliminary Approval Order").  Plaintiffs have now completed mailing out the Notice and publishing the Summary Notice as set forth in the Preliminary Approval Order.  Beginning on July 9, 2007, over 17,000 copies of the Court-approved Notice were mailed to potential Class members or their nominees.  *See* Affidavit of Michael Rosenbaum.[3]  A Summary Notice of the Settlement was published in the national edition of *The Wall Street Journal* on July 16, 2007.

The forms of notice were tailored to reach as many Class members as possible.  The mailed Notice explains the action, the terms of the Settlement, the Plan of Allocation, the anticipated fee and expense requests, and the rights and options of Class members to object to the Settlement or exclude themselves from the Class.  The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of

---

[2]  For a detailed description of the litigation, including the procedural history, claims alleged in the Complaint, and the settlement negotiations, Plaintiffs refer the Court to the Joint Declaration of Co-Lead Counsel in Support of Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Declaration").

[3]  A copy of the Affidavit of Michael Rosenbaum is filed herewith.

the full Notice.  This program is similar to the settlement notice procedures commonly approved in other cases.[4]  Accordingly, the notice program employed with regards to the Settlement has fully satisfied the requirements of process, Rule 23, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## III. FINAL CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

Before addressing the substantive fairness, adequacy, and reasonableness of the Settlement, the Court must finally certify the Class, which was conditionally certified in the Preliminary Approval Order.  Plaintiffs now move, with the agreement of Defendants, for final certification of the Class for purposes of the proposed Settlement.  The Class is a Rule 23(b)(3) "opt out" class, which, with certain exclusions, is defined as all persons who purchased the common stock of Biopure during the time period between April 9, 2003 through December 24, 2003, inclusive.  The parties agree that final certification is appropriate for settlement purposes because the Class meets the requirements of Rules 23(a) and 23(b)(3).

### A. The Requirements Of Rule 23(a) Are Satisfied

#### 1. The Proposed Class Is So Numerous That Joinder Of All Members Is Impracticable

The class must be so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Adver. Specialty Nat'l Ass'n v. Fed. Trade*

---

[4] *See, e.g., In re: New England Mut. Life Ins. Co. Sales Practices Litig.*, 204 F.R.D. 6, 9 (D. Mass. 2001) (approving notice that explained procedure for opting out of class and consequences of failing to request exclusion from class settlement); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 61 (D. Mass. 1997) (noting class notice must be disseminated "to the greatest practical extent" and must apprise Class members of terms of settlement and options available to them); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (finding that notice was proper where it adequately informed class members of terms of settlement); *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) (approving form of notice where notice apprised class members of date of fairness hearing, complaint's allegations, and settlement terms); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (holding notice generally describing terms of settlement and formula for computing awards mailed out 45 days before hearing met requirements of Rule 23 and due process).

*Comm'n,* 238 F.2d 108, 119 (1st Cir. 1956). The "numerosity" requirement under Fed. R. Civ. P. 23(a)(1) has been met here because the number and diverse location of putative class members renders it impractical to join all of the Class members in one lawsuit. "With respect to numerosity, in the context of securities litigation, often the 'exact number of Class members is unknown . . . and can only be ascertained through appropriate discovery.'" *In re: Transkaryotic Therapies, Inc. Sec. Litig.,* 2005 WL 3178162, *2 (D. Mass. Nov. 28, 2005) *citing Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005). Therefore, in determining whether a proposed class meets the numerosity requirement, "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987); *Swack*, 230 F.R.D. at 258.

During the Class Period, Biopure common stock was actively traded on the National Association of Securities Dealers Automated Quotation (NASDAQ). According to Biopure's 10-K for the fiscal year ended October 31, 2003, the total number of Biopure shares outstanding was almost 45 million. The threshold for a presumption of impracticability of joinder is easily exceeded. *See, e.g., Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *12 (D.R.I. Aug. 22, 2002) (finding that numerosity requirement had been met where stock traded on NASDAQ small cap market and where "thousands, if not millions, of the shares were traded"). That over 17,000 Notices were mailed to potential Class members also confirms numerosity. The numerosity requirement is clearly met here.

### 2.    There Are Questions Of Law And Fact Common To The Class

The "commonality" requirement under Fed. R. Civ. P. 23(a)(2) has also been satisfied. Rule 23(a)(2) requires that there be "questions of law <u>or</u> fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). "The threshold of commonality is not a difficult one to meet," particularly where, as here, "there are a number of common issues of fact and law that the class

members would be required to establish to prove the defendants' liability, as well as their entitlement to damages." *In re: Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005). "It does not require that class members' claims be identical. A single common legal or factual issue can suffice." *See Payne v. The Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (quotations and internal citations omitted).

Here, the SAC alleges the following common questions of law and fact, among others, as pertaining to all members of the Class:

(i)    whether Defendants' statements concerning Biopure contained false or misleading statements and/or failed to disclose material facts;

(ii)    whether Defendants' conduct constitutes a "scheme" and/or "course of business" under Rule 10b-5(a) and (c);

(iii)    whether Defendants acted with *scienter*;

(iv)    whether Defendants' conduct caused the class members losses; and

(v)    whether the Class has sustained damages, and the measure of such damages.

Courts in this Circuit have repeatedly found that common questions of law and fact exist where, as here, the alleged wrongdoing involves material misrepresentations allegedly made in uniform statements disseminated to the investing public. *See Priest v Zayre Corp.*, 118 F.R.D. 552, 554 (D. Mass. 1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987); *Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *13 (D.R.I. 2002) (commonality is established where misrepresentations and omissions in defendants' "press releases and required filings with the SEC" caused their stock "to trade at artificially inflated prices"); *Randle v. SpecTran,* 129 F.R.D. 386, 390 (D. Mass. 1988) ("Plaintiffs present common questions in their allegations of misstatements and omission[s] in various [company] public

financial documents."). Moreover, in a fraud-on-the-market case such as this, "all [P]laintiffs will have to prove the same misrepresentations and omissions, as well as their materiality and defendants' knowledge. Thus, it is obvious that common questions exist." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

Accordingly, the requirements of Rule 23(a)(2) are satisfied.

### 3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied where "plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims." *Kinney*, 2002 U.S. Dist. LEXIS 18628, at \*13-14; *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991); *In re: Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)(citation omitted). In general, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re: Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005). As alleged in the SCAC, Plaintiffs, like the absent Class members, purchased Biopure stock during the Class Period at prices that were artificially inflated due to Defendants' material misrepresentations and suffered losses as a result thereof. Thus, Plaintiffs have met the typicality requirement of Fed. R. Civ. P. 23(a)(3), insofar as their claims arise from the same events as do the claims of all Class members.

In addition, Courts in this Circuit have repeatedly found the typicality requirement of Rule 23(a)(3) satisfied if Plaintiffs and the Class relied on the integrity of the market. *See Adair*, 134 F.R.D. at 17 ("[w]hen a case is brought under a fraud on the market theory, typicality is established by a showing that the putative plaintiff relied on the integrity of the market"); *Grace*, 128 F.R.D. at 168 ("Typicality is established by showing that the putative plaintiffs relied on the integrity of the market. . . . When a case is brought under a fraud on the market theory, reliance

6

on any public material misrepresentations is presumed."). Here, Plaintiffs and the Class all rely upon the same fraud on the market theory predicated on their having relied on the integrity of the stock markets. For this reason as well, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

This Circuit has identified two basic guidelines for satisfying the adequacy of representation test of Rule 23(a)(4): (i) there must be an absence of potential conflict between the named plaintiffs and the class members, and (ii) there must exist an assurance that plaintiffs' counsel is qualified, experienced, and able to vigorously conduct the litigation.[5] Both prongs of the adequacy of representation test are satisfied here.

Here, there are no conflicts between the Class Representatives and absent Class members who have damages and recognized losses under the Plan of Allocation, all of whom purchased and held the <u>same</u> securities (common shares of Biopure) during the <u>same</u> time period (the Class Period) and whose claims are based on the <u>same</u> conduct and legal theories. Thus, both Class Representatives can fairly and adequately represent the interests of the Class.

Furthermore, in determining whether the action will be vigorously prosecuted or defended, courts have stressed the skill and experience of counsel. *See Baffa v. Donaldson*, 222 F.3d 52, 60-61 (2d Cir. 2000); *In re: TCW/DW N. Am. Gov't Income Trust Secs. Litig.*, 941 F. Supp. 326, 341 (S.D.N.Y. 1996). Plaintiffs in this action have retained counsel with extensive experience litigating complex securities class actions. Plaintiffs and their counsel have demonstrated their willingness to represent the interests of all members of the Class by the considerable efforts devoted to the prosecution of this action since its inception. Moreover,

---

[5] *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Bank of Boston*, 762 F. Supp. at 1534; *Adair*, 134 F.R.D. at 18); *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991); *Opiela v. Bruck*, 139 F.R.D. 257, 261 (D. Mass. 1990); *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988).

Plaintiffs' Counsel are preeminent class action attorneys, who have previously served as lead counsel in many prior securities class actions, who have a proven track record in the prosecution of class actions, and who have successfully litigated and tried many major class action cases.

Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

### B.    The Requirements Of Rule 23(b)(3) Are Also Satisfied

In addition to the Rule 23(a) requirements, Rule 23(b)(3) requires that the common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  Here, Plaintiffs satisfy both requirements.

### 1.    Common Questions Of Law And Fact Predominate Over Individual Questions

It is well-established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability.  Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003); *In re: Relafen Antitrust Litig.*, 218 F.R.D. 337, 345 (D. Mass. 2003). When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d, § 1788 at 528 (1986). The common questions, however, need not be dispositive of the entire action, because "predominate" as used in Fed. R. Civ. P. 23(b)(3) should not be equated with being "determinative." *See Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class").  A single, central issue as to the defendant's conduct vis-a-vis class members can satisfy the predominance requirement. *Payne*, 216  F.R.D. at 27.

As discussed above, here, the Class Representatives and Class members face common issues of both fact and law that predominate over any individual questions. Were it not for the Settlement, the litigation would be focused on whether Defendants' statements were false or misleading, whether Defendants acted with *scienter,* and whether Class members suffered damages and how damages should be measured. These issues of liability and damages are common for the Plaintiffs and for all Class members. As such, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 592, 625, 117 S.Ct. 2231 (1997).

The predominance requirement of Rule 23(b)(3) is satisfied.

### 2.    A Class Action Is Superior To Other Available Methods Of Adjudication

"The final hurdle that plaintiffs must clear under Rule 23 is the requirement to demonstrate that 'a class action is a fair and efficient method of adjudicating the controversy and would be superior to other methods.'" *Payne*, 216 F.R.D. at 29 *quoting Mack v. Suffolk County*, 191 F.R.D. 16, 25 (D. Mass. 2000) (finding by court that the proposed class meets all of the other Rule 23 criteria strongly suggests that a class action is desirable as a matter of judicial economy, that joinder is impracticable, and that common issues predominate.)

The superiority of a class action in securities fraud cases, which generally involve numerous defrauded investors whose claims are individually not large enough to make separate actions economically feasible, is well recognized. As the Court explained in *Randle*:

> [I]n light of plaintiffs' allegations concerning the large number of outstanding [company] shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy.

129 F.R.D. at 393. *See also Grace*, 128 F.R.D. at 171; *Priest*, 118 F.R.D. at 553-54.

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because, absent a class action, this Court would be faced with the task of potentially litigating numerous individual lawsuits:

> [T]he benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

*Kirby*, 116 F.R.D. at 311 *quoting Berenson v. Faneuil Hall*, 100 F.R.D. 468, 471 (D. Mass. 1984).[6]

Finally, clearly, there will be no difficulties in the management of this case as a class action in view of the proposed Settlement.  As the Supreme Court has explained:  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. 591 at 620.

For all these reasons, the superiority requirement of Rule 23(b)(3) is met.

## IV.    UNDER THE APPLICABLE STANDARDS, THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.    Courts Favor Settlements, Particularly Of Class Actions

Courts consistently favor the settlement of disputed claims, which spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial

---

[6] *See also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation.");  *Amchem,* 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.");  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

resources.[7]   Nowhere is this policy more appropriate than in the context of class actions.  *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved").[8]

### B. The Court Must Find That The Settlement Is Fair, Reasonable, And Adequate

Approval of a class action settlement is within the sound discretion of the trial court and will not be overturned absent clear abuse of that discretion.  *Greenspun*, 492 F.2d at 381; *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court.").  In deciding whether to approve a proposed settlement of a class action, the Court must conclude that the settlement is fair, reasonable, and adequate.  *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *In re: Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 105.

In evaluating a settlement, however, the Court should not engage in a trial on the merits. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  The settlement hearing should not become a trial or a rehearsal of the trial.  *See In re: Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 106 ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute.").  Indeed, a full-blown trial would defeat the very purpose of a settlement: avoiding a sharply contested trial and unnecessary litigation.  *See Greenspun*, 492 F.2d at 381 ("A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose

---

[7] *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durrett v. Hous. Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re: Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 15 (1st Cir. 1980); *In re: First Commodity Corp. Customer Accounts Litig.*, 119 F.R.D. 301, 313 (D. Mass. 1987).

[8] *See also* C*otton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re: Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements.") (citation omitted); *First Commodity*, 119 F.R.D. at 313; *In re: Warner Communications Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted).

of settlement is precisely to avoid such a trial."); *Duhaime*, 177 F.R.D. at 68; *First Commodity*, 119 F.R.D. at 314. Thus, in determining whether to approve a class action settlement, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [an appellate court] in reviewing that approval [has] the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Detroit v. Grinnell*, 495 F.2d 448, 456 (2d Cir. 1974); *see also Grunin v. Int'1 House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975); *Lewis v. Newman*, 59 F.R.D. 525, 527 (S.D.N.Y. 1973). Accordingly, judicial evaluation of a proposed settlement of a class action involves a limited inquiry into whether the possible rewards of litigation, with its risks, costs, and delays, are outweighed by the benefits of the settlement. In *Grinnell*, the Second Circuit, quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (internal citation omitted), stated:

> The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable.

495 F.2d at 462.[9] Courts in this Circuit use a similar approach.[10]

---

[9] The *Grinnell* decision also set forth the following non-exhaustive list of factors which a trial court may consider in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted).

[10] *See, e.g., In re: Fleet/Norstar*, 935 F. Supp. at 105 ("In determining whether a proposed settlement is fair, reasonable and adequate, courts consider the merits and complexity of the claims, the circumstances of the settlement, the terms of the settlement, and objections to the settlement."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("This fairness determination is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation.") *citing M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D. Mass. 1987).

**C.      The Relevant Factors All Militate In Favor Of Approving The Settlement**

**1.      The Complexity And Likely Duration Of This Litigation Through Trial And Appeals Favors The Settlement**

The delay inherent in continuing this complex litigation through trial and appeals is a factor weighing strongly in favor of the Settlement.  This Settlement provides the Class an immediate benefit without further delays beyond the four years during which this case already has been litigated.  Further discovery, summary judgment motions, and trial, with various pre-trial motions and inevitable appeals, await all parties in the event this Settlement is not approved. Clearly, approval of the Settlement will obviate the need for the trial, the resulting burden on the Court, and the reality of further delay in payment (if any after trial) to the Class.  *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000); *In re: First Commodity Corp. Customer Accounts Litigation*, 119 F.R.D. 301, 314 (D. Mass. 1987); *In re: Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985).  Class members will receive their settlement proceeds much sooner under the proposed Settlement than if the action went to trial and through potentially lengthy appeals, particularly given that the Class could receive nothing in the event of a disfavorable trial outcome or appellate decision.

Moreover, all trials involve risks, particularly in shareholder class actions.  Courts have long recognized that "[s]tockholder litigation is notably difficult and unpredictable."  *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  *See also Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976) ("[s]tockholder litigation is notably difficult and unpredictable and in these circumstances the courts have displayed a healthy skepticism in the face of optimistic forecasts or large demands").  As demonstrated in the Joint Declaration and discussed in greater detail below, this case is no different.  The Settlement avoids such risks and uncertainties and provides the Class with a substantial benefit now. Therefore, given the prospects for a long and arduous trial and appeal process, as well as the

substantial risks and expense involved in any complex litigation, settlement at this stage is highly beneficial to Class members. *See First Commodity*, 119 F.R.D. at 314.

### 2. The Reaction Of The Class To The Settlement Favors Approval Of The Settlement

The response of Class members is an important factor in evaluating the fairness, reasonableness, and adequacy of the Settlement. *See Greenspun*, 492 F.2d at 380 ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement]."); *In re: Fleet/Norstar*, 935 F. Supp. at 107 ("a small number of objectors should not interfere with the approval of an otherwise fair and reasonable settlement."); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections."). Also, "any prospective class member who received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 824 (D. Mass. 1987).

Here, no one has objected to the Settlement. Over 17,000 copies of the Notice were mailed to potential Class members and a Summary Notice was published months ago in *The Wall Street Journal*. The Notice advised members of the Class of their rights to object to the Settlement. The deadline for mailing objections to the Settlement passed on September 11, 2007, and not a single objection has been received. The Notice also advised Class members of their right to exclude themselves from the Class by submitting a written request to the Claims Administrator postmarked no later than September 11, 2007. To date, not a single request for exclusion has been submitted. Thus, the overwhelmingly favorable response by the Class is powerful evidence that the Settlement is fair, reasonable, and adequate, particularly given that the Class includes sophisticated institutional investors.

### 3.    The Stage Of The Proceedings Favors The Settlement

Courts should also consider the stage of the proceedings and discovery in evaluating a proposed settlement.  The purpose of considering the stage of the proceedings is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal.  *See In re: Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).  Here, although discovery was not yet completed, Plaintiffs' Counsel were clearly able to make an informed judgment regarding the proposed Settlement.  Plaintiffs' Counsel had undertaken an extensive investigation of the underlying facts, had obtained substantial discovery from Defendants concerning Biopure, including documents produced to and depositions taken by the SEC, and had consulted extensively with experts in the biotechnology field and on the issue of damages and loss causation.  Plaintiffs' investigation allowed them to assess carefully the risks they would face in continuing to litigate the case through summary judgment and trial.  In short, Plaintiffs' Counsel's decision to enter into this Settlement was made with the benefit of a clear picture of the facts and circumstances underlying the claims, the strengths and weaknesses of those claims, and the substantial risks, expense, and time unavoidable in prosecuting the action through remaining discovery, summary judgment, trial, post-trial motions, and likely appeals.

### 4.    The Risks Concerning Plaintiffs' Likelihood Of Success On The Merits, Of Proving Damages, and Of Maintaining The Class Action Through Trial Favor The Settlement

Recognizing the uncertainty of litigation, courts have held that to justify a proposed settlement, a plaintiff must establish only that, all things considered, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end."  *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960).

Plaintiffs faced numerous significant risks to proving liability and establishing damages if they had proceeded with the litigation.  Here, although Plaintiffs were confident that a class would be certified, the Court had not made a ruling on class certification, as well as on certain motions to compel discovery and for protective orders, and full blown discovery had not yet commenced due to the PSLRA discovery stay.  In addition to facing an inevitable motion for summary judgment, there would have been a battle of experts as to whether the defendants had made any misleading statements at all; whether any of these misleading statements had artificially inflated Biopure common shares during the Class Period; and whether these misleading statements had, in fact, caused any damages to Plaintiffs and members of the Class. To succeed at trial on the claims under Section 10(b) of the Securities Exchange Act of 1934, Plaintiffs would have had to establish by clear and convincing evidence, *inter alia*, that Defendants were responsible for omissions or misstatements regarding the status of the Food and Drug Administration's approval process regarding Biopure's Hemopure product, that such misstatements and omissions were material, that they caused damage to the Class, and that Defendants acted with the requisite state of mind or *scienter* (actual knowledge or reckless disregard for the truth).[11]  While Plaintiffs' Counsel believe that Plaintiffs have a strong case, they recognize that their burden is a heavy one and that, as discussed at length in the Joint Declaration, there are substantial risks and uncertainties involved in continuing to litigate the claims raised in this Action.  If a fact finder found that Plaintiffs were unable to meet such burdens, then the Class could have received nothing.

---

[11]  Plaintiffs would have had to establish either Defendants' intentional misconduct or recklessness, not merely negligence or mismanagement.  *See, e.g., Greebel v. FTP Software, Inc.,* 194 F.3d 185, 199 (1st Cir. 1999) (discussing the high standard for recklessness, which, in the securities context, "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence") (quotations omitted).  There is no assurance that Plaintiffs would have succeeded in establishing those required elements of *scienter* as to each Defendant at trial. Defendants denied, and continue to deny, Plaintiffs' allegations of liability, deny they committed any violation of the securities laws, and deny Plaintiffs or the Class were damaged.

In sum, successful prosecution of this case through summary judgment, trial, and appeals was attendant with substantial risk making a positive outcome for the Class anything but a foregone conclusion.  Plaintiffs faced a heavy burden of proof, and there was a substantial risk that either Plaintiffs would recover considerably less than their full damages or that Defendants would prevail at trial or on appeal.

> **5.**       **The Range of Possible Recovery, The Ability of Defendants to Withstand a Greater Judgment, And The Reasonableness Of The Settlement Fund Favor The Settlement**

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement . . . ."  *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972); *Warner,* 618 F. Supp. at 745.  Courts routinely approve proposed settlements even though the benefits amount to significantly less than a full recovery.[12]  "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell,* 495 F.2d at 455.  *Accord Weinberger*, 698 F.2d at 65 (Second Circuit upheld settlement which amounted to "only a negligible percentage of the losses suffered by the class").

Here, in light of all the attendant risks and uncertainties, the settlement represents an excellent recovery.  Plaintiffs faced a multitude of significant challenges in continuing to prosecute this case through summary judgment, trial, and appeals.  Plaintiffs submit that the $10,000,000 cash Settlement, plus interest, is a significant portion of even the maximum recovery that Plaintiffs could realistically hope to obtain at trial, and is thus fair, reasonable, and adequate.  This is particularly true insofar as the $10,000,000 figure represents a substantial

---

[12] *See Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1391, 1417 (D. Ariz. 1989), *aff'd, Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992).

majority of Biopure's remaining insurance coverage and Biopure itself is an unprofitable company that continuously must raise money to fund ongoing operations.

### 6. The Settlement Is the Result of Arm's-Length Negotiations By Experienced Counsel

The Settlement is the product of arm's-length negotiations by highly experienced counsel. In lieu of a more extended inquiry into the claims asserted and result achieved by plaintiffs, courts considering whether to approve settlements have examined the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Courts have focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary to effective representation of the class's interests." *Id. See also In re: Fleet/Norstar,* 935 F. Supp. at 106 (considering fact that settlement was reached through "arm's-length negotiations" in finding that settlement was fair, reasonable and adequate); *City P'ship Co.*, 100 F.3d at 1043 (noting that, in addition to other factors, "there is a presumption in favor of the settlement, . . . [when] the parties have bargained at arms-length") (citations omitted); *M. Berenson*, 671 F. Supp. at 822 (same).

The Settlement before the Court was made at arm's-length and was reached only after numerous discussions with the Defendants and two separate face-to-face mediation sessions with Defendants and their insurance carriers on September 20, 2005 and October 11, 2006. The settlement discussions took place over several months. After extensive negotiations between the parties, and with class certification and various class discovery motions still pending before this Court, a settlement of $10,000,000 plus interest was reached to resolve the action. Even after the basics of the Settlement had been agreed upon, additional months were required to iron out the details and enter into the Agreement and Stipulation of Settlement. Numerous drafts of the Stipulation of Settlement and accompanying exhibits circulated among the parties over many

18

months until an agreed-to form of the Stipulation and exhibits were ultimately filed with the Court.

In assessing the fairness of a proposed settlement, courts have given weight to the views of experienced counsel. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975). Here, Plaintiffs' Counsel have decades of experience litigating securities fraud class actions and have negotiated numerous other class action settlements approved by courts throughout the country. Plaintiffs' Counsel have conducted a substantial investigation, taken critical discovery, and consulted with experts on key issues. They urge approval of this Settlement which they believe is fair, reasonable, adequate, properly balancing of the risks of continued lengthy litigation versus potential benefits, and represents the best overall resolution for members of the Class.

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284-85. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re: Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.3d 402 (8th Cir. 1994); *In re: Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

Plaintiffs respectfully submit that the Plan of Allocation of the Net Settlement Fund also should be approved as fair and equitable, as it provides a fair and practical method to distribute

19

the Net Settlement Fund among Class members.  The Plan, which is described in the Joint Declaration, provides that Class members who submit acceptable Proof of Claim forms, postmarked on or before October 31, 2007, evidencing a loss in their transactions in Biopure common stock during the Class Period may be eligible for a recovery.  Authorized Claimants will essentially share the Net Settlement Fund, after payment of taxes, costs, and approved fees, pro rata in proportion to their "Recognized Loss."  The Plan of Allocation is designed to promote the ease of claims administration and thereby reduce costs to the Class, and was fully described in the Notice.  Notably, no Class member has objected to the Plan of Allocation.

## VI.    CONCLUSION

For all the foregoing reasons and those set forth in the Joint Declaration, Plaintiffs respectfully request that the Court issue final approval of the proposed Settlement.

DATED: September 17, 2007

/s/ Edward F. Haber
Edward F. Haber, Esq. (BBO# 215620)
Matthew L. Tuccillo, Esq. (BBO# 643336)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: 617-439-3939

Jules Brody, Esq.
Howard T. Longman, Esq.
Melissa Emert, Esq.
STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230

*Plaintiffs' Co-Lead Counsel*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 17th day of September, 2007.

**/s/ Edward F. Haber**
Edward F. Haber

**TAB 4**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | Civ. No. 03-12628-NG |

## ORDER AND FINAL JUDGMENT

**WHEREAS**, the parties to the above-described action (the "Action") entered into a Stipulation And Agreement of Settlement ("Settlement Agreement") dated as of May 17, 2007 (the "Settlement"); and

**WHEREAS**, on May 23, 2007 the Court entered an Order of Preliminary Approval which, *inter alia*: (i) preliminarily approved the Settlement; (ii) confirmed that the Action has been certified as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for purposes of settlement; (iii) approved the forms of notice of the Settlement to the Class Members; (iv) directed that appropriate notice of the Settlement be given to the Class Members; and (v) set a hearing date for final approval of the Settlement and the plan of allocation and a determination of whether the application of Co-Lead Counsel for the Class for an award of attorneys' fees, costs, and expenses, including an award of reasonable costs and expenses to the Class Representatives Plaintiffs ("Fee and Expense Petition"), should be approved; and

**WHEREAS**, Notice of the Settlement and Proof of Claim forms were mailed to Class Members and the Summary Notice of the Settlement was published in the national edition of *The Wall Street Journal*, as attested to in the affidavit of the Claims Administrator filed herein; and

1

ACTIVE/2674294.1

WHEREAS, on September 24, 2007, a hearing was held on whether the Settlement was fair, reasonable, adequate, and in the best interests of the Class ("Settlement Hearing"); and

WHEREAS, based on the foregoing, having heard the statements of counsel for the parties and of such persons as chose to appear at the Settlement Hearing, having considered all of the pleadings and proceedings in the Action, and being otherwise fully advised,

IT IS HEREBY ORDERED that:

1. The provisions of the Settlement Agreement, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including Class Members.

3. The form, content, and method of dissemination of the notice given to the Class, including both published notice and individual notice mailed to all Class Members who could be identified through reasonable effort, was adequate and reasonable, and constituted the best notice practicable under the circumstances.

4. The notice, as given, complied with the requirements of 15 U.S.C. § 78u-4(a)(7) and of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

5. The Plan of Allocation described in the notice mailed to Class Members is fair and reasonable and it is hereby approved.

6. The Class Representatives have fairly and adequately represented the interests of the Class Members in connection with the Settlement.

7. The Class Representatives and the Class Members, and all and each of them, are hereby bound by the terms of the Settlement as set forth in the Settlement Agreement.

8. All parties and counsel appearing herein have complied with their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

9. This action is finally certified as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class consists of all persons or entities who, during the period from April 9, 2003 through December 24, 2003, inclusive (the "Class Period"), purchased or otherwise acquired Biopure Corporation ("Biopure") common stock. Excluded from the Class are Defendants in this action, the former and current officers and directors of Biopure, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

10. Excluded from the class are the persons identified in Exhibit A hereto, who have timely and properly requested exclusion from the Class.

11. The Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class, and it shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

12. Judgment shall be, and hereby is, entered dismissing the Action with prejudice and without taxation of costs in favor of or against any party except as provided in the Settlement Agreement.

13. The Class Representative Plaintiffs and all Class Members are hereby conclusively deemed to have released the Defendants, their past or present subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, Insurers, co-insurers,

3

reinsurers, controlling shareholders, attorneys, divisions, joint ventures, accountants, spouses, personal or legal representatives, assigns, heirs, any members of an Individual Defendant's immediate family and any trust of which any Individual Defendant is the settlor or which is for the benefit of an Individual Defendant's family, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors in interest or assigns of any such party (the "Released Parties"), from any and all Settled Claims. As defined in the Settlement Agreement, "Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, equitable or injunctive relief and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined in the Settlement Agreement): (i) that have been asserted in this Action by the Class Representatives, on their own behalf and on behalf of the Class Members or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the SCAC or relate to the purchase, sale or acquisition of the common stock of Biopure during the Class Period except for claims to enforce the Settlement.

14. The Class Representatives and all Class Members are hereby barred and permanently enjoined from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all Settled Claims which they or any of them had, have or may have against the Released Parties.

15. The Plan of Allocation of the Net Settlement Fund as described in the notice to Class Members is hereby approved, subject to modification by further order of this Court. Any order or proceedings relating to the Plan of Allocation or amendments thereto shall not operate to terminate or cancel the Settlement Agreement or affect the finality of this Order approving the Settlement Agreement.

16. The Court hereby decrees that neither the Settlement Agreement nor this Final Judgment, nor the fact of the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties or Class Representatives; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties or Class Representatives in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) is or may be deemed as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or (d) is or may be construed as or received as evidence as an admission, concession or presumption against Lead Plaintiff or any of the Class Members that any of their claims are without merit, or that any defenses by the Defendants have merit, or that damages recoverable under the SCAC would not have exceeded the Gross Settlement Fund. The Released Parties may file the

Case 1:03-cv-12028-NG   Document 180   Filed 09/24/07   Page 6 of 9

Stipulation and/or the Final Order and Judgment of this Action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Defendants have denied and continue to deny each and every claim alleged against them in the Action and any wrongdoing whatsoever and this Final Judgment shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim of any fault, liability, wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have asserted.

17.     The parties to the Settlement Agreement, their agents, employees, and attorneys, and the Claims Administrator and the Escrow Agent, shall not be liable for anything done or omitted in connection with these proceedings, the entry of this Final Judgment, or the administration of the payments to Authorized Claimants as provided in the Settlement Agreement and this Order, except for their own willful misconduct. No Class Member shall have any claim against the Class Representatives or Co-Lead Counsel based on distributions made substantially in accordance with the Plan of Allocation and orders of the Court. No Class Member shall have any further rights or recourse against the Defendants for any matter related to the Plan of Allocation, distributions thereunder, or the claims process generally.

18.     Class Counsel are awarded attorneys' fees in the amount of $3,371,445.82 and reimbursement of expenses, including experts' fees and expenses, in the amount of $135,642.04 , such amounts to be paid from out of the Gross Settlement Fund. Class Representative Plaintiff Ronald Erickson, who served as Lead Plaintiff in this Action, is awarded

6

the sum of $ 5,850.00 and Class Representative Plaintiff Dr. John G. Esposito, Jr. is awarded the sum of $ 6,000.00 , as reasonable costs and expenses directly relating to the representation of the Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from out of the Gross Settlement Fund.

19. The attorneys' Fees and Expenses awarded herein shall be payable from the Gross Settlement Fund when the Order and Final Judgment become Final as defined in Paragraph 1(k) of the Settlement Agreement.

20. The Court hereby retains and reserves jurisdiction over implementation of this Settlement and any distribution to Authorized Claimants under the terms and conditions of the Settlement Agreement and pursuant to further orders of this Court.

Date: Sept 24 , 2007.

The Honorable Nancy Gertner
United States District Judge

7

**TAB 5**

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| |
|---|
| In re BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION |

Master File No. 1:20-cv-12225-ADB

**ORDER AWARDING ATTORNEYS' FEES AND
LITIGATION EXPENSES**

This matter came on for hearing on April 23, 2024 (the "Settlement Hearing") on Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; it appearing that: (i) the Notice of the Settlement Hearing was mailed to all Settlement Class Members who or which could be identified with reasonable effort substantially in the form approved by the Court and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 14, 2023 (ECF No. 152-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form

and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund.  Plaintiffs' Counsel are also hereby awarded $391,399.98 for payment of their litigation expenses.  These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner in which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a.      The Settlement has created a fund of $38,500,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b.      The fee sought is based on a retainer agreement entered into by Lead Counsel and Lead Plaintiff at the outset of the litigation and the requested fee has been again reviewed and approved as reasonable by Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action, at the conclusion of the Action;

c.      Copies of the Notice were mailed to over 128,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an

2

amount not to exceed 20% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $700,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

d.      Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

e.      The Action raised a number of complex issues;

f.      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g.      Plaintiffs' Counsel devoted over 17,000 hours, with a lodestar value of approximately $8.55 million, to achieve the Settlement; and

h.      The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.      Lead Plaintiff Union Asset Management Holding AG is hereby awarded $74,250 from the Settlement Fund for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.      Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this __23rd__ day of ____April____ 2024.

_____
The Honorable Allison D. Burroughs
United States District Judge

**TAB 6**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RON MILLER, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-12344-GAO |
| Plaintiff, | |
| v. | |
| SONUS NETWORKS, INC., RAYMOND P. DOLAN, MARK T. GREENQUIST, AND MICHAEL SWADE, | |
| Defendants. | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING**
**SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, a consolidated class action is pending in this Court entitled *Miller v. Sonus Networks, Inc. et al.*, Case No.: 1:18-cv-12344-GAO (the "Action");

WHEREAS, (a) Lead Plaintiffs Giuseppe Veleno and Gary Williams (collectively, "Lead Plaintiffs") and Named Plaintiff Ron Miller (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and (b) defendant Sonus Networks, Inc. ("Sonus") (n/k/a/ Ribbon Communications, Inc.), and Raymond P. Dolan, Mark T. Greenquist, and Michael Swade (collectively, "Individual Defendants"; and together with Sonus, "Defendants"; and together with Plaintiffs and Sonus, the "Parties") have determined to settle all claims asserted against Defendants in this Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated July 21, 2023 (the "Stipulation") subject to approval of this Court (the "Settlement");

WHEREAS, Plaintiffs have made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with

the Stipulation, certifying the Settlement Class for purposes of the Settlement only, and allowing notice to Settlement Class Members as more fully described herein;

WHEREAS, the Court has read and considered: (a) Plaintiffs' motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the exhibits attached thereto; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1. **Class Certification for Settlement Purposes** – Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class consisting of all persons and entities that purchased or otherwise acquired publicly traded Sonus Common Stock, and/or purchased or otherwise acquired Sonus Call Options, and/or wrote Sonus Put Options (collectively, "Sonus Securities"), during the period between January 8, 2015 and March 24, 2015, both dates inclusive ("Settlement Class Period"), and who suffered economic losses as a proximate result of the alleged wrongdoing. Excluded from the Settlement Class are: (i) persons who suffered no compensable losses; and (ii)(a) Defendants; (b) present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of Sonus;[1] (c) any person who served as an officer and/or director of Sonus during the Settlement Class Period and their Immediate Family members; (d) any entity in which the Defendants have or had a controlling interest; (e) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or

---

[1] As used herein, the term "affiliates" means persons or entities that directly or indirectly through one or more intermediaries control, are controlled by, or are under common control with one of the Defendants.

member(s) of their Immediate Families; (f) Defendants' liability insurance carriers; and (g) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (f) hereof. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

2. **Class Findings** – Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3. The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Lead Plaintiffs Giuseppe Veleno and Gary Williams and Named Plaintiff Ron Miller are adequate class representatives and certifies them as Class Representatives for the Settlement Class. The Court also appoints Lead Counsel Glancy Prongay & Murray LLP and The Rosen Law Firm P.A. as Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Andrews DeValerio LLP shall serve as Liaison Counsel for the Settlement Class.

4. **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate

3

to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5. **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on April 24, 2024 at 2:00 p.m. in Courtroom 22 of the John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. Notice of the Settlement and the Settlement Hearing shall be given to Settlement Class Members as set forth in paragraph 7 of this Order.

6. The Court may adjourn the Settlement Hearing without further notice to the Settlement Class, and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class.

7. **Retention of Claims Administrator and Manner of Giving Notice** – Lead Counsel is hereby authorized to retain Strategic Claims Services ("SCS") (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below. Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

4

(a)     within ten (10) business days of the date of entry of this Order, Sonus shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel, Plaintiffs, or the Claims Administrator) its security holder lists (consisting of names and addresses) of the purchasers of Sonus Common Stock during the Settlement Class Period;

(b)     not later than November 16, 2023, the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached hereto as Exhibit 4, to be mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records provided by Sonus or in the records which Sonus caused to be provided, or who otherwise may be identified through further reasonable effort;

(c)     contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, respectively, to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded;

(d)     not later than December 1, 2023, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*; and

(e)     not later than April 17, 2024, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

(f)     not later than April 17, 2024, counsel for Sonus shall serve upon Lead Counsel and file with the Court proof by affidavit or declaration that the CAFA Notice was mailed by counsel for Sonus.

8. **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, the Summary Notice, and the Postcard Notice attached hereto as Exhibits 1, 2, 3, and 4, respectively, and (b) finds that the mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form online, and the publication of the Summary Notice in the manner and form set forth in paragraph 7 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, of their right to exclude themselves from the Settlement Class, and of their right to appear at the Settlement Hearing; (iii) constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules. The date and time of the Settlement Hearing shall be included in the Postcard Notice, Notice, and Summary Notice before they are mailed, posted online, and published, respectively.

9. **Nominee Procedures** – Brokers and other nominees that purchased or otherwise acquired Sonus Common Stock and/or Sonus Call Options, and/or wrote Sonus Put Options, during the Settlement Class Period for the benefit of another person or entity shall either (a) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement,

request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement, request a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement, provide a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to the Claims Administrator, in which case the Claims Administrator will promptly send a copy of the Postcard Notice, or email a link to the Notice and Claim Form, to the beneficial owners. Nominees that choose to follow procedures (a) or (b) shall also send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed. Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order up to a maximum of $0.05 per name and address provided to the Claims Administrator; up to $0.05 per Postcard Notice actually mailed, plus postage at the rate used by the Claims Administrator; or up to $0.05 per link to the Notice and Claim Form transmitted by email. Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

10.    **Participation in the Settlement** – Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained

7

therein. Unless the Court orders otherwise, all Claim Forms must be postmarked or submitted online no later than March 15, 2024. Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class. By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

11. Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by Lead Counsel or the Claims Administrator; (c) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

12. Any Settlement Class Member that does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the

Action relating thereto, including, without limitation, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiffs' Claims against each and all of the Defendants and each of the Defendants' Releasees, as more fully described in the Stipulation and Notice. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10 above.

13. **Exclusion From the Settlement Class** – Any member of the Settlement Class who wishes to exclude himself, herself, or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is received no later than April 3, 2024, to: *Miller v. Sonus Networks, Inc. et al.*, c/o Strategic Claims Service, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media PA 19063; and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Miller v. Sonus Networks, Inc. et al.*, Case No. 1:18-cv-12344-GAO"; and (iii) be signed by the person or entity requesting exclusion or an authorized representative. In addition, a request for exclusion must state the number and type of Sonus Securities that the person or entity requesting exclusion purchased, acquired, wrote, and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale/writing. A request for exclusion shall not be effective unless it

9

provides all the required information and is received within the time stated above, or is otherwise accepted by the Court.

14. Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action and shall not receive any payment out of the Net Settlement Fund.

15. Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders, and judgments in the Action, including, but not limited to, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiffs' Claims against any of the Defendants or the Defendants' Releasees, as more fully described in the Stipulation and Notice.

16. **<u>Appearance and Objections at Settlement Hearing</u>** – Any Settlement Class Member who does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her or its own expense, individually or through counsel of his, her, or its own choice, by filing with the Clerk of Court and delivering a notice of appearance to both Lead Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is

10

received no later than April 3, 2024, or as the Court may otherwise direct. Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

17. Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed a written objection with the Court and served copies of such objection on Lead Counsel and Defendants' Counsel at the addresses set forth below such that they are received no later than April 3, 2024.

| **Clerk's Office** | **Lead Counsel** | **Sonus's Counsel** |
|---|---|---|
| United States District Court<br>District of Massachusetts<br>Clerk of the Court<br>United States Courthouse<br>1 Courthouse Way<br>Boston, MA 02210 | **Glancy Prongay & Murray LLP**<br>Garth A. Spencer, Esq.<br>1925 Century Park East<br>Suite 2100<br>Los Angeles, CA 90067 | **Wilmer Cutler Pickering Hale and Dorr LLP**<br>John F. Batter III, Esq.<br>60 State Street<br>Boston, MA 02109 |
| | **The Rosen Law Firm, P.A.**<br>Jacob A. Goldberg, Esq.<br>101 Greenwood Avenue<br>Suite 440<br>Jenkintown, PA 19046 | |

| **Mr. Dolan's Counsel** | **Mr. Greenquist's Counsel** | **Mr. Swade's Counsel** |
|---|---|---|
| **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC** | **Morvillo PLLC** | **Sidley Austin LLP** |
| John F. Sylvia, Esq. | Gregory Morvillo, Esq. | Kathryn L. Alessi |
| One Financial Center | 1740 Broadway, 15th Floor | 60 State Street, 36th Floor |
| Boston, MA 02111 | New York, New York 10019 | Boston, MA 02109 |

18.     Any objections, filings and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number and type of Sonus Securities that the person or entity objecting purchased, acquired, wrote, and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale/writing. Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

19.     Any Settlement Class Member who or which does not make his, her or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of

12

Allocation, or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

20. **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation. Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Plaintiffs, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Plaintiffs' Claims against each and all of the Defendants and the Defendants' Releasees.

21. **Settlement Administration Fees and Expenses** – All reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation without further order of the Court.

22. **Settlement Fund** – The contents of the Settlement Fund held by Huntington National Bank (which the Court approves as the Escrow Agent) shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23. **Taxes** – Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of June 16, 2023, as provided in the Stipulation.

25. **Use of this Order** – Neither this Order, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Defendants or the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants or the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants or the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants or the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiffs or the Plaintiffs' Releasees, as evidence of, or construed as,

14

or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs or the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants or the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs or the Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26. **Supporting Papers** – Lead Counsel shall file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than March 20, 2024; and reply papers, if any, shall be filed and served no later than April 17, 2024.

27. The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

15

SO ORDERED this _____ day of _____, 2023.


_____
The Honorable George A. O'Toole, Jr.
United States District Judge

**Exhibit A-1**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RON MILLER, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-12344-GAO |
| Plaintiff, | |
| v. | |
| SONUS NETWORKS, INC., RAYMOND P. DOLAN, MARK T. GREENQUIST, AND MICHAEL SWADE, | |
| Defendants. | |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by the above-captioned securities class action (the "Action")[1] pending in the United States District Court for the District of Massachusetts (the "Court"), if, during the period between January 8, 2015 and March 24, 2015, both dates inclusive (the "Settlement Class Period"), you purchased or otherwise acquired publicly traded common stock of Sonus Networks, Inc. ("Sonus") (n/k/a Ribbon Communications, Inc.) ("Sonus Common Stock"), and/or purchased or otherwise acquired publicly traded Sonus call options ("Sonus Call Options"), and/or wrote publicly traded Sonus put options ("Sonus Put Options," and, together with Sonus Common Stock and Sonus Call Options, "Sonus Securities"), and suffered economic losses as a proximate result of the alleged wrongdoing.[2]

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 21, 2023 (the "Stipulation"), which is available at www.strategicclaims.net/Sonus/.

[2] Sonus Call Options and Sonus Put Options are collectively referred to herein as "Sonus Options."

**NOTICE OF SETTLEMENT:** Please also be advised that the Court-appointed Lead Plaintiffs Giuseppe Veleno and Gary Williams (collectively, "Lead Plaintiffs") and Named Plaintiff Ron Miller (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined in ¶ 28 below), have reached a proposed settlement of the Action for $4,500,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Sonus, any other Defendants in the Action, or their counsel. All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 97 below).**

1. **Description of the Action and the Settlement Class:** This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that Defendants Sonus,[3] and Raymond P. Dolan, Mark T. Greenquist, and Michael Swade (collectively, "Individual Defendants"; and together with Sonus, "Defendants"; and together with Plaintiffs and Sonus, the "Parties") disseminated materially false and misleading information to the investing public about Sonus's anticipated revenue for the first quarter of 2015 in violation of the federal securities laws, which Defendants deny. A more detailed description of the Action is set forth in paragraphs 11-27 below. The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 28 below.

2. **Statement of the Settlement Class's Recovery:** Subject to Court approval, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $4,500,000 in cash (the "Settlement Amount") to be deposited into an escrow account. The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth on pages __-__ below.

3. **Estimate of Average Amount of Recovery Per Eligible Share:** Based on Plaintiffs' damages expert's estimates, the conduct at issue in the Action affected approximately 6.4 million shares of Sonus Common Stock. Assuming all eligible Settlement Class Members elect to participate in the Settlement, the estimated average recovery would be approximately $0.70 per affected share of Sonus Common Stock, before the deduction of any Court-approved fees,

---

[3] On October 30, 2017, Sonus announced the completion of its merger with GENBAND US LLC, each becoming a wholly owned subsidiary of a parent company named "Sonus Networks, Inc." Sonus began conducting business as "Ribbon Communications, Inc." and its NASDAQ ticker symbol was changed from "SONS" to "RBBN."

expenses, and costs as described herein.[4] Settlement Class Members should note, however, that the foregoing average recovery per security is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they acquired or sold their Sonus Securities, and the total number of valid Claim Forms submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* paragraphs 54-81, below) or such other plan of allocation as may be ordered by the Court.

4. **Average Amount of Damages Per Share:** The Parties do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to prevail in the Action. Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

5. **Attorneys' Fees and Expenses Sought:** Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2018, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel, Glancy Prongay & Murray LLP and The Rosen Law Firm P.A., will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed $33^1/_3\%$ of the Settlement Fund. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $140,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses. Estimates of the average cost per affected share of Sonus Common Stock, if the Court approves Lead Counsel's fee and expense application, is $0.26 per affected share.

6. **Identification of Attorneys' Representatives:** Plaintiffs and the Settlement Class are represented by Garth A. Spencer, Esq., of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, California 90067, (888) 773-9224, settlements@glancylaw.com; and Jacob A. Goldberg, Esq., of The Rosen Law Firm, P.A., 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046, (215) 600-2817, jgoldberg@rosenlegal.com.

7. **Reasons for the Settlement:** Plaintiffs' principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action, and the likely appeals that would follow a trial. This process could be expected to last several years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the

---

[4] Pursuant to the Plan of Allocation, the total recovery for Sonus Call Options and Sonus Put Options is limited to 1% of the Net Settlement Fund.

Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED OR SUBMITTED ONLINE NO LATER THAN _____, 2023.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in ¶ 37 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 38 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2023.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiffs' Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2023.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlement, the Plan of Allocation, or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON _____, 2023 AT \_\_:\_\_ \_\_.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2023.** | Filing a written objection and notice of intention to appear by _____, 2023 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get The Postcard Notice? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What Is This Case About? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

How Do I Know If I Am Affected By The Settlement? Who Is Included
      In The Settlement Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What Are Plaintiffs' Reasons For The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What Might Happen If There Were No Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

How Are Settlement Class Members Affected By The Action And
      The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

How Do I Participate In The Settlement? What Do I Need To Do? . . . . . . . . . . . . . . . . Page [ ]

How Much Will My Payment Be? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What Payment Are The Attorneys For The Settlement Class Seeking?
      How Will The Lawyers Be Paid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What If I Do Not Want To Be A Member Of The Settlement Class?
      How Do I Exclude Myself? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

When And Where Will The Court Decide Whether To Approve The Settlement?
      Do I Have To Come To The Hearing? May I Speak At The Hearing If I
      Don't Like The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

What If I Bought Shares On Someone Else's Behalf? . . . . . . . . . . . . . . . . . . . . . . . . . . Page [ ]

Can I See The Court File? Whom Should I Contact If I Have Questions? . . . . . . . . . . . Page [ ]

## WHY DID I GET THE POSTCARD NOTICE?

8.    The Court directed that the Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired Sonus Common Stock, and/or purchased or otherwise acquired Sonus Call Options, and/or wrote Sonus Put Options, during the Settlement Class Period, and suffered economic losses as a proximate result of the alleged wrongdoing. The Court also directed that this Notice be posted online at www.strategclaims.net/Sonus/ and mailed to you upon request to the Claims Administrator. The Court has directed us to disseminate these notices because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement. Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights. If the Court approves the Settlement and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.    The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so. It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing"). *See* paragraphs 87-88 below for details about the Settlement Hearing, including the date and location of the hearing.

10.   The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing. Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.   Sonus was in the business of selling communications networking products and services to telecommunications providers and to other businesses such as large financial institutions and retailers. Sonus products included session border controllers, diameter signaling controllers, policy/routing servers, media and signaling gateways, and network analytics tools. This case involves Defendants' representations and guidance concerning Sonus's anticipated revenue for the first quarter of 2015. Plaintiffs allege that Defendants provided guidance for $74 million in revenue for the first quarter of 2015, but in fact knew that Sonus would not be able to achieve that forecast.

12.   On November 8, 2018, Named Plaintiff Ron Miller initiated this action by filing a class action complaint in the United States District Court for the District of Massachusetts asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 14 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5.

13.   By Order dated June 21, 2019, the Court appointed Giuseppe Veleno and Gary Williams as Lead Plaintiffs and approved Lead Plaintiffs' selection of The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP as co-Lead Counsel for the class. The Court further approved Lead Plaintiffs' selection of Andrews DeValerio LLP as Liaison Counsel.

14.   On July 19, 2019, Lead Plaintiffs and Named Plaintiff Ron Miller filed and served their Amended Class Action Complaint, asserting claims against all Defendants for violations of the federal securities laws (the "Complaint").

15.   Among other things, the Complaint alleged that Defendants published materially false and misleading statements regarding Sonus's first quarter 2015 revenue guidance. According to the Complaint, the alleged misrepresentations proximately caused Settlement Class Member losses when Sonus revealed that it in fact only expected $47 million to $50 million of first quarter 2015 revenue.

16.   On August 30, 2019, Defendants moved to dismiss the Complaint. Plaintiffs filed their opposition to Defendants' motion on October 4, 2019, and on November 1, 2019, Defendants filed a reply brief. On February 12, 2020 the Court heard oral argument, and took the motion under advisement. On October 20, 2022, the Court denied Defendants' motion to dismiss.

17.   On December 16, 2022, Defendants filed their answers to the Complaint, denying any liability.

18.   On December 16, 2022, the Parties filed their Joint Rule 26(f) Report, after which they commenced discovery.

19. On February 28, 2023, the Court held a scheduling conference with the Parties and set certain case deadlines, including deadlines relating to Plaintiffs' planned motion for class certification.

20. While the Parties believe in the merits of their respective positions, they also recognized the benefits that would accrue if they could reach an agreement to resolve the Action. They began to discuss the possibility of exploring whether a settlement could be reached through a mediation process. The Parties selected David Geronemus, Esq. of JAMS as mediator.

21. On April 5, 2023, the Parties reached an agreement on certain scheduling and discovery matters, to conduct certain discovery prior to their planned mediation, and to defer class certification briefing and certain other discovery until after their planned mediation.

22. On April 7, 2023, the Parties filed a joint stipulation informing the Court that they had scheduled a private mediation for June 13, 2023, and requesting that the Court-ordered deadlines for class certification be continued until after the scheduled mediation. On April 12, 2023, the Court so ordered the Parties' joint stipulation to continue class certification deadlines.

23. In advance of the June 13, 2023 mediation, the Parties served and responded to interrogatories and requests for production of documents. Plaintiffs produced documents to Defendants, and Defendants took the depositions of Plaintiffs Giuseppe Veleno, Gary Williams, and Ron Miller. Defendants produced 11,512 documents spanning 40,607 bates number pages, and certain non-parties produced additional documents pursuant to subpoenas issued by Plaintiffs.

24. On June 13, 2023, the Parties participated in an all day, in-person mediation before the mediator, Mr. Geronemus. In advance of the mediation, the Parties exchanged, and provided to Mr. Geronemus, detailed mediation statements and exhibits, which addressed issues including liability, damages, and class certification. After a full day of mediation on June 13, 2023, the Parties accepted a mediator's proposal to settle the Action in return for a cash payment on behalf of Defendants of $4,500,000.

25. Based upon their investigation, prosecution, and mediation of the case, and their review of documents produced by Defendants, Plaintiffs and Lead Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to Plaintiffs and the other members of the Settlement Class, and in their best interests. Based on the investigation and mediation of the case and Plaintiffs' direct oversight of the prosecution of this matter, and with the advice of counsel, Plaintiffs have agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things, (a) the substantial financial benefit that Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

26. Defendants are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Each of the Defendants denies any wrongdoing, and the Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined in ¶ 38 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted. Similarly, the Stipulation shall in no event be construed or deemed to be

7

evidence of or an admission or concession on the part of Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

27. On_____ __, 2023, the Court preliminarily approved the Settlement, authorized the Postcard Notice to be mailed to potential Settlement Class Members and this Notice to be posted online and mailed to potential Settlement Class Members upon request, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

---

**HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?**

---

28. If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded. The Settlement Class consists of:

> all persons and entities that purchased or otherwise acquired publicly traded Sonus Common Stock, and/or purchased or otherwise acquired publicly traded Sonus Call Options, and/or wrote publicly traded Sonus Put Options, during the period between January 8, 2015 and March 24, 2015, both dates inclusive, and who suffered economic losses as a proximate result of the alleged wrongdoing.

Excluded from the Settlement Class are: (i) persons who suffered no compensable losses; and (i)(a) Defendants; (b) present and former parents, subsidiaries, assigns, successors, predecessors and affiliates of Sonus;[5] (c) any person who served as an officer and/or director of Sonus during the Settlement Class Period and their Immediate Family members; (d) any entity in which the Defendants have or had a controlling interest; (e) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (f) Defendants' liability insurance carriers; and (g) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (f) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. *See* "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself," on page [__] below.

**PLEASE NOTE: RECEIPT OF THE POSTCARD NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

> **If you are a Settlement Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Claim Form that is available online at** www.strategicclaims.net/Sonus/ **or which can be mailed to you upon request to the Claims Administrator, and the required supporting documentation as set forth therein, postmarked or submitted online no later than _____, 2023.**

---

[5] As used herein, the term "affiliates" means persons or entities that directly or indirectly through one or more intermediaries control, are controlled by, or are under common control with one of the Defendants.

## WHAT ARE PLAINTIFFS' REASONS FOR THE SETTLEMENT?

29.   Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages. Plaintiffs and Lead Counsel also recognize that Defendants have numerous avenues of attack that could preclude a recovery as to Defendants' allegedly false and misleading statements. For example, Defendants would likely continue to assert that Plaintiffs' claims are time-barred by the statute of limitations. Defendants would also likely continue to argue that their statements were not knowingly false because they reasonably expected to achieve $74 million in first quarter 2015 revenue, and had no intent to deceive investors. Even if those hurdles to establishing liability were overcome, Defendants would likely assert that the statements at issue did not cause investors' losses, and would likely contest the existence and amount of any damages that could be attributed to the allegedly false statements. To receive any recovery, Plaintiffs would have to prevail at several stages, including class certification and summary judgment. If Plaintiffs' claims made it to trial and Plaintiffs prevailed, appeals would likely follow. Thus, there were significant risks attendant to the continued prosecution of the Action.

30.   In light of these risks, the amount of the Settlement, and the immediacy of recovery to the Settlement Class, Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Plaintiffs and Lead Counsel also believe that the Settlement provides a substantial benefit to the Settlement Class, namely $4,500,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller or no recovery after summary judgment, trial and appeals, possibly years in the future.

31.   Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

32.   If there were no Settlement and Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Plaintiffs nor the other members of the Settlement Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial, or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?

33.   As a Settlement Class Member, you are represented by Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a

9

notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled "When And Where Will The Court Decide Whether To Approve The Settlement?" on page __ below.

34. If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?" on page __ below.

35. If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled "When And Where Will The Court Decide Whether To Approve The Settlement?" below.

36. If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Plaintiffs and each of the other members of the Settlement Class, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claims (as defined in ¶ 37 below) on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees (as defined in ¶ 38 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants or any of the other Defendants' Releasees.

37. "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that Plaintiffs or any other member of the Settlement Class: (i) asserted in the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"); or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or sale of Sonus Securities during the Settlement Class Period. Released Plaintiffs' Claims do not include any claims: (i) relating to the enforcement of the Settlement; or (ii) of any person or entity who or which submits a request for exclusion that is accepted by the Court.

38. "Defendants' Releasees" means (i) each Defendant; (ii) Immediate Family members of the Individual Defendants; (iii) direct or indirect parent entities, subsidiaries, related entities, and affiliates of Sonus; (iv) any trust of which any Individual Defendant is the settler or which is for the benefit of any Individual Defendant and/or his or her Immediate Family members; (v) for any of the individuals or entities listed in parts (i) through (iv), their respective past and present general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors,

10

successors, assigns, heirs, executors, administrators, and any controlling person thereof; and (vi) any entity in which a Defendant has a controlling interest; all in their capacities as such.

39. "Unknown Claims" means any Released Plaintiffs' Claims which any Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

40. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims (as defined in ¶ 41 below) on behalf of Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees (as defined in ¶ 42 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs or any of the Plaintiffs' Releasees.

41. "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants. Released Defendants' Claims shall not include any claims relating to (i) the enforcement of the Settlement; or (ii) any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

42. "Plaintiffs' Releasees" means (i) Plaintiffs, all other Settlement Class members, Lead Counsel, Liaison Counsel, and (ii) each of their respective Immediate Family members, and their respective partners, general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts,

11

auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, all in their capacities as such.

**HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO?**

43.   To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked or submitted online no later than _____, 2023**. A Claim Form is available on the website maintained by the Claims Administrator for the Settlement, www.strategicclaims.net/Sonus/, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-866-274-4004. Please retain all records of your ownership of and transactions in Sonus Securities, as they may be needed to document your Claim. If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

**HOW MUCH WILL MY PAYMENT BE?**

44.   At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

45.   Pursuant to the Settlement, Defendants have agreed to pay or caused to be paid $4,500,000 in cash. The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund." If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state, and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

46.   The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

47.   Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final. Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund, or the plan of allocation.

48.   Approval of the Settlement is independent from approval of a plan of allocation. Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

49.   Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked or submitted online on or before _____, 2023 shall be fully

12

and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given. This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 37 above) against the Defendants and the Defendants' Releasees (as defined in ¶ 38 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendants or the Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

50. Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Sonus Securities held through the ERISA Plan in any Claim Form that they may submit in this Action. They should include ONLY those securities that they purchased, acquired or sold outside of the ERISA Plan. Claims based on any ERISA Plan's purchases, acquisitions or sales of Sonus Securities during the Settlement Class Period may be made by the plan's trustees. To the extent any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

51. The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

52. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

53. Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION

54. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged misstatements and omissions, as opposed to losses caused by market- or industry-wide factors, or company-specific factors unrelated to the alleged fraud. The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formulas described below ("Recognized Loss").

55. A Recognized Loss will be calculated for each share of Sonus Common Stock, and each Sonus Call Option purchased or otherwise acquired during the Settlement Class Period, and each Sonus Put Option sold (written) during the Settlement Class Period. The calculation of Recognized Loss will depend upon several factors, including when the Sonus Securities were purchased or otherwise acquired during the Settlement Class Period, and in what amounts, and whether those securities were sold, and if sold, when they were sold, and for what amounts. The Recognized Loss is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor to estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. The Claims

13

Administrator will use its best efforts to administer and distribute the Net Settlement Fund equitably to the extent that it is economically feasible.

56.   The Plan of Allocation was created with the assistance of a consulting damages expert and reflects the assumption that the prices of Sonus Common Stock were artificially inflated throughout the Settlement Class Period. The estimated alleged artificial inflation in the prices of Sonus Common Stock during the Settlement Class Period is reflected in Table 1, below. The computation of the estimated alleged artificial inflation in the prices of Sonus Common Stock during the Settlement Class Period is based on certain misrepresentations alleged by Plaintiffs and the price change in the securities, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Plaintiffs.

57.   The U.S. securities laws allow investors to seek to recover losses caused by disclosures that correct the defendants' previous misleading statements or omissions. In this Action, Plaintiffs allege that corrective disclosures removed the artificial inflation in the prices of Sonus Common Stock on the following dates: March 20, 2015; March 23, 2015; and March 24, 2015 (the "Corrective Disclosure Dates"). Defendants deny that they made any misleading statements or omissions and therefore also deny that corrective disclosures were made. In order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, with respect to Sonus Common Stock and Sonus Call Options, the stock or call options must have been purchased or acquired during the Settlement Class Period and held through at least one of the Corrective Disclosure Dates; and, with respect to Sonus Put Options, those options must have been sold (written) during the Settlement Class Period and not closed prior to at least one of the Corrective Disclosure Dates:

| Table 1 | | |
|---|---|---|
| Artificial Inflation in Sonus Common Stock | | |
| From | To | Per-Share Price Inflation |
| Thursday, January 8, 2015 | Thursday, March 19, 2015 | $6.61 |
| Friday, March 20, 2015 | Friday, March 20, 2015 | $5.47 |
| Monday, March 23, 2015 | Monday, March 23, 2015 | $4.24 |
| Tuesday, March 24, 2015 | Thereafter | $0.00 |

58.   The per-share Recognized Loss for Sonus Common Stock shall be the Recognized Loss amount as described below in "Sonus Common Stock Recognized Loss Calculations." The per-option Recognized Loss for Sonus Call Options and Sonus Put Options shall be the Recognized Loss amount as described below in "Sonus Call and Put Option Recognized Loss Calculations."

59.   The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss for Sonus Common Stock. The limitations on the calculation of the Recognized Loss imposed by the PSLRA are applied such that losses on Sonus Common Stock purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-

14

Day Lookback Period"[6]) cannot exceed the difference between the purchase price paid for such securities and its average price during the 90-Day Lookback Period. The Recognized Loss on Sonus Common Stock purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such securities and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

60.     In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions. If a Recognized Loss amount is calculated to be a negative number, that Recognized Loss shall be set to zero. Any transactions in Sonus Securities executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

61.     With respect to Sonus Securities, a Recognized Loss will be calculated as set forth below for each purchase or acquisition of Sonus Common Stock and Call Option contracts, and for each writing of Sonus Put Option contracts during the Settlement Class Period, that is listed in the Claim Form and for which adequate documentation is provided.

## SONUS COMMON STOCK RECOGNIZED LOSS CALCULATIONS

62.     For each share of Sonus Common Stock purchased or otherwise acquired during the Settlement Class Period, the Recognized Loss per share shall be calculated as follows:

I.   For each share purchased during the period January 8, 2015 through March 23, 2015, inclusive,

    a.   that was sold prior to March 20, 2015, the Recognized Loss is $0.00.

    b.   that was sold on March 20, 2015 or March 23, 2015, inclusive, the Recognized Loss is *the lesser of*:

        i.    the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1; or

        ii.   the purchase price *minus* the sale price.

    c.   that was sold on March 24, 2015, the Recognized Loss is *the lesser of*:

        i.    the amount of per-share price inflation on the date of purchase as appears in Table 1 above; or

        ii.   the purchase price *minus* the sale price.

    d.   that was sold during the period March 25, 2015 through June 22, 2015, inclusive (*i.e.*, sold during the 90-Day Lookback Period), the Recognized Loss is *the least of*:

        i.    the amount of per-share price inflation on the date of purchase as appears in Table 1; or

---

[6] The Settlement Class Period ends on March 24, 2015. The 90-Day Lookback Period is March 25, 2015 through June 22, 2015, inclusive.

        ii.     the purchase price *minus* the sale price; or

        iii.    the purchase price *minus* the "90-Day Lookback Value" on the date of sale as provided in Table 2.

   e.  that was still held as of the close of trading on June 22, 2015, the Recognized Loss is *the lesser of*:

        i.     the amount of per-share price inflation on the date of purchase as appears in Table 1; or

        ii.    the purchase price *minus* the average closing price for Sonus Common Stock during the 90-Day Lookback Period, which is $7.87.

II.    For each share purchased on or after March 24, 2015, the Recognized Loss is $0.00.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| **Sale/ Disposition Date** | **90-Day Lookback Value** | **Sale/ Disposition Date** | **90-Day Lookback Value** | **Sale/ Disposition Date** | **90-Day Lookback Value** |
| 3/25/2015 | $8.38 | 4/24/2015 | $7.89 | 5/26/2015 | $7.87 |
| 3/26/2015 | $8.23 | 4/27/2015 | $7.90 | 5/27/2015 | $7.87 |
| 3/27/2015 | $8.15 | 4/28/2015 | $7.90 | 5/28/2015 | $7.87 |
| 3/30/2015 | $8.11 | 4/29/2015 | $7.91 | 5/29/2015 | $7.87 |
| 3/31/2015 | $8.06 | 4/30/2015 | $7.91 | 6/1/2015 | $7.87 |
| 4/1/2015 | $8.05 | 5/1/2015 | $7.91 | 6/2/2015 | $7.86 |
| 4/2/2015 | $8.03 | 5/4/2015 | $7.91 | 6/3/2015 | $7.86 |
| 4/6/2015 | $8.01 | 5/5/2015 | $7.91 | 6/4/2015 | $7.86 |
| 4/7/2015 | $7.99 | 5/6/2015 | $7.90 | 6/5/2015 | $7.87 |
| 4/8/2015 | $7.96 | 5/7/2015 | $7.90 | 6/8/2015 | $7.87 |
| 4/9/2015 | $7.93 | 5/8/2015 | $7.89 | 6/9/2015 | $7.87 |
| 4/10/2015 | $7.90 | 5/11/2015 | $7.89 | 6/10/2015 | $7.87 |
| 4/13/2015 | $7.88 | 5/12/2015 | $7.89 | 6/11/2015 | $7.86 |
| 4/14/2015 | $7.86 | 5/13/2015 | $7.89 | 6/12/2015 | $7.86 |
| 4/15/2015 | $7.85 | 5/14/2015 | $7.89 | 6/15/2015 | $7.86 |
| 4/16/2015 | $7.86 | 5/15/2015 | $7.89 | 6/16/2015 | $7.86 |
| 4/17/2015 | $7.85 | 5/18/2015 | $7.89 | 6/17/2015 | $7.86 |
| 4/20/2015 | $7.87 | 5/19/2015 | $7.89 | 6/18/2015 | $7.86 |
| 4/21/2015 | $7.86 | 5/20/2015 | $7.88 | 6/19/2015 | $7.87 |
| 4/22/2015 | $7.86 | 5/21/2015 | $7.88 | 6/22/2015 | $7.87 |
| 4/23/2015 | $7.87 | 5/22/2015 | $7.88 | N/A | N/A |

### SONUS CALL AND PUT OPTION RECOGNIZED LOSS CALCULATIONS

63. For each Sonus Call Option purchased or otherwise acquired during the Settlement Class Period, the Recognized Loss per option shall be calculated as follows:

I. For each Sonus Call Option not held at the opening of trading on at least one of the Corrective Disclosure Dates as defined above, the Recognized Loss is $0.00.

II. For each Sonus Call Option purchased during the period January 8, 2015 through March 23, 2015, inclusive, and held at the opening of trading on one or more of the Corrective Disclosure Dates as defined above,

   a. that was subsequently sold prior to the close of trading on March 24, 2015, the Recognized Loss is the purchase price *minus* the sale price.

   b. that was subsequently exercised prior to the close of trading on March 24, 2015, the Recognized Loss is the purchase price *minus* the intrinsic value of the Sonus Call Option on the date of exercise, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) the closing price of Sonus Common Stock on the date of exercise *minus* the strike price of the option.

   c. that expired unexercised prior to the close of trading on March 24, 2015, the Recognized Loss is equal to the purchase price.

   d. that was still held as of the close of trading March 24, 2015, the Recognized Loss is the purchase price *minus* the intrinsic value of the Sonus Call Option as of the close of trading on March 24, 2015, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) $8.70[7] *minus* the strike price of the option.

III. For each Sonus Call Option purchased on March 24, 2015 or after, the Recognized Loss is $0.00.

No Recognized Loss shall be calculated based upon the purchase or acquisition of any Sonus Call Option that had been previously sold or written.

64. For each Sonus Put Option written during the Settlement Class Period, the Recognized Loss per option shall be calculated as follows:

I. For each Sonus Put Option not open (*i.e.*, not outstanding) at the opening of trading on at least one of the Corrective Disclosure Dates as defined above, the Recognized Loss is $0.00.

II. For each Sonus Put Option sold during the period January 8, 2015 through March 23, 2015, inclusive, and still outstanding at the opening of trading on one or more of the Corrective Disclosure Dates as defined above,

   a. that was subsequently purchased prior to the close of trading on March 24, 2015, the Recognized Loss is the purchase price *minus* the sale price.

   b. that was subsequently exercised (*i.e.*, assigned) prior to the close of trading on March 24, 2015, the Recognized Loss is the intrinsic value of the Sonus Put Option on the date of exercise *minus* the sale price, where the intrinsic value

---

[7] $8.70 is the closing price of Sonus Common Stock on March 24, 2015.

17

shall be *the greater of*: (i) \$0.00 or (ii) the strike price of the option *minus* the closing price of Sonus Common Stock on the date of exercise.

    c.   that expired unexercised prior to the close of trading on March 24, 2015, the Recognized Loss \$0.00.

    d.   that was still outstanding as of the close of trading March 24, 2015, the Recognized Loss is the intrinsic value of the Sonus Put Option as of the close of trading on March 24, 2015 *minus* the sale price, where the intrinsic value shall be *the greater of*: (i) \$0.00 or (ii) the strike price of the option *minus* \$8.70.

III.    For each Sonus Put Option sold on March 24, 2015 or later, the Recognized Loss is \$0.00.

No Recognized Loss shall be calculated based upon the sale or writing of any Sonus Put Option that had been previously purchased or acquired.

65.    **Maximum Recovery for Options:** Settlement proceeds available for Sonus Call Options purchased during the Settlement Class Period and Sonus Put Options written during the Settlement Class Period shall be limited to a total amount equal to 1% of the Net Settlement Fund.[8]

## ADDITIONAL PROVISIONS

66.    **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" under the Plan of Allocation will be the sum of his, her, or its Recognized Loss amounts as calculated above with respect to all Sonus Securities.

67.    **FIFO Matching:** If a Settlement Class Member made more than one purchase/acquisition or sale of any Sonus Security during the Settlement Class Period, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis. With respect to Sonus Common Stock and Call Options, Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period. For Sonus Put Options, Settlement Class Period purchases will be matched first to close out positions open at the beginning of the Settlement Class Period, and then against Sonus Put Options sold (written) during the Settlement Class Period in chronological order.

68.    **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Sonus Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Sonus Securities during the Settlement Class Period shall not be deemed a purchase, acquisition, or sale of these Sonus Securities for the calculation of a Claimant's Recognized Loss, nor shall such receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Sonus

---

[8] Sonus Call and Put Option trading accounted for less than 1% of total dollar trading volume for Sonus Securities during the Settlement Class Period. Consequently, claims for Sonus Call and Put Option transactions are allotted 1% of the Settlement pursuant to the Plan of Allocation.

Securities unless (i) the donor or decedent purchased or otherwise acquired such Sonus Securities during the Settlement Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Sonus Securities.

69. **Short Sales:** With respect to Sonus Common Stock, the date of covering a "short sale" is deemed to be the date of purchase or acquisition of the stock. The date of a "short sale" is deemed to be the date of sale of the Sonus Common Stock. In accordance with the Plan of Allocation, however, the Recognized Loss on "short sales" is zero.

70. In the event that a Claimant has an opening short position in Sonus Common Stock, the earliest purchases or acquisitions of Sonus Common Stock during the Settlement Class Period shall be matched against such opening short position, and shall not be entitled to a recovery, until that short position is fully covered.

71. If a Settlement Class Member has "written" Sonus Call Options, thereby having a short position in the Call Options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the Call Option. The date on which the Sonus Call Option was written is deemed to be the date of sale of the Call Option. In accordance with the Plan of Allocation, however, the Recognized Loss on "written" Sonus Call Options is zero. In the event that a Claimant has an opening written position in Sonus Call Options, the earliest purchases or acquisitions of like Call Options during the Settlement Class Period shall be matched against such opening written position, and shall not be entitled to a recovery, until that written position is fully covered.

72. If a Settlement Class Member has purchased or acquired Sonus Put Options, thereby having a long position in the Put Options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the Put Option. The date on which the Sonus Put Option was sold, exercised, or expired is deemed to be the date of sale of the Put Option. In accordance with the Plan of Allocation, however, the Recognized Loss on purchased/acquired Put Options is zero. In the event that a Claimant has an opening long position in Sonus Put Options, the earliest sales or dispositions of like Put Options during the Settlement Class Period shall be matched against such opening position, and not be entitled to a recovery, until that long position is fully covered.

73. **Common Stock Purchased/Sold Through the Exercise of Options:** With respect to Sonus Common Stock purchased or sold through the exercise of an option, the purchase/sale date of the stock is the exercise date of the option and the purchase/sale price of the stock is the closing price of Sonus Common Stock on the exercise date. Any Recognized Loss arising from purchases of Sonus Common Stock acquired during the Settlement Class Period through the exercise of an option on Sonus Common Stock shall be computed as provided for other purchases of Sonus Common Stock in the Plan of Allocation.

74. **Market Gains and Losses:** With respect to all Sonus Common Stock and Sonus Call Options purchased or acquired or Sonus Put Options sold (written) during the Settlement Class Period, the Claims Administrator will determine if the Claimant had a Market Gain or a Market Loss with respect to his, her or its overall transactions in those shares and options during the Settlement Class Period. For purposes of making this calculation, with respect to Sonus Common

19

Stock and Call Options, the Claims Administrator shall determine the difference between (i) the Claimant's Total Purchase Amount[9] and (ii) the sum of the Claimant's Sales Proceeds[10] and the Claimant's Holding Value.[11] For Sonus Common Stock and Call Options, if the Claimant's Total Purchase Amount *minus* the sum of the Claimant's Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain. With respect to Sonus Put Options, the Claims Administrator shall determine the difference between (i) the sum of the Claimant's Total Purchase Amount[12] and the Claimant's Holding Value;[13] and (ii) the Claimant's Sale Proceeds.[14] For Sonus Put Options, if the sum of the Claimant's Total Purchase Amount and the Claimant's Holding Value *minus* the Claimant's Sales Proceeds is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

75.     If a Claimant had a Market Gain with respect to his, her, or its overall transactions in Sonus Securities during the Settlement Class Period, the value of the Claimant's Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlement. If a Claimant

---

[9] For Sonus Common Stock and Call Options, the "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes, and commissions) for all such Sonus Securities purchased or acquired during the Settlement Class Period.

[10] For Sonus Common Stock and Call Options, the Claims Administrator shall match any sales of such Sonus Securities during the Settlement Class Period first against the Claimant's opening position in the like Sonus Securities (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received for sales of the remaining like Sonus Securities sold during the Settlement Class Period is the "Sales Proceeds."

[11] For each share of Sonus Common Stock purchased or acquired during the Settlement Class Period that was still held as of the close of trading on March 24, 2015, the Claims Administrator shall ascribe a "Holding Value" of $8.70. For each Sonus Call Option purchased or acquired during the Settlement Class Period that was still held as of the close of trading on March 24, 2015, the Claims Administrator shall ascribe a "Holding Value" for that option which shall be *the greater of*: (i) $0.00 or (ii) $8.70 *minus* the strike price of the option.

[12] For Sonus Put Options, the Claims Administrator shall match any purchases during the Settlement Class Period to close out positions in Sonus Put Options first against the Claimant's opening position in Sonus Put Options (the total amount paid with respect to those purchases will not be considered for purposes of calculating market gains or losses). The total amount paid for the remaining purchases during the Settlement Class Period to close out positions in Put Options is the "Total Purchase Amount."

[13] For each Sonus Put Option sold (written) during the Settlement Class Period that was still outstanding as of the close of trading on March 24, 2015, the Claims Administrator shall ascribe a "Holding Value" for that option which shall be *the greater of*: (i) $0.00 or (ii) the strike price of the option *minus* $8.70.

[14] For Sonus Put Options, the total amount received for put options sold (written) during the Settlement Class Period is the "Sales Proceeds."

suffered an overall Market Loss with respect to his, her, or its overall transactions in Sonus Securities during the Settlement Class Period but that Market Loss was less than the Claimant's Recognized Claim calculated above, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss.

76. **__Determination of Distribution Amount:__** If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

77. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

78. The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation (*i.e.*, the Recognized Claim will be deemed to be zero) and no distribution will be made to that Authorized Claimant. Any prorated amounts of less than $10.00 will be included in the pool distributed to those whose prorated payments are $10.00 or greater.

79. After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

80. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants, and there shall be no appeal to any court, including the U.S. Court of Appeals for the First Circuit. If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be deemed to have knowingly and intentionally waived the right to appeal any decision of the Court with respect to the administration, processing, payment, and determination of Claims and the determination of all controversies relating thereto. No person shall have any claim against

Plaintiffs, Lead Counsel, Plaintiffs' damages expert, Defendants, Defendants' Counsel, or any of the other Plaintiffs' Releasees or Defendants' Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Plaintiffs, Defendants, and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

81.    The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class. No Defendant, nor any other Defendants' Releasees, shall have any involvement with or liability, obligation, or responsibility whatsoever for the application of the Court-approved plan of allocation. Any Orders regarding any modification of the Plan of Allocation will be posted on the settlement website, www.strategicclaims.net/Sonus/.

| **WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?** |
|---|

82.    Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their expenses. Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $140,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class in an aggregate amount not to exceed $30,000. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

| **WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?** |
|---|

83.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *Miller v. Sonus Networks, Inc. et al.*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063. The exclusion request must be ***received*** no later than _____, 2023. You will not be able to exclude yourself from the Settlement Class after that date. Each Request for Exclusion must: (a) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Miller v. Sonus Networks, Inc. et al.*, Case No. 1:18-cv-12344-GAO"; and (c)

22

be signed by the person or entity requesting exclusion or an authorized representative. In addition, a request for exclusion must state the number and type of Sonus Securities that the person or entity requesting exclusion purchased, acquired, wrote, and sold during the Settlement Class Period (*i.e.*, from January 8, 2015 and March 24, 2015, both dates inclusive), as well as the dates and prices of each such purchase/acquisition and sale/writing. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

84.  If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendants' Releasees.

85.  If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

86.  Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiffs and Defendants.

| **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?** |
| --- |

87.  **Settlement Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing**.

88.  The Settlement Hearing will be held on _____, 2023 at __:__ _.m., before the Honorable George A. O'Toole, Jr. at the United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, Courtroom 22, 1 Courthouse Way, Boston, Massachusetts 02210. The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

89.  Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of Massachusetts at the address set forth below on or before _____, 2023. You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before** _____**, 2023**.

| **Clerk's Office** | **Lead Counsel** | **Sonus's Counsel** |
|---|---|---|
| United States District Court District of Massachusetts Clerk of the Court United States Courthouse 1 Courthouse Way Boston, MA 02210 | **Glancy Prongay & Murray LLP** Garth A. Spencer, Esq. 1925 Century Park East Suite 2100 Los Angeles, CA 90067 **The Rosen Law Firm, P.A.** Jacob A. Goldberg, Esq. 101 Greenwood Avenue Suite 440 Jenkintown, PA 19046 | **Wilmer Cutler Pickering Hale and Dorr LLP** John F. Batter III, Esq. 60 State Street Boston, MA 02109 |
| **Mr. Dolan's Counsel** | **Mr. Greenquist's Counsel** | **Mr. Swade's Counsel** |
| **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC** John F. Sylvia, Esq. One Financial Center Boston, MA 02111 | **Morvillo PLLC** Gregory Morvillo, Esq. 1740 Broadway, 15th Floor New York, New York 10019 | **Sidley Austin LLP** Kathryn L. Alessi 60 State Street, 36th Floor Boston, MA 02109 |

90.    Any objection (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number and type of Sonus Securities that the person or entity objecting purchased, acquired, wrote, and sold during the Settlement Class Period (*i.e.*, from January 8, 2015 and March 24, 2015, both dates inclusive), as well as the dates and prices of each such purchase/acquisition and sale/writing. You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

91.    You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

92.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before _____, 2023**. Persons who intend to object and desire to present evidence at

24

the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

93.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 89 above so that the notice is *received* **on or _____, 2023**.

94.   The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Settlement Hearing, you should confirm the date, time and location on the settlement website www.strategicclaims.net/Sonus/, or with Lead Counsel.

95.   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

96.   If you purchased or otherwise acquired Sonus Common Stock, and/or Sonus Call Options, and/or wrote Sonus Put Options, from January 8, 2015 and March 24, 2015, both dates inclusive, for the beneficial interest of persons or organizations other than yourself, you must either: (a) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement, request a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement, provide a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to *Miller v. Sonus Networks, Inc. et al.*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205. Media, PA 19063. If you choose option (c), the Claims Administrator will send a copy of the Postcard Notice, or email a link to the Notice and Claim Form, to the beneficial owners.  Nominees that choose to follow procedures (a) or (b) shall also send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed.  Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order up to a maximum of $0.05 per name and address provided to the Claims Administrator; up to $0.05 per Postcard Notice actually mailed, plus postage at the rate used by the Claims Administrator; or up to $0.05 per link to the Notice and Claim Form transmitted by email. Any dispute concerning the reasonableness of reimbursement costs shall be resolved by the Court. Copies of this Notice and the Claim Form may be obtained from the website maintained by the Claims Administrator,

www.strategicclaims.net/Sonus/, or by calling the Claims Administrator toll-free at 1-866-274-4004.

| CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
| --- |

97. This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210. Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.strategicclaims.net/Sonus/.

All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Lead Counsel at:

*Miller v. Sonus Networks, Inc. Securities Litigation.*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
866-274-4004
www.strategicclaims.net/Sonus/

and/or

Garth A. Spencer, Esq.
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
(888) 773-9224
settlements@glancylaw.com

Jacob A. Goldberg, Esq.
THE ROSEN LAW FIRM, P.A.
101 Greenwood Avenue
Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
jgoldberg@rosenlegal.com

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: _____, 2023

By Order of the Court
United States District Court
District of Massachusetts

**Exhibit A-2**

*Miller v. Sonus Networks, Inc. Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.:  866-274-4004
Fax:  610-565-7985
Email: info@strategicclaims.com
**Settlement Website: www.strategicclaims.net/sonus/**

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and mail it by first-class mail to the above address, or submit it through the settlement website listed above, **so that it is postmarked or submitted no later than                  , 2023.**

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | _ |
| **PART II – GENERAL INSTRUCTIONS** | _ |
| **PART III – SCHEDULE OF TRANSACTIONS IN SONUS COMMON STOCK** | _ |
| **PART IV – SCHEDULE OF TRANSACTIONS IN SONUS CALL OPTIONS** | _ |
| **PART V – SCHEDULE OF TRANSACTIONS IN SONUS PUT OPTIONS** | _ |
| **PART VI – RELEASE OF CLAIMS AND SIGNATURE** | _ |

1

**PART I – CLAIMANT INFORMATION**

(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's Name

Co-Beneficial Owner's Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit or box number)

City                                                    State            Zip Code

Foreign Country (only if not USA)

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (home)                    Telephone Number (work)

Email address (Email address is not required, but if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

Account Number (account(s) through which the securities were traded)[1]:

Claimant Account Type (check appropriate box):
- ☐ Individual (includes joint owner accounts)      ☐ Pension Plan      ☐ Trust
- ☐ Corporation                                                    ☐ Estate
- ☐ IRA/401K                                                        ☐ Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank. If the same legal entity traded through more than one account you may write "multiple." Please see paragraph 11 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

2

## **PART II – GENERAL INSTRUCTIONS**

1.     It is important that you completely read and understand the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Settlement Notice. The Settlement Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. The Settlement Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Settlement Notice, including the terms of the releases described therein and provided for herein. These documents can be found online at the settlement website created by the Claims Administrator for this case at www.strategicclaims.net/Sonus/.

2.     This Claim Form is directed to all persons and entities that between January 8, 2015, and March 24, 2015, inclusive (the "Settlement Class Period"), purchased or otherwise acquired publicly traded (i) common stock of Sonus Networks, Inc. ("Sonus") (n/k/a Ribbon Communications, Inc.) ("Sonus Common Stock"), and/or (ii) Sonus call options ("Sonus Call Options"), and/or wrote Sonus put options ("Sonus Put Options") and suffered economic losses as a proximate result of the alleged wrongdoing (together, the "Settlement Class"). Sonus Common Stock, Call Options, and Put Options are referred to collectively as "Sonus Securities." All persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.     Excluded from the Settlement Class are: (i) persons who suffered no compensable losses; and (ii) (a) Defendants; (b) present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of Sonus;[2] (c) any person who served as an officer and/or director of Sonus during the Settlement Class Period and their Immediate Family members; (d) any entity in which the Defendants have or had a controlling interest; (e) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their immediate families; (f) Defendants' liability insurance carriers; and (g) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (f) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

4.     If you are not a Settlement Class Member do not submit a Claim Form. YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER. THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

---

[2] For the avoidance of doubt, "affiliates" are persons or entities that directly or indirectly through one or more intermediaries control, are controlled by, or are under common control with one of the Defendants.

5.      If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class. Thus, if you are a Settlement Class Member, the Judgment will release, and enjoin the filing or continued prosecution of, the Released Plaintiffs' Claims against the Defendants' Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified below. If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.      Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Settlement Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.      Use the Schedules of Transactions in Parts III–V of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable Sonus Securities. On the Schedules of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions and sales of the applicable Sonus Securities, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.      Please note: Only Sonus Common Stock and Sonus Call Options purchased/acquired, and Sonus Put Options sold, during the Settlement Class Period (*i.e.*, from January 8, 2015 to March 24, 2015, both dates inclusive) are eligible under the Settlement. However, under the PSLRA "90-Day Lookback Period" (described in the Plan of Allocation set forth in the Settlement Notice), your sales of Sonus Common Stock during the period from March 25, 2015, through and including June 22, 2015, will be used for purposes of calculating your Recognized Loss under the Plan of Allocation. Therefore, in order for the Claims Administrator to be able to process your claim, the requested purchase and sale information during the 90-Day Lookback Period must also be provided.

10.      You are required to submit genuine and sufficient documentation for all of your transactions and holdings of the applicable Sonus Securities set forth in the Schedules of Transactions in Parts III–V of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in Sonus Securities. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11.    Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12.    All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired Sonus Common Stock or Sonus Call Options, or sold Sonus Put Options, during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired Sonus Common Stock or Sonus Call Options, or sold Sonus Put Options, during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)    expressly state the capacity in which they are acting;

(b)    identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Sonus Securities; and

(c)    furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.    By submitting a signed Claim Form, you will be swearing that you:

(a)    own(ed) the Sonus Securities you have listed in the Claim Form; or

(b)    are expressly authorized to act on behalf of the owner thereof.

15.    By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.    If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be

5

made after the completion of all claims processing. This could take substantial time. Please be patient.

17.    PLEASE NOTE: As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

18.    If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Settlement Notice, you may contact the Claims Administrator, Strategic Claims Services, by email at info@strategicclaims.net, or by toll-free phone at (866)-274-4004, or you may download the documents from the Settlement website, www.strategicclaims.net/sonus/.

19.    NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at https://www.strategicclaims.net/institutionalfilers/ or you may email the Claims Administrator's electronic filing department at efile@strategicclaims.net. Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at efile@strategicclaims.net to inquire about your file and confirm it was received and acceptable.

### IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD OR EMAIL. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 45 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD OR EMAIL WITHIN 45 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT (866)-274-4004.**

6

## PART III – SCHEDULE OF TRANSACTIONS IN SONUS COMMON STOCK

Complete this Part III if and only if you purchased/acquired Sonus Common Stock during the period from January 8, 2015 through March 24, 2015, inclusive. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above. Do not include information in this section regarding securities other than Sonus Common Stock.

| **1. BEGINNING HOLDINGS** – State the total number of shares of Sonus Common Stock held as of the close of trading on January 7, 2015. (Must be documented.) If none, write "zero" or "0." _____ |
|---|

**2. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD** – Separately list each and every purchase/acquisition (including free receipts) of Sonus Common Stock from after the opening of trading on January 8, 2015, through and including the close of trading on March 24, 2015. (Must be documented.)

| Date of Purchase/Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Purchase/Acquisition Price Per Share | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**3. PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD** – State the total number of shares of Sonus Common Stock purchased/acquired (including free receipts) from after the opening of trading on March 25, 2015, through and including the close of trading on June 22, 2015. If none, write "zero" or "0."[3] _____

**4. SALES DURING THE SETTLEMENT CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale/disposition (including free deliveries) of Sonus Common Stock from after the opening of trading on January 8, 2015, through and including the close of trading on June 22, 2015. (Must be documented.)

**IF NONE, CHECK HERE** ○

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

---

[3] **Please note**: Information requested with respect to your purchases/acquisitions of Sonus Common Stock from after the opening of trading on March 25, 2015, through and including the close of trading on June 22, 2015, is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Loss pursuant to the Plan of Allocation.

| | | $ | $ |
|---|---|---|---|
| / / | | | |

**5. ENDING HOLDINGS** – State the total number of shares of Sonus Common Stock held as of the close of trading on June 22, 2015. (Must be documented.) If none, write "zero" or "0." _____

> **If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification Number at the top of each sheet.**

### PART IV– SCHEDULE OF TRANSACTIONS IN SONUS CALL OPTIONS

Complete this Part IV if and only if you purchased/acquired Sonus Call Options during the period from January 8, 2015 through March 24, 2015, inclusive. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above. Do not include information in this section regarding securities other than Sonus Call Options.

**1. BEGINNING HOLDINGS** – Separately list all positions in Sonus Call Option contracts in which you had an open interest as of the close of trading on January 7, 2015. (Must be documented.)

**IF NONE, CHECK HERE** ○

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/Year) | Option Class Symbol | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|---|
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |

**2. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD** – Separately list each and every purchase/acquisition (including free receipts) of Sonus Call Option contracts from after the opening of trading on January 8, 2015, through and including the close of trading on March 24, 2015. (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/ Year) | Option Class Symbol | Number of Call Option Contracts Purchased/ Acquired | Purchase/ Acquisition Price Per Call Option Contract | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised Insert an "A" if Assigned Insert an "X" if Expired | Exercise Date (Month/ Day/ Year) |
|---|---|---|---|---|---|---|---|---|
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |

8

| 3. SALES DURING THE SETTLEMENT CLASS PERIOD – Separately list each and every sale/disposition (including free deliveries) of Sonus Call Options from after the opening of trading on January 8, 2015, through and including the close of trading on March 24, 2015. (Must be documented.) | | | | | | IF NONE, CHECK HERE ○ |
|---|---|---|---|---|---|---|
| Date of Sale (List Chronologically) (Month/Day/Year) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/Year) | Option Class Symbol | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions, and fees) |
| / / | $ | / / | | | $ | $ |
| / / | $ | / / | | | $ | $ |
| / / | $ | / / | | | $ | $ |
| / / | $ | / / | | | $ | $ |

| 4. ENDING HOLDINGS – Separately list all positions in Sonus Call Option contracts in which you had an open interest as of the close of trading on March 24, 2015. (Must be documented.) | | | IF NONE, CHECK HERE ○ |
|---|---|---|---|
| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/Year) | Option Class Symbol | Number of Call Option Contracts in Which You Had an Open Interest |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification Number at the top of each sheet.**

9

## PART V – SCHEDULE OF TRANSACTIONS IN SONUS PUT OPTIONS

Complete this Part V if and only if you sold (wrote) Sonus Put Options during the period from January 8, 2015 through March 24, 2015, inclusive. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above. Do not include information in this section regarding securities other than Sonus Put Options.

| 1. BEGINNING HOLDINGS – Separately list all positions in Sonus Put Option contracts in which you had an open interest as of the close of trading on January 7, 2015. (Must be documented.) | | | IF NONE, CHECK HERE ○ |
|---|---|---|---|
| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts in Which You Had an Open Interest |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |

**2. SALES (WRITING) DURING THE SETTLEMENT CLASS PERIOD** – Separately list each and every sale (writing) (including free deliveries) of Sonus Put Option contracts from after the opening of trading on January 8, 2015, through and including the close of trading on March 24, 2015. (Must be documented.)

| Date of Sale (Writing) (List Chronologically) (Month/Day/Year) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "A" if Assigned / Insert an "E" if Exercised / Insert an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
| / / | $ | / / | | | | $ | | / / |
| / / | $ | / / | | | | $ | | / / |
| / / | $ | / / | | | | $ | | / / |
| / / | $ | / / | | | | $ | | / / |

10

| 3. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD – Separately list each and every purchase/acquisition (including free receipts) of Sonus Put Option contracts from after the opening of trading on January 8, 2015, through and including the close of trading on March 24, 2015. (Must be documented.) | | | | | | IF NONE, CHECK HERE ○ |
|---|---|---|---|---|---|---|
| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts Purchased/ Acquired | Purchase/ Acquisition Price Per Put Option Contract | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) |
| /  / | $ | /  / | | | | $ |
| /  / | $ | /  / | | | | $ |
| /  / | $ | /  / | | | | $ |
| /  / | $ | /  / | | | | $ |

| 4. ENDING HOLDINGS – Separately list all positions in Sonus Put Option contracts in which you had an open interest as of the close of trading on March 24, 2015. (Must be documented.) | | | IF NONE, CHECK HERE ○ |
|---|---|---|---|
| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts in Which You Had an Open Interest |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification Number at the top of each sheet.**

11

## PART VI – RELEASE OF CLAIMS AND SIGNATURE

### *YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN*

### *ON PAGE ___ OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claims (as defined in the Stipulation and in the Settlement Notice) on my (our) in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees (as defined in the Stipulation and in the Settlement Notice), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants or any of the other Defendants' Releasees.

**CERTIFICATION**

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), as follows:

1. that I (we) have read and understand the contents of the Settlement Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2. that the Claimant(s) is a (are) Settlement Class Member(s), as defined in the Settlement Notice and in paragraph 2 on page ___ of this Claim Form, and is (are) not excluded from the Settlement Class by definition or pursuant to request as set forth in the Settlement Notice and in paragraph 3 on page ___ of this Claim Form;

3. that I (we) own(ed) the Sonus Common Stock and Sonus Call Options and had an interest in the Sonus Put Options identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4. that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

5. that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

6. that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

7. that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

12

8.     that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it/they is (are) subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it/they is (are) no longer subject to backup withholding. **If the IRS has notified the Claimant(s) that he, she, it, or they is (are) subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                                         Date

_____

Print your name here

_____

Signature of joint Claimant, if any                                     Date

_____

Print your name here

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____

Signature of person signing on behalf of Claimant              Date

_____

Print your name here

_____

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC*. (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 13 ON PAGE ___ OF THIS CLAIM FORM.)

13

## REMINDER CHECKLIST:

1.  Please sign the above release and certification on page __. If this Claim Form is being made on behalf of joint Claimants, then both must sign.

2.  Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3.  Please do not highlight any portion of the Claim Form or any supporting documents.

4.  Do not send original security certificates or documentation. These items cannot be returned to you by the Claims Administrator.

5.  Keep copies of the completed Claim Form and documentation for your own records.

6.  The Claims Administrator will acknowledge receipt of your Claim Form by mail or email within 45 days. Your claim is not deemed filed until you receive an acknowledgement postcard or email. **If you do not receive an acknowledgement postcard or email within 45 days, please call the Claims Administrator toll free at (866) 274-4004.**

7.  If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please submit the new information to the Claims Administrator. If you change your name, please inform the Claims Administrator.

8.  If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or toll-free at (866) 274-4004, or visit www.strategicclaims.net/sonus/. Please DO NOT call Sonus or the Individual Defendants or their counsel with questions regarding your claim.

**THIS PROOF OF CLAIM MUST BE SUBMITTED ELECTRONICALLY AT WWW.STRATEGICCLAIMS.NET/SONUS/ BY 11:59 P.M. EST ON _____, 2023, OR MAILED TO THE CLAIMS ADMINISTRATOR AT THE BELOW ADDRESS, POSTMARKED NO LATER THAN _____, 2023:**

Sonus Networks, Inc. Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: 866-274-4004
Fax: 610-565-7985
info@strategicclaims.net

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 202_ is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

14

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms. Please be patient and notify the Claims Administrator of any change of address.

Case 1:18-cv-12344-GAO   Document 78-1   Filed 06/23/23   Page 58 of 62

**Exhibit A-3**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RON MILLER, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-12344-GAO |
| Plaintiff, | |
| v. | |
| SONUS NETWORKS, INC., RAYMOND P. DOLAN, MARK T. GREENQUIST, AND MICHAEL SWADE, | |
| Defendants. | |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:** **All persons and entities that purchased or otherwise acquired the publicly traded common stock of Sonus Networks, Inc. ("Sonus") (n/k/a Ribbon Communications, Inc.) ("Sonus Common Stock"), and/or purchased or otherwise acquired publicly traded Sonus call options ("Sonus Call Options"), and/or wrote publicly traded Sonus put options ("Sonus Put Options," and collectively with Sonus Common Stock and Sonus Call Options, "Sonus Securities"), during the period between January 8, 2015 and March 24, 2015, both dates inclusive ("Settlement Class Period"), and who suffered economic losses as a proximate result of the alleged wrongdoing (the "Settlement Class")[1]:**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Massachusetts, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the

---

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 21, 2023 (the "Stipulation"), which is available at www.strategicclaims.net/Sonus/.

Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Plaintiffs in the Action have reached a proposed settlement of the Action for $4,500,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on _____, 2023 at __:__ _.m., before the Honorable George A. O'Toole, Jr. at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, Courtroom 22, 1 Courthouse Way, Boston, Massachusetts 02210, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**. The Notice, and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.strategicclaims.net/Sonus/. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at *Miller v. Sonus Networks, Inc. et al.*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205. Media, PA 19063, 1-866-274-4004

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* or *submitted online* no later than _____, 2023. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than _____, 2023, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than _____, 2023, in accordance with the instructions set forth in the Notice.

All capitalized words and terms not defined in this notice shall have the meanings stated in the Stipulation, which can be downloaded from www.strategicclaims.net/Sonus/.

2

**Please do not contact the Court, the Clerk's office, Sonus, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Requests for the Notice and Claim Form should be made to:

*Miller v. Sonus Networks, Inc. Securities Litigation.*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
866-274-4004
www.strategicclaims.net/Sonus/

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP
Attn: Garth A. Spencer, Esq.
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(888) 773-9224
settlements@glancylaw.com

THE ROSEN LAW FIRM, P.A.
Attn: Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
jgoldberg@rosenlegal.com

By Order of the Court

3

**Exhibit A-4**

*Miller v. Sonus Networks, Inc. Securities Litigation.*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063

[Postage Prepaid]

## COURT-ORDERED LEGAL NOTICE

**Important Notice about a Securities Class Action Settlement.**

**You may be entitled to a CASH payment. This Notice may affect your legal rights. Please read it carefully.**

*Miller v. Sonus Networks, Inc. et al.*,
Case No.: 1:18-cv-12344-GAO (D. Mass.)

Name
Address
City, State
Zip

---

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE CLASS ACTION SETTLEMENT. PLEASE VISIT* WWW.STRATEGICCLAIMS.NET/SONUS/ *FOR MORE INFORMATION.*

There has been a proposed Settlement of claims against Sonus Networks, Inc. (n/k/a Ribbon Communications, Inc.) ("Sonus") and certain former executives of Sonus (collectively, the "Defendants"). The Settlement would resolve a lawsuit in which Plaintiffs allege that Defendants disseminated materially false and misleading information to the investing public about Sonus's anticipated revenue for the first quarter of 2015 in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired the publicly traded common stock of Sonus, and/or purchased or otherwise acquired Sonus call options, and/or wrote Sonus put options ("Sonus Securities"), between January 8, 2015 and March 24, 2015, inclusive, and may have suffered economic losses as a proximate result of the alleged wrongdoing.

Defendants have agreed to pay a Settlement Amount of $4,500,000. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the Releases by Settlement Class Members of claims related to this case. **For all details of the Settlement, read the Stipulation and full Notice, available at** www.strategicclaims.net/Sonus/**.**

Your share of the Settlement proceeds will depend on the number of valid Claims submitted, and the number, size, and timing of your transactions in Sonus Securities. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.70 per eligible share of common stock before expenses and other Court-ordered deductions. Your award will be determined *pro rata* based on the number of claims submitted. This is further explained in the detailed Notice found on the Settlement website.

**To qualify for payment, you must submit a Claim Form**. The Claim Form can be found on the website www.strategicclaims.net/Sonus/ or will be mailed to you upon request to the Claims Administrator (866-274-4004). **Claim Forms must be postmarked or submitted online by _____**. If you do not want to be legally bound by the Settlement, you must exclude yourself by _____, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by _____. The detailed Notice explains how to submit a Claim Form, exclude yourself, or object.

The Court will hold a hearing in this case on _____, to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to $33^{1}/_{3}\%$ of the Settlement Fund in attorneys' fees, plus actual expenses up to $110,000 for litigating the case and negotiating the Settlement, and reimbursement of Plaintiffs' costs and expenses related to their representation of the Settlement Class in an aggregate amount not to exceed $30,000. Estimates of the average cost per affected share of Sonus Common Stock, if the Court approves Lead Counsel's fee and expense application, is $0.26. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free (866-274-4004) or visit the website www.strategicclaims.net/Sonus/ and read the detailed Notice.

**PROOF OF SERVICE**

I hereby certify that on this 18th day of October, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>*s/ Garth Spencer*</u>
Garth Spencer

**TAB 7**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RON MILLER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., RAYMOND P. DOLAN, MARK T. GREENQUIST, AND MICHAEL SWADE, <br><br> Defendants. | Case No. 1:18-cv-12344-GAO |

**ORDER AWARDING ATTORNEYS' FEES**
**AND REIMBURSEMENT OF LITIGATION EXPENSES**

This matter came on for hearing on April 24, 2024 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed or emailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 21, 2023 (the "Stipulation"; ECF No. 122-1) and all

capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.     The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.     Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 33⅓% of the Settlement Fund and $93,355.46 in reimbursement of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.

5.     In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

2

(a)     The Settlement has created a fund of $4,500,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b)     Copies of the Postcard Notice were either mailed, or a link to the Notice and Claim Form emailed, to over 18,960 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $140,000.  There were no objections to the requested attorneys' fees and expenses;

(c)     Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)     The Action raised a number of complex issues;

(e)     Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(f)     Plaintiffs' Counsel devoted 2,492.35 hours, with a lodestar value of approximately $2,053,166 to achieve the Settlement;

(g)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

6.     Lead Plaintiff Giuseppe Veleno is hereby awarded $10,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

3

7.      Lead Plaintiff Gary Williams is hereby awarded $10,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

8.      Named Plaintiff Ron Miller is hereby awarded $10,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

9.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.     Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

11.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

12.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.


Dated:  April 24, 2024


/s/ George A. O'Toole, Jr.
HON. GEORGE A. O'TOOLE, JR
UNITED STATES DISTRICT JUDGE


4